**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MEGAN LUNDY, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br> v.<br><br>IDEANOMICS, INC., ALFRED POOR, BRUNO WU, and CONOR MCCARTHY,<br><br>      Defendants. | Case No. 1:20-cv-04944-GBD-OTW |
| ANDREW KIM, Individually and On Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br> v.<br><br>IDEANOMICS, INC., ALFRED POOR, BRUNO WU, and CONOR MCCARTHY,<br><br>      Defendants. | Case No. 1:20-cv-05203-GBD-OTW |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
RENE AGHAJANIAN FOR CONSOLIDATION OF RELATED ACTIONS,
APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF
SELECTION OF COUNSEL**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ...................................................................................................1

II.    FACTUAL BACKGROUND .................................................................................2

III.   ARGUMENT .........................................................................................................5

     A.     The Related Actions Should Be Consolidated ...........................................5

     B.     Mr. Aghajanian Satisfies the PSLRA's Requirements and Should Be Appointed Lead Plaintiff ...............................................................................6

          1.    Mr. Aghajanian Has Timely Moved for Appointment as Lead Plaintiff ..........................................................................................7

          2.    Mr. Aghajanian Has the Largest Financial Interest in the Relief Sought by the Class .......................................................................8

          3.    Mr. Aghajanian Satisfies the Requirements of Rule 23 ...............8

               a.    Mr. Aghajanian's Claims Are Typical ...........................8

               b.    Mr. Aghajanian Is Adequate ...........................................9

     C.     Mr. Aghajanian's Selection of Counsel Should Be Approved ...............11

IV.   CONCLUSION ....................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Cohen v. U.S. Dist. Court for the N. Dist. of Cal.*,
586 F.3d 703 (9th Cir. 2009) ...............................................................................11

*Jakobsen v. Aphria, Inc.*,
No. 18 Civ. 11376 (GBD), 2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) ................... *passim*

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) .................................................................. 5, 8-9, 9

**Statutes**

15 U.S.C. § 78u-4(a) ............................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 23 ....................................................................................8, 9

Rene Aghajanian ("Mr. Aghajanian") respectfully submits this memorandum of law in support of his motion for: (1) consolidation of the above-captioned related actions pursuant to Federal Rule of Civil Procedure 42(a) ("Rule 42(a)"); (2) appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); and (3) approval of his selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as Lead Counsel for the class.

## I.   INTRODUCTION

Presently pending in this District are two related securities class actions (the "Related Actions") asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), against Ideanomics, Inc. ("Ideanomics" or the "Company") and certain of the Company's executive officers and directors (collectively, "Defendants").  The Related Actions are brought on behalf of purchasers of Ideanomics securities between March 20, 2020, and June 25, 2020 (the "Class Period").  Because the Related Actions involve common issues of law and fact, Mr. Aghajanian respectfully suggests that consolidation is appropriate under Rule 42(a).

After consolidation, the PSLRA governs the selection of the Lead Plaintiff in class actions asserting claims under the federal securities laws.  Specifically, the PSLRA requires a court to appoint as Lead Plaintiff the movant: (1) making a timely motion under the PSLRA's sixty-day deadline; (2) who asserts the largest financial interest in the litigation; and (3) who also satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Jakobsen v. Aphria, Inc.*, No. 18 Civ. 11376 (GBD), 2019 WL 1522598, at *4 (S.D.N.Y. Mar. 27, 2019) (Daniels, J.) (same).

Here, Mr. Aghajanian respectfully submits that he is the presumptively "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff.  Mr. Aghajanian's motion is timely and his losses of approximately $105,176 under a last-in, first-out ("LIFO") analysis in connection with his transactions in Ideanomics securities during the Class Period represent the largest known financial interest in the relief sought by the class.  *See* Declaration of Naumon A. Amjed in Support of the Motion of Rene Aghajanian for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Amjed Decl."), Exs. A & B.  In addition to asserting the largest financial interest, Mr. Aghajanian satisfies the relevant requirements of Rule 23 because his claims are typical of all members of the class and because he will fairly and adequately represent the class.  *See* Section III.B, *infra*.  Further, as set forth in the Declaration of Rene Aghajanian, submitted herewith, Mr. Aghajanian fully understands the Lead Plaintiff's obligations to the class under the PSLRA and is willing and able to undertake the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of the Related Actions. *See* Amjed Decl., Ex. C (the "Aghajanian Declaration").

Finally, Mr. Aghajanian respectfully requests that his selection of Kessler Topaz as Lead Counsel for the class be approved.  Kessler Topaz is a nationally recognized securities class action litigation firm that has recovered billions of dollars in damages for injured shareholders.  *See* Section III.C, *infra*.  Thus, Kessler Topaz is highly qualified to prosecute this case and should be appointed Lead Counsel for the class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.").

## II.    FACTUAL BACKGROUND

Ideanomics, a Nevada corporation with principal executive offices in New York, New York, historically provided video-on-demand services before becoming a financial technology

("fintech") company in 2017.  The Company briefly traded petroleum products and electrical components, among other things, before disposing of these businesses and launching its Mobile Energy Global ("MEG") business unit in 2019, purportedly to provide end-to-end procurement, financing, charging, and energy management services for fleet operators of commercial electronic vehicles ("EVs"), principally in the People's Republic of China.

As alleged in the Related Actions, during the Class Period, Defendants made materially false and misleading statements and omissions regarding the Company's business, operations, and prospects.  Specifically, Defendants made false and misleading statements and/or failed to disclose that: (1) Ideanomics's Qingdao-MEG Sales Center (the "MEG Center") was not "a one million square foot EV expo center"; (2) the Company had been using doctored or altered photographs of the purported MEG Center; (3) the Company's EV business in China was not performing nearly as strongly as Ideanomics had represented; and (4) as a result, the Company's public statements were materially false and misleading at all relevant times.

The truth about the Company's MEG Center and EV business began to emerge on June 25, 2020, when Hindenburg Research ("Hindenburg") issued a series of tweets calling Ideanomics "an egregious & obvious fraud," noting that the Company "has a history of changing b[usiness] models and pumping—then dumping—each new endeavor," and predicting that "[i]ts move into EVs will be no different."  In support of its assertions, Hindenburg cited the following: (1) an allegedly photoshopped picture from 2018 that had apparently been doctored to bear a 2020 timestamp and an "MEG" logo to convince investors that the photographed location was a current view of the purported MEG Center; (2) findings from Hindenburg's on-site investigation of the MEG Center revealing that the facility is operated by nearly 100 sales groups; (3) a recorded conversation between Hindenburg's investigator and the facility's main office confirming that it had not heard

of Ideanomics or MEG; and (4) multiple other conversations with five purported Ideanomics customers and a number of the site's sales groups, none of whom had heard of the Company.

Additionally, that same day, J Capital Research ("J Capital") issued a report characterizing Ideanomics as "a zero" where "shareholders get wiped out."  J Capital reported its own findings, which were consistent with Hindenburg's research, and described, among other things, the following concerns: (1) the site where the purported MEG Center is located is "in financial distress and not honoring the contracts with people who bought shops there"; (2) neither the Company's purported joint venture partner nor its parent entity had heard of the Company or the joint venture itself; (3) the Company's last four businesses—including its video-on-demand, oil and electronics trading, fintech, and cryptocurrency endeavors—have resulted in $211.9 million of shareholder losses since 2014; and (4) Ideanomics has a history of frequently replacing its outside auditor and is currently employing a Colorado-based auditor with no affiliates in China; and the Company has engaged in a "Round Robin of Self-Dealing," whereby Ideanomics purchases large interests in companies with "negligible revenue and large losses."

In response to these reports, the price of Company stock declined $0.65 per share, or approximately 21%, from a close of $3.09 per share on June 24, 2020, to close at $2.44 per share on June 25, 2020.

On the following day, June 26, 2020, Ideanomics responded to Hindenburg's and J Capital's allegations, calling them a "coordinated attack on the company's credibility in order to seek financial gain from a drop in the company's share price."  Asserting that it had "sufficient cash to maintain its current operations for at least 12 months," Ideanomics stated that it "would like to clarify the status of its [MEG Center]," revealing that its existing activities at the site "occupy approximately . . . 215,000 square feet"—contradicting the Company's prior claims that

the MEG Center "is a one million square foot EV expo center."  Ideanomics also released an aerial view of the MEG Center.  In response, Hindenburg stated that the Company's aerial image is "drone footage of the outside of the entire facility," and that "video from INSIDE the facility . . . shows they have absolutely no presence on site whatsoever."  Hindenburg also posted its own video of the inside of the purported MEG Center, alleging that the facility is "actually called the Qingdao Fidelity International Trade City . . . which shows only few cars for sale, and no sign of the company on site."  Hindenburg further stated that Ideanomics "has fabricated its supposed sales center," and that "[w]e continue to believe . . . that the company is engaged in flagrant securities fraud and that its stock will wind up in the pennies or halted by regulators."  On this news, the price of Company stock declined an additional $0.98 per share, or approximately 40.2%, from a close of $2.44 per share on June 25, 2020, to close at $1.46 per share on June 26, 2020—marking a two-day decline of approximately 52.8%.

## III.   ARGUMENT

### A.   The Related Actions Should Be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," courts shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered."  15 U.S.C. § 78u-4(a)(3)(B)(ii).  Under Rule 42(a), consolidation is appropriate where the actions "involve[s] a common question of law and fact."  *Kaplan v. Gelfond*, 240 F.R.D. 88, 90-91 (S.D.N.Y. 2007).

There are at least two related securities class actions pending in this District on behalf of investors who purchased Ideanomics securities during the Class Period:

| Case Caption | Civil No. | Date Filed |
|---|---|---|
| *Lundy v. Ideanomics, Inc., et al.* | 1:20-cv-04944-GBD-OTW | June 28, 2020 |
| *Kim v. Ideanomics, Inc., et al.* | 1:20-cv-05203-GBD-OTW | July 7, 2020 |

The Related Actions assert claims under the Exchange Act against identical defendants, across identical class periods, and concerning the same conduct.  Accordingly, consolidation is appropriate under Rule 42(a).  *See Aphria*, 2019 WL 1522598, at *1 ("Here, consolidation is clearly appropriate because all four cases involve 'substantially identical questions of law and fact.'" (quoting *Reitan v. China Mobile Games & Ent. Grp., Ltd.*, 68 F. Supp. 3d 390, 394 (S.D.N.Y. 2014))).

**B.      Mr. Aghajanian Satisfies the PSLRA's Requirements and Should Be Appointed Lead Plaintiff**

The PSLRA establishes the procedure for selecting a lead plaintiff in a class action lawsuit asserting claims under the federal securities laws.  *See* 15 U.S.C. § 78u-4(a)(1)-(3)(B)(i).

First, a plaintiff who files the initial action must publish a notice to the class within twenty days of filing the action informing class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the purported class period; and (4) the right to move the court to be appointed as lead plaintiff within sixty days of the publication of the notice.  *See id*. § 78u-4(a)(3)(A)(i). Within sixty days after publication of the notice, any member of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.  *See id*. § 78u-4(a)(3)(A)-(B).

Second, the PSLRA provides that within ninety days after publication of the notice, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the member of the class that the court determines to be most capable of adequately representing the interests of class members.  *See id*. § 78u-4(a)(3)(B)(i).  In determining the "most adequate

plaintiff," the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff in any private action arising under the PSLRA is the person that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id*. § 78u-4(a)(3)(B)(iii)(I).  The "most adequate plaintiff" presumption may be rebutted only upon "proof" that the movant "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Here, Mr. Aghajanian is the "most adequate plaintiff" because he: (1) timely moved for appointment as Lead Plaintiff; (2) possesses the "largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23" for purposes of this motion. *Id*. § 78u-4(a)(3)(B)(iii)(I).

### 1. Mr. Aghajanian Has Timely Moved for Appointment as Lead Plaintiff

The PSLRA allows any member of the class to move for appointment as lead plaintiff within sixty days of the publication of notice that the first action has been filed.  *See id*. § 78u-4(a)(3)(A)(i)(II).  Here, in connection with the filing of the first of the Related Actions, notice was published on June 28, 2020, in *GlobeNewswire*.  *See* Amjed Decl., Ex. D.  Thus, August 27, 2020, is the deadline for class members to seek appointment as Lead Plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(A)-(B).  Accordingly, Mr. Aghajanian has timely moved this Court for appointment as Lead Plaintiff on behalf of all members of the class.

### 2.      Mr. Aghajanian Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" is the movant with the "largest financial interest in the relief sought by the class" who "otherwise satisfies the requirements of Rule 23." *Id*. § 78u-4(a)(3)(B)(iii)(I).   Here, Mr. Aghajanian suffered losses of approximately $105,176 under a LIFO analysis in connection with his transactions in Ideanomics securities during the Class Period.  Amjed Decl., Exs. A & B.  To the best of his knowledge, Mr. Aghajanian has the largest financial interest in this matter and is the presumptive "most adequate plaintiff."

### 3.      Mr. Aghajanian Satisfies the Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the class, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure" in order to trigger the presumption of adequacy.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  At the lead plaintiff selection stage of litigation, only a "preliminary showing" of typicality and adequacy is required.  *Aphria*, 2019 WL 1522598, at *5.

### a.      Mr. Aghajanian's Claims Are Typical

The typicality requirement is satisfied when the presumptive lead plaintiff's "claims arise from the same conduct from which the other class members' claims and injuries arise."  *Kaplan*,

240 F.R.D. at 94 (citation omitted).  Mr. Aghajanian satisfies the typicality requirement because, just like all other proposed class members, he seeks recovery for losses incurred as a result of Defendants' misrepresentations and omissions that resulted in subsequent declines in the price of Ideanomics securities.  Thus, Mr. Aghajanian's claims arise from the same conduct as those of the other class members and Mr. Aghajanian is typical.  *See Aphria*, 2019 WL 1522598, at *5 (finding that a lead plaintiff movant had satisfied the typicality requirement where, "like all members of the class, he allege[d] that he purchased [the company's] stock during the class period and suffered losses after it was discovered that [the company's] misleading statements artificially inflated its stock price during that period").

### b.    Mr. Aghajanian Is Adequate

The adequacy element of Rule 23 is satisfied where the lead plaintiff can "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In evaluating a movant's adequacy, courts consider whether: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy."  *Kaplan*, 240 F.R.D. at 94 (citations omitted).

Mr. Aghajanian is adequate because his interest in vigorously pursuing claims against Defendants—given his substantial losses—is aligned with the interests of the members of the class who were similarly harmed as a result of Defendants' false and misleading statements.  There is no potential conflict between Mr. Aghajanian's interests and those of the other members of the class, and Mr. Aghajanian is fully committed to vigorously pursuing the claims on behalf of the class.  *See Aphria*, 2019 WL 1522598, at *5 ("It also appears that [movant] will fairly and adequately represent the proposed class because he has selected qualified and experienced counsel,

there is no known conflict between him and the other putative members of the class, and his significant financial losses ensure that he will vigorously prosecute this case.").  Moreover, as set forth in the Aghajanian Declaration, Mr. Aghajanian fully understands the Lead Plaintiff's responsibilities and obligations to the class under the PSLRA, which include acting as a fiduciary for all class members, staying informed about the litigation, attending court proceedings, depositions, settlement mediations, and hearings as needed, and communicating regularly with counsel, including reviewing and authorizing the filing of important litigation documents, and is willing and able to undertake these responsibilities to ensure the vigorous prosecution of this Action.  *See* Amjed Decl., Ex. C.  Additionally, Mr. Aghajanian—who has a law degree and previously worked as a financial advisor—is well-equipped to oversee the work of Lead Counsel. *See id.*

Mr. Aghajanian has further demonstrated his adequacy through his selection of Kessler Topaz as Lead Counsel for the class.  As discussed more fully below, Kessler Topaz is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated its capability to conduct complex securities class action litigation in an efficient, effective, and professional manner.  Mr. Aghajanian is aware that he was under no obligation to select Kessler Topaz as his counsel and was free to select any qualified counsel.  *See id.* ¶ 5.  Mr. Aghajanian's selection followed a review of Kessler Topaz's qualifications to act as class counsel in securities fraud class actions.  *See id.* ¶ 6.

The evidence submitted by Mr. Aghajanian establishing his commitment to zealously and efficiently representing the interests of the class as Lead Plaintiff is more than sufficient to satisfy the adequacy and typicality requirements here.

### C.  Mr. Aghajanian's Selection of Counsel Should Be Approved

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to the Court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cohen v. U.S. Dist. Court for the N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009) ("[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice.") (citations omitted). Here, Mr. Aghajanian has selected and retained Kessler Topaz to serve as Lead Counsel for the class.  Mr. Aghajanian's selection of counsel should be approved.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Aphria*, 2019 WL 1522598, at *5 ("There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel.") (citation omitted).

Kessler Topaz specializes in prosecuting complex class action litigation and is one of the leading law firms in its field. See Amjed Decl., Ex. E (Kessler Topaz's Firm Résumé). The firm is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors, including: *In re Tyco International, Ltd. Securities Litigation*, No. 02-md-1335 (PB) (D.N.H.) ($3.2 billion recovery); *In re Bank of America Corp. Securities, Derivative, & Employee Retirement Income Security Act (ERISA) Litigation*, No. 09-md-2058 (PKC) (S.D.N.Y.) ($2.425 billion recovery); *In re Wachovia Preferred Securities & Bond/Notes Litigation*, No. 09-cv-6351 (RJS) (S.D.N.Y.) ($627 million recovery); and *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (LAK) (S.D.N.Y.) ($615 million recovery).  Additionally, Kessler Topaz is currently serving as lead or co-lead counsel in several high profile securities class actions across the country and in this District, including: *Sjunde AP-Fonden v. The Goldman Sachs Group, Inc.,* No. 18-cv-12084 (VSB) (S.D.N.Y.); *Sjunde AP-Fonden v. General Electric Co.*, No. 17-cv-8457 (JMF) (S.D.N.Y.); and *In re Kraft Heinz Securities Litigation*, No. 19-cv-01339 (RMD) (N.D. Ill.).

Kessler Topaz's commitment to zealous representation is also evident from its trial experience under the PSLRA.  Specifically, the firm obtained a rare jury verdict in the class's favor after a week-long trial in *In re Longtop Financial Technologies Ltd. Securities Litigation*, No. 11-cv-3658 (SAS) (S.D.N.Y.)—which at the time was one of just thirteen securities class actions to reach a verdict since enactment of the PSLRA in 1995 (based on post-enactment conduct).  The firm also obtained the largest damage award in Delaware Chancery Court history following a trial before Chancellor Leo E. Strine, Jr.  *See In re S. Peru Copper Corp. S'holder Derivative Litig.*, No. 961-CS (Del. Ch.), *aff'd Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1262-63 (Del. 2012) (affirming final judgment, with interest, of $2 billion).

Thus, the Court may be assured that, in the event this motion is granted, the class will receive the highest caliber of legal representation available.  Accordingly, Mr. Aghajanian's selection of counsel should be approved.  *See Aphria*, 2019 WL 1522598, at *5 (approving the lead plaintiff's selection of counsel).

## IV.    CONCLUSION

For the reasons stated herein, Mr. Aghajanian respectfully requests that the Court: (1) consolidate the above-captioned actions; (2) appoint Mr. Aghajanian as Lead Plaintiff: (3) approve his selection of Kessler Topaz as Lead Counsel for the class; and (4) grant such other relief as the Court may deem just and proper.

DATED:  August 27, 2020                           Respectfully submitted,

                                                  **KESSLER TOPAZ**
                                                  **  MELTZER & CHECK, LLP**

                                                  *S/ Naumon A. Amjed*
                                                  Naumon A. Amjed
                                                  Ryan T. Degnan
                                                  Karissa J. Sauder
                                                  280 King of Prussia Road

Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
namjed@ktmc.com
rdegnan@ktmc.com
ksauder@ktmc.com

*Counsel for Rene Aghajanian and*
*Proposed Lead Counsel for the Class*

**THE SCHALL LAW FIRM**
Brian Schall
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Tel: (310) 301-3335
Fax: (877) 590-0482
brian@schallfirm.com

*Additional Counsel for Rene Aghajanian*