UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEGAN LUNDY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IDEANOMICS, INC., ALFRED POOR, BRUNO WU, and CONOR MCCARTHY,<br><br>Defendants. | Case No.  1:20-cv-04944-GBD<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION OF JOSHUA LAI FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL |
| ANDREW KIM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IDEANOMICS, INC., ALFRED POOR, BRUNO WU, and CONOR MCCARTHY,<br><br>Defendants. | Case No.  1:20-cv-05203-GBD |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 2

ARGUMENT ......................................................................................................................... 4

I.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES.. 4

II.    LAI SHOULD BE APPOINTED LEAD PLAINTIFF....................................................... 5

      A.     Lai is willing to serve as a Class Representative and has timely filed this motion to be appointed Lead Plaintiff. ................................................................................. 6

      B.     Lai has the "largest financial interest" in the Related Actions. ............................. 6

      C.     Lai otherwise satisfies the requirements of Rule 23. ............................................ 8

III.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ......... 10

CONCLUSION.................................................................................................................... 11

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*, 17-CV-10085,
  2018 U.S. Dist. LEXIS 57591 (S.D.N.Y. Apr. 4, 2018)..............................................................8

*Bassin v. Decode Genetics, Inc.*,
  230 F.R.D. 313 (S.D.N.Y. 2005) ...............................................................................................5

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
  141 F.R.D. 229 (2d Cir. 1992) ..................................................................................................9

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
  252 F.R.D. 188 (S.D.N.Y. 2008) ...............................................................................................4

*Chahal v. Credit Suisse Grp. AG*, 18-CV-2268 *et al.*,
  2018 U.S. Dist. LEXIS 104185 (S.D.N.Y. June 21, 2018)........................................................7

*Dookeran v. Xunlei Ltd.*, 18-cv-467 (RJS) *et al.*,
  2018 U.S. Dist. LEXIS 62575 (S.D.N.Y. Apr. 12, 2018)..........................................................9

*Foley v. Transocean Ltd.*,
  272 F.R.D. 126 (S.D.N.Y. 2011) ...............................................................................................9

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)........................................................................................................7

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER),
  2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ......................................................7, 11

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 ...............................................................................................................................8

*In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC),
  2009 WL 2259502, 2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009).....................4, 5

*In re Molson Coors Brewing Co. Sec. Litig.*,
  233 F.R.D. 147 (D. Del. 2005) ................................................................................................10

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) ...........................................................................................7

*In re Orion Secs. Litig.*, 08 Civ. 1328 (RJS),
  2008 U.S. Dist. LEXIS 55368 (S.D.N.Y. July 7, 2008) ............................................................8

*In re Oxford Health Plans, Inc. Sec. Litig.*,
     182 F.R.D. 42 (S.D.N.Y. 1998) ........................................................................................8

*In re Tronox, Inc. Sec. Litig.*,
     262 F.R.D. 338 (S.D.N.Y. 2009) ......................................................................................4

*Janbay v. Canadian Solar, Inc.*,
     272 F.R.D. 113 (S.D.N.Y. 2010) ......................................................................................9

*Johnson v. Celotex Corp.*,
     899 F.2d 1281 (2d Cir. 1990)............................................................................................4

*Kaplan v. Gelfond*,
     240 F.R.D. 88 (S.D.N.Y. 2007) ........................................................................................8

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
     311 F.R.D. 373 (S.D.N.Y. 2015) ....................................................................................10

*Lax v. First Merchants Acceptance Corp.*, Nos. 97 C 2715 *et al.*,
     1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997)....................................................7

*Malcolm v. Nat'l Gypsum Co.*,
     995 F.2d 346 (2d Cir. 1993)..............................................................................................4

*Nurlybaev v. ZTO Express (Cayman) Inc.*, 17-CV-06130 (LTS)(SN),
     2017 U.S. Dist. LEXIS 187238 (S.D.N.Y. Nov. 13, 2017) ..............................................7

*Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.*,
     229 F.R.D. 395 (S.D.N.Y. 2004) ......................................................................................7

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
     589 F. Supp. 2d 388 (S.D.N.Y. 2008)..............................................................................10

## Statutes

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) .................................................................................. *passim*

Private Securities Litigation Reform Act of 1995 ................................................................ *passim*

## Rules

Federal Rules of Civil Procedure Rule 23 ............................................................................ *passim*

Federal Rules of Civil Procedure Rule 42 ...............................................................................1, 4

Joshua Lai ("Lai") respectfully submits this Memorandum of Law in support of his motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Rule 42 of the Federal Rules of Civil Procedure, for an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Lai as Lead Plaintiff on behalf of all investors who purchased or otherwise acquired Ideanomics, Inc. ("Ideanomics" or the "Company") securities between March 20, 2020 and June 25, 2020, inclusive (the "Class Period"); and (3) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

The Complaints in the Related Actions allege that Ideanomics and certain of its officers defrauded investors in violation of the Exchange Act. Ideanomics investors, including Lai, incurred significant losses following the disclosure of the alleged fraud, which caused the prices of Ideanomics securities to fall sharply, damaging Lai and other Ideanomics investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of the action and that satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In connection with his purchases of Ideanomics securities during the Class Period, Lai incurred losses of approximately $41,545. *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Ex. A. Accordingly, Lai believes that he has the largest financial interest in the relief sought in the Related Actions.

Beyond his considerable financial interest, Lai also meets the applicable requirements of Rule 23 because his claims are typical of absent class members and because he will fairly and adequately represent the interests of the Class.

1

In order to fulfill his obligations as Lead Plaintiff and vigorously prosecute the Related Actions on behalf of the Class, Lai has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Lai respectfully requests that the Court enter an order appointing him as Lead Plaintiff for the Class and approving his selection of Pomerantz as Lead Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the Complaint of the first-filed of the Related Actions, *Lundy v. Ideanomics, Inc. et al*, No. 1:20-cv-04944-GBD (S.D.N.Y.), Dkt. No. 3 ("Complaint"), Ideanomics purports to be a global company focused on facilitating the adoption of commercial electric vehicles and developing next generation financial services and Fintech products. Complaint ¶ 2. Ideanomics common stock trades on the NASDAQ stock exchange under the ticker "IDEX." *Id.* The Company is headquartered in New York, New York, and maintains offices in Beijing and Qingdao, China. *Id.*

In recent press releases, Ideanomics has lauded its "one million square foot EV expo center in Qingdao, Shandong Province," in China, also known as the Company's Mobile Energy Global (MEG) Division, or the "MEG Center." *Id.* ¶ 3. According to Ideanomics, the MEG Center is "the largest auto trading market in Qingdao," China. *Id.*

On June 25, 2020, analyst Hindenburg Research ("Hindenburg") issued a series of tweets in which it called Ideanomics "an egregious & obvious fraud." *Id.* ¶ 4. Hindenburg asserted that it found evidence that Ideanomics had doctored photos for use in its press releases

2

to suggest that the Company owns or operates a vehicle sales center in Qingdao, China, when it in fact does not. *Id.* Hindenburg further asserted that it had an investigator go to Ideanomics' purported MEG Center in Qingdao, China, where the investigator was unable to find any trace of Ideanomics or its purported MEG Center. *Id.*

Also on June 25, 2020, analyst J Capital Research ("J Capital") issued a report on Ideanomics entitled "Champion of Promotes." *Id.* ¶ 5.  J Capital wrote, in part, that "Ideanomics . . . is a zero. The company changes its name and promotional story so frequently that it's hard to keep up. One thing remains a constant, despite all the press releases, buzzwords and hype: shareholders get wiped out." J Capital continued, in a tweet, that "[w]e called all the 'buyers' named in [Ideanomics'] press releases this month. Not a single one had made a purchase. One of them thanked us for alerting them to 'fake news.'" *Id.*

On this news, Ideanomics' stock price fell from its June 24, 2020 close of $3.09 to a June 25, 2020 close of $2.44 per share, a one day drop of $0.65 or approximately 21%. *Id.* ¶ 6.

Then on June 26, 2020, the Company issued a press release in which it sought to "clarify the status" of its purported EV hub in Qingdao, China. *Id.* ¶ 7.  In this release, Ideanomics walked back certain of its prior statements regarding the MEG Center in Qingdao, stating that it was launching three phases of its MEG Center that will eventually total one million square feet. *Id.* The first phase, according to Ideanomics, occupies only 215,000 square feet. *Id.*

The stock price continued to plummet on June 26, 2020, dropping to a close of $1.46 per share. *Id.* ¶ 8.  This represents a two day drop of approximately 53%. *Id.*

Throughout the Class Period, the above-captioned defendants ("Defendants") made materially false and misleading statements regarding the Company's business. *Id.* ¶ 9. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:

3

(i) Ideanomics' MEG Center in Qingdao was not "a one million square foot EV expo center";

(ii) the Company had been using doctored or altered photographs of the purported MEG Center

in Qingdao; (iii) the Company's electric vehicle business in China was not performing nearly as

strong as Ideanomics had represented; and (iv) as a result, the Company's public statements

were materially false and misleading at all relevant times.  *Id.*

**ARGUMENT**

**I.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL
         PURPOSES**

Consolidation of related cases is appropriate where, as here, the actions involve common

questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay, and

overlap in adjudication: "If actions before the court involve a common question of law or fact,

the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2)

consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."  Fed. R.

Civ. P. 42(a); *see also Manual for Complex Litigation (Third)* § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions

of law *or* fact.  *See* Fed. R. Civ. P. 42 (a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d

Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox,*

*Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions);

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008)

(same).  Differences in causes of action, defendants, or the class period do not render

consolidation inappropriate if the cases present sufficiently common questions of fact and law,

and the differences do not outweigh the interest of judicial economy served by consolidation.

*See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, 2009 U.S. Dist. LEXIS

4

69133, at *4–8 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law **and** fact. Each action is brought against the Company, as well as certain officers and directors of the Company, in connection with violations of the federal securities laws. Accordingly, the Related Actions allege substantially the same wrongdoing, namely that Defendants issued materially false and misleading statements and omissions that artificially inflated the price of Ideanomics' securities and subsequently damaged the Class when the Company's share price crashed as the truth emerged. Consolidation of the Related Actions is therefore appropriate. *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *In re GE*, 2009 WL 2259502, 2009 U.S. Dist. LEXIS 69133, at *5 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

## II.   LAI SHOULD BE APPOINTED LEAD PLAINTIFF

Lai should be appointed Lead Plaintiff because, to his knowledge, Lai has the largest financial interest in the Related Actions and otherwise satisfies the requirements of Rule 23. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any

such notice.  Specifically, the Court "shall" appoint the presumptively "most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Lai satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### A.    Lai is willing to serve as a Class Representative and has timely filed this motion to be appointed Lead Plaintiff.

On June 28, 2020, counsel for plaintiff in the first-filed of the Related Actions caused a notice to be published over *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities fraud class action had been filed against Defendants and which advised investors in Ideanomics securities that they had until August 27, 2020—*i.e.*, 60 days—to file a motion to be appointed as lead plaintiff (the "PSLRA Notice").  *See* Lieberman Decl., Ex. B.  Lai has timely filed the instant motion pursuant to the PSLRA Notice, and has attached a sworn Certification attesting that he is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary.  *See id.*, Ex. C.  Accordingly, Lai satisfies the first requirement to serve as Lead Plaintiff of the Class.

### B.    Lai has the "largest financial interest" in the Related Actions.

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by

6

the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of his knowledge, Lai has the largest financial interest of any Ideanomics investor or investor group seeking to serve as Lead Plaintiff. For claims arising under federal securities laws, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  Nos. 97 C 2715 *et al.*, 1997 U.S. Dist. LEXIS 11866, at *17 (N.D. Ill. Aug. 6, 1997).  In accord with other courts nationwide,[1] these *Lax* factors have been adopted and routinely applied by courts in this judicial district.  *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, 18-CV-2268 *et al.*, 2018 U.S. Dist. LEXIS 104185, at *12 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, 17-CV-06130 (LTS)(SN), 2017 U.S. Dist. LEXIS 187238, at *3 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004).

During the Class Period, Lai: (1) purchased 19,184 shares of Ideanomics securities; (2) expended $68,822 on purchases of Ideanomics securities; (3) retained all of his shares of Ideanomics securities; and (4) incurred losses of $41,545 in connection with his transactions in Ideanomics securities.  *See* Lieberman Decl., Ex. A.  To the extent that Lai possesses the largest financial interest in the outcome of this litigation, he is the presumptive "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

---

[1] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 U.S. Dist. LEXIS 14878, at *22-*25 (E.D.N.Y. Mar. 2, 2007).

**C.      Lai otherwise satisfies the requirements of Rule 23.**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that a lead plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, "[t]he parties moving for lead plaintiff are only required to make a *prima facie* showing that they meet [the requirements of] Rule 23".  *Aude v. Kobe Steel, Ltd.*, 17-CV-10085, 2018 U.S. Dist. LEXIS 57591, at *8 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required.").  Moreover, "[t]ypicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998); *see also Aude*, 2018 U.S. Dist. LEXIS 57591, at *8.  Here, the complaints in the Related Actions sufficiently plead Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Lai.

The typicality requirement of Federal Rule of Civil Procedure 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Secs. Litig.*, 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368, at *12 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel*

8

*Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291) (2d Cir. 1992)).  "[T]he claims of the class representative need not be identical those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'"  *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (2d Cir. 1992)).

Lai's claims are typical of those of the Class.  Lai alleges, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts and/or omitting to disclose material facts concerning Ideanomics.  Lai, as did all members of the Class, purchased Ideanomics securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove Ideanomics' share price downward.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, 18-cv-467 (RJS) *et al.*, 2018 U.S. Dist. LEXIS 62575, at \*6 (S.D.N.Y. Apr. 12, 2018) (same).

As set forth in greater detail below, in Pomerantz, Lai has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as the Related Actions, and submits his choice of Pomerantz to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).  There is no evidence of antagonism or conflict between Lai's interests and the interests of the Class.  Lai has submitted a sworn Certification declaring his commitment to protect the interests of the Class (*see* Lieberman Decl., Ex. C), and the significant losses incurred by Lai demonstrate that he has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.

## III.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should only interfere with lead plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.") (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008)); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, Lai has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.  *See* Lieberman Decl., Ex. D.  Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer.  Petrobras is part of a long line of record-setting recoveries led

by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010. *See* Lieberman Decl., Ex. D. Most recently, Pomerantz announced as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors that it has reached a $110 million settlement with the company. *See* THE WALL STREET JOURNAL, *Fiat Chrysler to Settle Lawsuit for $110 Million*, April 8, 2019 (available at https://www.wsj.com/articles/fiat-chrysler-to-settle-lawsuit-for-110-million-11554746066). As a result of Pomerantz's extensive experience in securities litigation and class actions involving issues similar to those raised in the Related Actions, Pomerantz has the skill and knowledge necessary to enable the effective and expeditious prosecution of the Related Actions. Thus, the Court may be assured that by approving the selection of counsel by Lai, the members of the Class will receive the best legal representation available.

### CONCLUSION

For the foregoing reasons, Lai respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Lai as Lead Plaintiff for the Class; and (3) approving proposed Lead Plaintiff's selection of Pomerantz as Lead Counsel for the Class.

Dated:  August 27, 2020

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505

11

Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Counsel for Lead Plaintiff Movant Joshua Lai and Proposed Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Email: peretz@bgandg.com

*Additional Counsel for Lead Plaintiff Movant Joshua Lai*

12