**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MEGAN LUNDY, individually and on behalf of all others similarly situated, | Case No. 1:20-cv-04944-GBD-OTW |
| Plaintiff, | |
| v. | |
| IDEANOMICS, INC., ALFRED POOR, BRUNO WU, and CONOR MCCARTHY, | |
| Defendants. | |
| | |
| ANDREW KIM, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:20-cv-05203-GBD-OTW |
| Plaintiff, | |
| v. | |
| IDEANOMICS, INC., ALFRED POOR, BRUNO WU, and CONOR MCCARTHY, | |
| Defendants. | |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF
RENE AGHAJANIAN FOR CONSOLIDATION OF RELATED ACTIONS,
APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF
SELECTION OF COUNSEL, AND IN OPPOSITION
TO COMPETING MOTIONS**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   ARGUMENT.............................................................................................................5

    A.    Mr. Sons Cannot Satisfy the PSLRA's Requirements and His
          Motion Should Be Denied ............................................................................5

    B.    Mr. Aghajanian Should Be Appointed Lead Plaintiff ..........................................10

    C.    The Remaining Motions Should Be Denied ............................................................11

III.  CONCLUSION...........................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)............................................................................................7

*Batter v. Hecla Mining Co.*,
  Nos. 19-cv-4883 (ALC), *et al.*, 2020 WL 1444934 (S.D.N.Y. Mar. 25, 2020)................ 4, 7-8

*Bo Young Cha v. Kinross Gold Corp.*,
  No. 12 Civ. 1203(PAE), 2012 WL 2025850 (S.D.N.Y. May 31, 2012).................................10

*Bovee v. Coopers & Lybrand*,
  216 F.R.D. 596 (S.D. Ohio 2003) .......................................................................7

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) .......................................................1-2, 5, 10-11, 11

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)........................................................................ 1-2, 2, 5

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005).............................................................................................7

*Erickson v. Snap, Inc.*,
  No. 2:17-cv-03679-SVW-AGR, 2017 U.S. Dist. LEXIS 221050
  (C.D. Cal. Sept. 18, 2017)............................................................................... *passim*

*In re eSpeed, Inc. Sec. Litig.*,
  232 F.R.D. 95 (S.D.N.Y. 2005) ........................................................................5

*Faris v. Longtop Fin. Techs. Ltd.*,
  No. 11 Civ. 3658(SAS), 2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) .......................... *passim*

*Gordon v. Sonar Capital Mgmt. LLC*,
  92 F. Supp. 3d 193 (S.D.N.Y. 2015).......................................................................9

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ........................................................................ 4, 7-8

*In re IMAX Sec. Litig.*,
  272 F.R.D. 138 (S.D.N.Y. 2010) ..........................................................................9

*In re Ribozyme Pharm., Inc. Sec. Litig.*,
  205 F.R.D. 572 (D. Colo. 2001) .......................................................................3-4, 8

*Rocco v. Nam Tai Elecs., Inc.*,
   245 F.R.D. 131 (S.D.N.Y. 2007) ................................................................................ 3, 8, 8-9

*Schaffer v. Horizon Pharma Plc*,
   No. 16-CV-1763 (JMF), 2016 WL 3566238 (S.D.N.Y. June 27, 2016) .............................. 7-8

*In re Snap Inc. Sec. Litig.*,
   No. 2:17-cv-03679-SVW-AGR, 2019 WL 2223800 (C.D. Cal. Apr. 1, 2019) ........................7

*W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
   325 F.R.D. 280 (D. Minn. 2018) ................................................................................8

**Statutes**

15 U.S.C. § 78u-4(a) .................................................................................. 1, 2, 5, 10-11

Rene Aghajanian respectfully submits this memorandum of law in further support of his motion for appointment as Lead Plaintiff (ECF No. 15) and in opposition to the competing motions (ECF Nos. 19, 22, 25, 28, 32, 35).[1]

## I.    INTRODUCTION

On August 27, 2020, Mr. Aghajanian filed a timely motion under the PSLRA for an Order: (1) consolidating the above-captioned actions; (2) appointing Mr. Aghajanian as Lead Plaintiff; (3) approving his selection of Kessler Topaz as Lead Counsel for the class; and (4) granting such other relief as the Court may deem just and proper.  In addition to Mr. Aghajanian's motion, motions seeking appointment as Lead Plaintiff were also filed by Gary Sons ("Mr. Sons") (ECF No. 19), Richard R. LaBounty (ECF No. 22), Martin Camaj (ECF No. 25), Joshua Lai (ECF No. 28), Avraham Bitran (ECF No. 32), and Troy Stephan (ECF No. 35).[2]

Under the PSLRA, the "most adequate plaintiff"—the plaintiff entitled to appointment as lead plaintiff—is the movant asserting the largest financial interest that ***also*** makes a threshold showing of typicality and adequacy under Rule 23 ***and*** is not subject to unique defenses.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  If the movant "with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *In re Cavanaugh*, 306 F.3d 726, 729-32 (9th Cir. 2002); *see also In*

---

[1]    Unless otherwise noted, all references to "ECF No. __" are to docket entries in *Lundy v. Ideanomics, Inc.*, No. 1:20-cv-04944-GBD-OTW (S.D.N.Y.) ("*Lundy*"), all capitalized terms are defined in Mr. Aghajanian's opening brief, *see* ECF No. 16, all emphasis is added, and all internal quotation marks and citations are omitted.

[2]    Martin Camaj has subsequently withdrawn his motion, and Troy Stephan has filed a notice of non-opposition to competing motions, both acknowledging that they do not have the largest financial interests in this action, as required for appointment under the PSLRA.  *See* ECF Nos. 42, 47.

*re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) ("If (for **any** reason) the court determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy, then the court should . . . disqualify that movant from serving as lead plaintiff."). The PSLRA "does not permit courts simply to 'presume' that the movant with 'the largest financial interest in the relief sought by the class' satisfies the typicality and adequacy requirements." *Cendant*, 264 F.3d at 264.

Here, Mr. Aghajanian is the only movant entitled to appointment under the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Specifically, with losses of approximately $105,176 in connection with his Class Period transactions in Ideanomics securities, Mr. Aghajanian possesses the largest financial interest of any movant who is capable of satisfying the adequacy and typicality requirements of Rule 23 and is not subject to unique defenses.

While Mr. Sons claims a larger loss than Mr. Aghajanian, Mr. Sons suffers from disqualifying defects that render him inadequate and atypical, and require that his motion be rejected under the PSLRA. Specifically, Mr. Sons is subject to unique defenses because he appears to have purchased **all** of his shares of Ideanomics stock **after** the disclosures ending the Class Period on June 25, 2020. *See* ECF No. 21-1.[3] Mr. Sons has acknowledged the corrective nature of the June 25, 2020 disclosures, stating in his opening brief that:

---

[3]    In order to narrow the issues before the Court, counsel for Mr. Aghajanian contacted Mr. Sons's counsel, before filing this opposition brief, in order to clarify whether Mr. Sons's June 25, 2020 purchases occurred before or after the corrective disclosures, which began entering the market at or about 10:00 a.m. EDT. *See* Supplemental Declaration of Naumon A. Amjed In Further Support of the Motion of Rene Aghajanian for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel, and In Opposition to Competing Motions ("Amjed Supp. Decl.") at Exs. A-D. Mr. Sons's counsel failed to respond. Given the potentially dispositive impact the timing of Mr. Sons's purchases will have on his membership in the Class (as noted below, Mr. Sons potentially could be completely excluded from the class entirely), Mr. Sons will be forced to expend resources addressing this unique issue.

2

> Investors began to learn the truth on June 25, 2020, when two research firms accused the company of doctoring photographs of the MEG Center to make it appear operational and claimed recently promoted electronic vehicle contracts were phony. On this news, Ideanomics' stock price fell $0.65 or approximately 21%.

ECF No. 20 at 3. Despite this acknowledgement, Mr. Sons purchased 350,000 shares of Ideanomics common stock on June 25, 2020, and then purchased an **_additional_** 350,000 shares on July 2, 2020—a week after the end of the Class Period and after the first of the Related Actions had already been filed. *See* ECF No. 21-1. These substantial post-disclosure purchases (at the very least 350,000 shares, and potentially all 700,000 shares) are fatal to his appointment and suggest that Mr. Sons—unlike other members of the class—chose to invest in Ideanomics even though he was on notice of Defendants' misstatements and omissions. Courts throughout the country reject movants like Mr. Sons because the magnitude of such post-disclosure purchases expose the entire class to the risk of dismissal if defendants refute the presumption of reliance under the fraud-on-the-market doctrine. *See Erickson v. Snap, Inc.*, No. 2:17-cv-03679-SVW-AGR, 2017 U.S. Dist. LEXIS 221050, at *7-10 (C.D. Cal. Sept. 18, 2017) ("*Snap I*") (disqualifying movant with the largest losses because his "post-corrective trading might expose [him] to unique defenses regarding whether [he] actually relied on any alleged misrepresentations"); *Faris v. Longtop Fin. Techs. Ltd.*, No. 11 Civ. 3658(SAS), 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011) (finding that post-disclosure purchases "may well undermine the ability of [a movant] to assert the fraud-on-the-market presumption of reliance, thereby rendering [him] inadequate"); *cf. Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007) (refusing to certify investor making post-class period purchases as a class representative and noting that "this Court has consistently held that 'a person that increases his holdings in a security after revelation of an alleged fraud involving that security is subject to a unique defense that precludes him from serving

3

as a class representative'"). Moreover, if Mr. Sons's June 25, 2020 purchases occurred after the issuance of the research reports (which began at or about 10:00 a.m. EDT), Defendants may argue that Mr. Sons **is not even a member of the class**. *See In re Ribozyme Pharm., Inc. Sec. Litig.*, 205 F.R.D. 572, 579 (D. Colo. 2001) (analyzing defendants' arguments regarding the timing of corrective disclosures and explaining that "the class period should end when curative information is publicly announced or otherwise effectively disseminated to the market"). Exposing the class to this risk could be devastating and Mr. Sons's need to address these unique issues is disqualifying.

Critically, there is no requirement at this early stage to prove that defendants will prevail on a unique defense in order to reject a movant—only to show a degree of likelihood that the unique defense might play a significant role at trial. *See, e.g.*, *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) (holding that a plaintiff "fails to satisfy the typicality requirement" if "it is predictable that a major focus of the litigation will be on a defense unique to him"); *Batter v. Hecla Mining Co.*, Nos. 19-cv-4883 (ALC), *et al.*, 2020 WL 1444934, at *7 (S.D.N.Y. Mar. 25, 2020) ("Where there is at least a **potential** that the presumptively most adequate lead plaintiff will be subject to unique defenses . . . disqualification is appropriate."). There is "no reason to subject the class to these unique defenses when a non-conflicted candidate for Lead Plaintiff is also before the Court." *Snap I*, 2017 U.S. Dist. LEXIS 221050, at *10.

With Mr. Sons eliminated from consideration, Mr. Aghajanian asserts the largest financial interest of the remaining movants. Additionally, Mr. Aghajanian easily satisfies the requirements of Rule 23 and no movant has provided "proof" that Mr. Aghajanian is inadequate to represent the class. Accordingly, Mr. Aghajanian respectfully submits that he is entitled to appointment as Lead

4

Plaintiff under the PSLRA, and requests that the Court grant his motion and deny the competing motions.

## II.    ARGUMENT

Under the "straightforward" and "sequential" selection process mandated by the PSLRA, a movant's financial interest is only the starting point when evaluating a lead plaintiff movant, as the movant must also "satisf[y] the typicality and adequacy requirements [before] he is entitled to lead plaintiff status."  *Cavanaugh*, 306 F.3d at 732.  As such, a movant seeking appointment as lead plaintiff that does not satisfy Rule 23's requirements cannot be appointed—regardless of that movant's asserted losses.  *See Cendant*, 264 F.3d at 267 ("If (for any reason) the court determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy, then the court should . . . disqualify that movant from serving as lead plaintiff.").  If the presumptive lead plaintiff is disqualified because that movant cannot demonstrate both its typicality and adequacy, "the candidate's position is forfeited and the court returns to the first phase to determine a new presumptive lead plaintiff"—a process which "repeats itself until a candidate succeeds in both the first and second phases of inquiry."  *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 98 (S.D.N.Y. 2005).

Here, only Mr. Aghajanian satisfies all the requirements of the PSLRA and can be appointed Lead Plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### A.    Mr. Sons Cannot Satisfy the PSLRA's Requirements and His Motion Should Be Denied

While Mr. Sons claims large losses in connection with his transactions in Ideanomics securities, the timing of his transactions creates unique defenses that undermine his adequacy and typicality, and preclude Mr. Sons's appointment as Lead Plaintiff.

5

Mr. Sons—who asserts losses of $315,396 on a LIFO basis—will be forced to explain whether or not **all** of his Class Period purchases of Ideanomics common stock were made **after** J Capital and Hindenburg issued the primary disclosures correcting Defendants' fraudulent statements on June 25, 2020 (which began at or about 10:00 a.m. EDT).  As set forth in the Related Actions, on the morning of June 25, 2020, J Capital and Hindenburg published a report and a series of tweets, respectively, revealing that Defendants had misrepresented the Company's business and operations.  *See* ECF No. 1, ¶¶ 30-36; *Kim v. Ideanomics, Inc.*, No. 1:20-cv-05203-GBD-OTW (S.D.N.Y.) ("*Kim*"), ECF No. 1, ¶¶ 30-36.[4]  As noted in Mr. Sons's opening brief, the price of Ideanomics stock declined "approximately 21%" in response to these disclosures as "[i]nvestors began to learn the truth."  ECF No. 20 at 3.  Despite the publication of these disclosures, and the accompanying stock price decline, putting investors on notice of Defendants' fraudulent statements during the Class Period, Mr. Sons purchased 350,000 shares of Ideanomics securities (the entirety of his Class Period purchases) on June 25, 2020.  *See* ECF No. 21-1.[5]  Even if the June 25, 2020 purchases were made before the corrective events (something Mr. Sons's counsel has refused to clarify, *see supra* at n. 3), Mr. Sons then purchased an **additional** 350,000 shares on July 2, 2020—a week **after** the end of the Class Period, **after** "[t]he stock price continued to plummet on June 26, 2020," and **after** the first of the Related Actions was filed.  *See* ECF No. 20 at 3 (noting two-day decline of 53%); *see also* ECF No. 21-4 (press release dated June 28, 2020, announcing filing of the *Lundy* action).

---

[4]     On June 26, 2020, Hindenburg made additional disclosures providing further information adding to its June 25, 2020 disclosures.  *See* ECF No. 1, ¶¶ 40-42; *Kim*, ECF No. 1, ¶¶ 40-42.

[5]     Mr. Sons has provided no evidence that his June 25, 2020 purchases occurred prior to the publication of J Capital and Hindenburg's corrective disclosures early in the trading day.  *See* Amjed Supp. Decl., Exs. A-C.

Given these substantial post-corrective disclosure purchases, Mr. Sons cannot meet Rule 23's requirements of typicality and adequacy. *See Snap I*, 2017 U.S. Dist. LEXIS 221050, at \*7-10. Specifically, Defendants are likely to argue that Mr. Sons's post-disclosure purchases "suggest [he] invested in [company] securities notwithstanding notice of defendants' misstatements and omissions," undermining his ability "to assert the fraud-on-the-market presumption of reliance, thereby rendering [him] inadequate." *Longtop*, 2011 WL 4597553, at \*8. As explained by the court in *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596 (S.D. Ohio 2003):

> The fraud on the market theory is key to the class certification issue in securities fraud class. Without the benefit of the presumption of reliance, requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would [prevent plaintiffs] from proceeding with a class action, since individual issues then would have overwhelmed the common ones.

*Id.* at 603 (alteration in original);[6] *see also In re Snap Inc. Sec. Litig.*, No. 2:17-cv-03679-SVW-AGR, 2019 WL 2223800, at \*2 (C.D. Cal. Apr. 1, 2019) ("*Snap II*") ("Without the presumption of reliance, proof of individualized reliance from each member of the putative class would be required—which would effectively preclude class certification."). Thus, where an investor made a substantial portion of their purchases after corrective disclosures, defendants may be able to argue at class certification that the investor is inadequate and/or atypical because they, unlike other class members, did not rely on defendants' misstatements and omissions in purchasing the company's securities. Importantly, whether or not defendants would ultimately prevail is irrelevant to the analysis required by the PSLRA. *See Hanon*, 976 F.2d at 509 (holding that a

---

[6]    Under Section 10(b) of the Securities Exchange Act of 1934, plaintiffs are required to prove reliance upon alleged misrepresentations. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005). In order to meet the reliance element, the Supreme Court has "endorsed the 'fraud-on-the-market' theory, which permits certain [Section 10(b)] plaintiffs to invoke a rebuttable presumption of reliance on material misrepresentations aired to the general public." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 461 (2013).

plaintiff "fails to satisfy the typicality requirement" if "it is predictable that a major focus of the litigation will be on a defense unique to him"); *Hecla*, 2020 WL 1444934, at \*7 ("Where there is at least a ***potential*** that the presumptively most adequate lead plaintiff will be subject to unique defenses . . . disqualification is appropriate."); *Schaffer v. Horizon Pharma Plc*, No. 16-CV-1763 (JMF), 2016 WL 3566238, at \*3 (S.D.N.Y. June 27, 2016) ("[M]any courts have rejected appointments of lead plaintiffs based on ***potential risks***."). Accordingly, Mr. Sons must be rejected—regardless of his claimed financial interest. *See Snap I*, 2017 U.S. Dist. LEXIS 221050, at \*7-10 (denying lead plaintiff appointment of the movant with the largest losses because his "post-disclosure purchases" in the company, "expose [him] to unique defenses regarding whether [he] actually relied on any alleged misrepresentations"); *Longtop*, 2011 WL 4597553, at \*8 (rejecting movant who made substantial post-corrective purchases); *Nam Tai*, 245 F.R.D. at 136 ("it has been recognized that a named plaintiff who is ***subject*** to an arguable defense of non-reliance on the market has been held subject to a unique defense, and therefore, atypical of the class under Rule 23(a)(3)"). More fundamentally, if Defendants successfully argue that the disclosures on the morning of June 25, 2020 fully corrected Defendants' misrepresentations, then investors purchasing after those disclosures—like Mr. Sons—***would not be a class member***. *See Ribozyme*, 205 F.R.D. at 579 (explaining that "the class period should end when curative information is publicly announced or otherwise effectively disseminated to the market"); *W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 325 F.R.D. 280, 295 (D. Minn. 2018) (ending class period after first alleged corrective disclosure given that subsequent alleged disclosures "did not provide any new information to the market").

While Mr. Aghajanian intends to aggressively prosecute claims on behalf of all class members, Mr. Sons's trading pattern presents unique issues that Defendants could credibly raise

at class certification.  These concerns are not theoretical.  For example, in *Nam Tai*, the court denied class certification where the named plaintiff made "numerous post-class purchases" of the relevant stock.  *See* 245 F.R.D. at 136.  The court's rejection was unambiguous: "[T]his Court has consistently held that 'a person that increases his holdings in a security after revelation of an alleged fraud involving that security is subject to a unique defense that precludes him from serving as a class representative.'"  *Id.*  In addition to jeopardizing class certification, the appointment of an inadequate or atypical lead plaintiff undermines the prosecution of the entire class's claims because that lead plaintiff's subsequent disqualification could force the Court to reopen the lead plaintiff selection process or expose absent class members to statute of limitations and statute of repose concerns.  *See, e.g.*, *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 155, 160 (S.D.N.Y. 2010) (denying class certification and reopening the lead plaintiff selection process where the previously appointed lead plaintiff was "at a minimum . . . subject to unique defenses").  Regardless of the outcome, the timing of Mr. Sons's trading is a critical issue for him alone, is irrelevant for the class, and renders Mr. Sons inadequate.  *See Gordon v. Sonar Capital Mgmt. LLC*, 92 F. Supp. 3d 193, 205 (S.D.N.Y. 2015) (denying class certification where movant's unique issues were "paramount, since for him it means the difference between a substantial recovery and no recovery at all.").

There is "no reason to subject the class to these unique defenses when a non-conflicted candidate for Lead Plaintiff"—Mr. Aghajanian, whose Class Period purchases ***all*** occurred before any corrective disclosures, *see* ECF No. 17-1—"is also before the Court."  *Snap I*, 2017 U.S. Dist. LEXIS 221050, at *10; *see also Longtop*, 2011 WL 4597553, at *8 ("[T[his Court sees no reason to subject the class to this potential defense where there is another movant . . . that purchased the

9

vast majority of its . . . shares before the first corrective disclosure."). Accordingly, the Court

should deny Mr. Sons's motion for appointment as Lead Plaintiff.

### B.        Mr. Aghajanian Should Be Appointed Lead Plaintiff

With Mr. Sons removed from consideration, Mr. Aghajanian is the only movant capable of

satisfying the PSLRA's largest financial interest, adequacy, and typicality requirements.

As an initial matter, with losses of approximately $105,176 in connection with his Class

Period purchases of Ideanomics securities on a LIFO basis, *see* ECF No. 17-2, Mr. Aghajanian

suffered the largest losses of the remaining competing movants:

| MOVANT | CLAIMED LOSSES (LIFO)[7] |
|---|---|
| ~~Gary Sons~~ | ~~$315,396~~ |
| ~~Martin Camaj~~ [motion withdrawn, ECF No. 42] | ~~$182,856~~ |
| **Rene Aghajanian** | **$105,176** |
| Avraham Bitran | $93,229 |
| ~~Troy Stephan~~ [notice of non-opposition, ECF No. 47] | ~~$86,822~~ |
| Joshua Lai | $41,545 |
| Richard R. LaBounty | $18,148 |

In addition to possessing the largest financial interest of the remaining movants, Mr. Aghajanian,

as demonstrated in his opening brief and accompanying declaration, *see* ECF Nos. 16 & 17-3,

readily meets the applicable adequacy and typicality requirements under Rule 23. Indeed, Mr.

Aghajanian has affirmatively demonstrated his commitment and ability to zealously prosecute this

---

[7]      LIFO is the preferred and most widely accepted methodology for calculating movants' financial interests. *See Bo Young Cha v. Kinross Gold Corp.*, No. 12 Civ. 1203(PAE), 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) ("the overwhelming trend . . . nationwide has been to use LIFO"). Competing movants' losses are taken from their respective filings. *See* ECF Nos. 17-2, 21-2, 24-2, 27-3, 31-1, 34-3, 38-3.

litigation for the benefit of the class and, unlike Mr. Sons, is not subject to any unique defenses. Because there is no "proof" undermining Mr. Aghajanian's typicality and adequacy, Mr. Aghajanian should be appointed as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (requiring "proof" to rebut presumption); *Cavanaugh*, 306 F.3d at 741 ("[B]y statute, the presumption of most adequate plaintiff may be overcome only upon proof that the presumptively most adequate plaintiff 'will not fairly and adequately protect the interests of the class' or 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'").

## C.  The Remaining Motions Should Be Denied

Given that Mr. Aghajanian has satisfied all the PSLRA's requirements for appointment as Lead Plaintiff, and each of the remaining movants asserts a smaller financial interest, *see supra* Section II.B., the Court need not consider the remaining competing motions. *See Longtop*, 2011 WL 4597553, at *8 ("[T]he inquiry can stop here."); *Cavanaugh*, 306 F.3d at 732 (stating that the movant with the largest losses satisfying the typicality and adequacy requirements "is entitled to lead plaintiff status").

## III.  CONCLUSION

For the reasons stated herein, Mr. Aghajanian respectfully requests that the Court: (1) appoint him as Lead Plaintiff: (2) approve his selection of Kessler Topaz as Lead Counsel for the class; (3) consolidate the Related Actions pursuant to Rule 42(a); and (4) grant such other relief as the Court may deem just and proper.

DATED: September 10, 2020                    Respectfully submitted,

                                             KESSLER TOPAZ
                                               MELTZER & CHECK, LLP

                                             *S/ Naumon A. Amjed*
                                             Naumon A. Amjed

Ryan T. Degnan
Karissa J. Sauder
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
namjed@ktmc.com
rdegnan@ktmc.com
ksauder@ktmc.com

*Counsel for Rene Aghajanian and*
*Proposed Lead Counsel for the Class*

**THE SCHALL LAW FIRM**
Brian Schall
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Tel: (310) 301-3335
Fax: (877) 590-0482
brian@schallfirm.com

*Additional Counsel for Rene Aghajanian*

12