**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MEGAN LUNDY, Individually and On Behalf of All Others Similarly Situated, )<br>)<br>) | Civil Action No. 1:20-cv-04944-GBD |
| ) | |
| Plaintiff, ) | CLASS ACTION |
| ) | |
| v. ) | |
| ) | |
| IDEANOMICS, INC., ALFRED POOR, BRUNO ) WU, and CONOR MCCARTHY, ) | |
| ) | |
| Defendants. ) | |
| ANDREW KIM, Individually and On Behalf of ) All Others Similarly Situated, ) | Civil Action No. 1:20-cv-05203-GBD |
| ) | |
| Plaintiff, ) | CLASS ACTION |
| ) | |
| vs. ) | |
| ) | |
| IDEANOMICS, INC., ALFRED POOR, BRUNO ) WU, and CONOR MCCARTHY, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION**
**OF AVRAHAM BITRAN FOR APPOINTMENT AS LEAD PLAINTIFF,**
**APPROVAL OF HIS SELECTION OF LEAD COUNSEL,**
**AND CONSOLIDATION OF RELATED ACTIONS,**
**AND IN OPPOSITION TO THE COMPETING MOTIONS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .......................................................................................................................... 3

    A.    Sons Fails to Satisfy The Requirements Of Rule 23 ........................................................ 3

    B.    Aghajanian Exaggerated His Loss and Fails to Satisfy The Requirements Of Rule 23 .. 8

    C.    Bitran Is the Most Adequate Plaintiff ............................................................................... 9

CONCLUSION .........................................................................................................................9

## TABLE OF AUTHORITIES

**Cases**

*Bhojwani v. Pistolis*,  2007 WL 9228588 (S.D.N.Y. July 31, 2007) ............................................. 7

*Camp v. Qualcomm Inc.,* 2019 WL 277360 (S.D. Cal. Jan. 22, 2019) .......................................... 7

*City of Monroe Emps'. Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
    269 F.R.D. 291 (S.D.N.Y. 2010) ....................................................................................... 4

*Darwin v. Taylor,* 2012 WL 5250400 (D. Colo. Oct. 23, 2012) ................................................ 2, 6

*In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42 (S.D.N.Y. 1998) ................................. 3

*In re Pfizer*, 233 F.R.D. 334 (S.D.N.Y. 2005) ............................................................................. 7

*In re Telxon Corp. Sec. Litig.*, 67 F.Supp.2d 803 (N.D. Ohio Aug. 25, 1999) .............................. 8

*In re Vonage IPO Sec. Litig.*,
    No. 07-177, 2007 WL 2683636 (D.N.J. Sept. 7, 2007) ................................................... 7

*Karp v. Diebold Nixdorf, Inc.*, 2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) .................... 2, 4, 7, 8

*Micholle v. Opthotech Corp.*, 2018 WL 1307285 (S.D.N.Y. 2018) ............................................... 7

*Plaut v. Goldman Sachs Group, Inc.*, 2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) ................... 7

*Schaffer v. Horizon Pharma Plc*, 2016 WL 3566238 (S.D.N.Y. June 27, 2016) ....................... 3, 7

*Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273 (D. Ariz. Apr. 7, 2008) ............................ 2

**Statutes**

15 U.S.C. § 78u ..................................................................................................... passim

**Rules**

Fed. R. Civ. P. 23 .................................................................................................... 2, 9

Bitran respectfully submits this memorandum of law in further support of his motion for appointment as Lead Plaintiff, approval of his selection of Lead Counsel, for consolidation of all related securities class actions, and in opposition to the competing motions.[1]

## PRELIMINARY STATEMENT

Under the PSLRA, the Court is to appoint the movant that has the largest financial interest in the litigation "*and* otherwise satisfies the [typicality and adequacy] requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)-(cc).  Here, Bitran—a highly experienced investor with losses exceeding $93,000—is the *only* movant that satisfies the necessary elements for appointment under the PSLRA.  *See* ECF Nos. 34-3, 34-4.  Bitran has a significant financial interest in this case, has been fully engaged in the Lead Plaintiff process, and has attested to his willingness and ability to closely oversee counsel and the zealous prosecution of this action to help ensure that the Class receives the best possible result in this important case.  *See* ECF No. 34-4 at ¶¶2-5.  There is no doubt that Bitran appreciates and accepts the responsibilities that he is seeking to undertake on his fellow investors' behalf and will be an exemplary steward for the Class.

While one movant, Gary Sons ("Sons"), asserts losses larger than Bitran's, Sons's motion suffers from disqualifying defects that call into question his ability to oversee counsel and the litigation, render him inadequate to represent the Class, and require that his motion be denied. Specifically, Sons *submitted incorrect loss calculations to the Court, confused one accounting methodology for another, and then fabricated a new test that inflated his claimed losses even though that made-up test is expressly contradicted by the methodology permitted under the PSLRA.*  That Sons could botch such basic, fundamental, and critical calculations at the earliest

---

[1] Unless otherwise indicated: citations to ECF No.__ refer to the *Lundy* docket; capitalized terms are defined in Bitran's initial brief (ECF No. 32); and emphasis is added.

stage of the case demonstrates that Sons is incapable of adequately overseeing counsel, careless, detached, and unfit to serve as a fiduciary to the Class.  *See Karp v. Diebold Nixdorf, Inc.*, 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) (rejecting Lead Plaintiff movant that submitted "exaggerated loss totals" that "struck at the core of the PSLRA's lead plaintiff inquiry" and demonstrated "carelessness about detail that undermines the adequacy" of the movant).  A corrected financial interest analysis for Sons is attached as Ex. A to the Bleichmar Decl.

Rene Aghajanian's motion ("Aghajanian") suffers from defects similar to Sons's. Aghajanian likewise exaggerated his claimed losses by inflating the "mean trading price" of Ideaonmics shares he sold after the Class Period.  15 U.S.C. § 78u-4(e)(1).  When correctly calculated, Aghajanian's loss is approximately $13,000 less than Bitran's, as demonstrated below. In any event, that Aghajanian failed to correctly calculate the mean trading price—for which Congress provided a specific formula in the PSLRA—is a blatant gaffe that disqualifies him from serving as Lead Plaintiff.  *See* 15 U.S.C. § 78u-4(e); *see also Darwin v. Taylor,* 2012 WL 5250400, at *3-5, n.8 (D. Colo. Oct. 23, 2012) (denying lead plaintiff application based on erroneous "mean trading price" and "perturbing…acknowledgment that the [] loss calculation in [] initial filing was erroneous"); *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) ("blatant gaffe" relating to Lead Plaintiff motion "does not bode well for [] adequacy").  A corrected financial interest analysis for Aghajanian is attached as Ex. B to the Bleichmar Decl.

Accordingly, Bitran has the largest financial interest of any qualified movant and should be appointed Lead Plaintiff as set forth in the chart below.[2]

---

[2] On August 27, 2020, seven movants filed timely motions to be appointed Lead Plaintiff: (1) Bitran (ECF No. 32); (2) Sons (ECF No. 19); (3) Aghajanian (ECF No. 15); (4) Martin Camaj ("Camaj") (ECF No. 25); (5) Troy Stephan ("Stephan") (ECF No. 35); (6) Joshua Lai ("Lai") (ECF No. 28); and (7) Richard R. LaBounty ("LaBounty") (ECF No. 22).  On September 8, 2020, Camaj "withdr[ew] his motion for appointment as lead plaintiff" and failed to identify that Sons failed his

| Movant | Claimed LIFO Loss | Correct LIFO Loss |
|---|---|---|
| ~~Sons~~ | ~~$357,396[3]~~ | ~~$321,521~~ |
| **Bitran** | $93,229 | $93,229 |
| **Aghajanian** | $105,176 | $80,676 |
| **Lai** | $41,545 | $41,168 |
| **LaBounty** | $18,148 | $18,148 |

No other movant asserts a loss larger than Bitran and there is no "proof" that Bitran is somehow unfit to represent the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). To the contrary, the *only* proof in the record firmly establishes that Bitran will serve as an excellent Lead Plaintiff in this case. *See* ECF Nos. 34-1, 34-4.

## ARGUMENT

### A.    Sons Fails to Satisfy The Requirements Of Rule 23

While Sons purports to have incurred greater losses than Bitran, Sons's losses only raise a *rebuttable* presumption that he should be appointed Lead Plaintiff. *See In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("The rebuttable presumption created by the PSLRA which favors the plaintiff with the largest financial interest was not intended to obviate the principle of providing the class with the most adequate representation"). That presumption may be rebutted upon "proof of a non-speculative risk that the movant will not be adequate." *Schaffer v. Horizon Pharma Plc*, 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016). Even at this

---

fundamental task of correctly calculating his financial interest. On September 10, 2020, Stephan filed a notice of non-opposition recognizing that he "does not possess the 'largest financial interest in the relief sought by the class.'" ECF No. 47.

[3] As discussed herein, Sons confused his LIFO and FIFO analyses. Sons claims a FIFO loss of $357,396, but that is actually a LIFO analysis (although incorrectly calculated for additional reasons as set forth below). For ease of reference, this table refers to Sons's loss of $357,396 as his claimed LIFO loss.

early stage of the litigation, there is substantial proof that Sons is inadequate to serve as Lead Plaintiff.

As an initial matter, Sons incorrectly calculated his losses, confusing the LIFO and FIFO accounting methodologies. *See* ECF No. 21-2. The calculation of a Lead Plaintiff's losses is the "core of the PSLRA's lead plaintiff inquiry: determining which movant holds the largest financial stake in the litigation." *Diebold*, 2019 WL 5587148, at *6 (rejecting Lead Plaintiff candidate that submitted incorrect loss information).

"FIFO, or 'first in, first out,' and LIFO, or 'last in, first out,' are both frequently employed methodologies for the purposes of loss calculation in a variety of legal circumstances," including at the Lead Plaintiff stage of securities class actions. *City of Monroe Emps'. Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 295 (S.D.N.Y. 2010). Under FIFO, "the first stocks to be sold are assumed to be the stocks that were acquired first, often outside of the class period." *Id.* [S]ales matched with pre-class period purchases are not included in the calculation of class period losses." *Id.* In contrast, "LIFO [] assumes that the last stocks to be sold are the stocks purchased most recently prior to that sale." *Id.*[4]

Despite the "frequent[] employ[ment]" of FIFO and LIFO, Sons confused these basic tests, designating his FIFO calculation as LIFO, and LIFO as FIFO. *See* ECF No. 21-2; *see also City of Monroe*, 269 F.R.D. at 295.[5] Sons's inability to square these tests demonstrates his lack of

---

[4] Virtually every court in this District and across the country to address the issue has found that LIFO is a more accurate measure of a movant's losses at the Lead Plaintiff stage of the litigation because, "unlike FIFO, [LIFO] takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price. FIFO…may exaggerate losses." *City of Monroe*, 269 F.R.D. at 295.

[5] An analysis isolating Sons's transposition of LIFO and FIFO is attached as Ex. C to the Bleichmar Decl.

engagement and experience; risks that will be borne solely by absent Class members throughout the litigation. The Class should not be subject to such needless risks, particularly when Bitran—an unquestionably experienced and qualified movant with a substantial loss—is more than willing to take up the mantle.

Further distorting his loss calculations, Sons incorrectly applied the PSLRA's "Limitation on Damages" provision, which deflated the value of Ideanomics shares that Sons sold after the end of the Class Period (and thereby inflating his loss), contrary to the explicit language of the PSLRA. 15 U.S.C. § 78u-4(e)(1)-(3). The PSLRA is clear that when a "plaintiff seeks to establish damages by reference to the market price of a security, the award of damages . . . shall not exceed the difference between the purchase or sale price paid or received . . . and the mean trading price of the security during the 90-day period ***beginning on the date*** on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." 15 U.S.C. § 78u-4(e)(1).[6]

Here, the complaints in both *Lundy* and *Kim* allege that the information "correcting the misstatement or omission" was first disseminated on June 25, 2020. 15 U.S.C. § 78u-4(e)(1)-(2); *Lundy* Compl., ¶4 ("On June 25, 2020, analyst Hindenburg Research issued a series of tweets in which it called Ideanomics 'an egregious & obvious fraud'"); *Kim* Compl., ¶4 (same). Because June 25, 2020 is the first date on which the corrective information was disseminated to the market, the PSLRA dictates that the 90-day period begins on June 25. 15 U.S.C. § 78u-4(e)(1)-(2).

---

[6] The PSLRA defines "mean trading price" as "an average of the daily trading price of that security, determined as of the close of the market each day during the 90-day period referred to in paragraph (1)." 15 U.S.C. § 78u-4(e)(3).

5

However, ***Sons disregarded the PSLRA and utilized June 26, 2020 to begin the 90-day lookback period.*** *See* ECF No. 21-2 at 3-4.[7]

Specifically, for Sons's claimed FIFO analysis (which is actually LIFO), Sons admits that for shares sold on July 7, 2020, his "losses are calculated by using the mean trading price of IDEX between 06/26/20 and 07/07/19 [sic], $1.64." ECF No. 21-2 at 3. However, the mean trading price of Ideanomics shares using the proper start date of June 25 is actually $1.74 per share on July 7, 2020. *See* Bleichmar Decl. Ex. D. And for Sons's claimed LIFO analysis (which is actually FIFO), Sons likewise acknowledges that for shares sold on July 2, 2020, his "losses are calculated by using the mean trading price of IDEX between 06/26/20 and 07/02/19 [sic], $1.76." ECF No. 21-2 at 4. However, the mean trading price using the proper start date of June 25 is actually $1.88 per share on July 2, 2020. *See* Bleichmar Decl. Ex. D. ***By utilizing the incorrect mean trading price, Sons inflated his losses by roughly 10% under what he claims to be FIFO and 13% under what he claims to be LIFO.***[8]

Courts routinely deny Lead Plaintiff applications based on erroneous loss calculations, such as here, because the errors demonstrate a level of carelessness and detachment to the Lead Plaintiff process and the litigation. If Sons cannot complete basic arithmetic calculations concerning his own financial interest in this case, he cannot be trusted to represent the interests of the Class. *See Taylor,* 2012 WL 5250400, at *3-5, n.8 (rejecting Lead Plaintiff movant based, in part, on his reliance on erroneous "mean trading price" and incorrect loss calculations); *In re*

---

[7] Beginning the 90-day lookback period on June 25 in this case is consistent with fact that it is the final day of the alleged Class Period. Bitran does not take the position that the 90-day period could begin prior to the end of the Class Period, for example, if a partial disclosure of information was disseminated to the market weeks or months prior to the end of the Class Period.

[8] An analysis isolating the impact of Sons's utilization of the incorrect mean trading price is attached as Ex. E to the Bleichmar Decl.

*Pfizer*, 233 F.R.D. 334, 338 (S.D.N.Y. 2005) (rejecting Lead Plaintiff movant because of "multiple inaccuracies in its damage calculations, which call into question its reliability"); *Diebold*, 2019 WL 5587148, at *6 (rejecting Lead Plaintiff movant that submitted "exaggerated loss totals" that "struck at the core of the PSLRA's lead plaintiff inquiry" and demonstrated "certain carelessness about detail that undermines the adequacy" of the movant); *Bhojwani v. Pistolis*, 2007 WL 9228588, at *3 (S.D.N.Y. July 31, 2007) (rejecting Lead Plaintiff movant who "would still have the largest paper loss of any of the named plaintiffs[, because] the fact that the data still do not quite add up indicates a certain carelessness about detail that undermines the adequacy of [the movant]"). Sons's errors to-date show far more than a "non-speculative risk that [he] will not be adequate." *Horizon*, 2016 WL 3566238, at *3.[9]

Sons's inadequacy is further demonstrated by his reliance on a newfangled loss methodology—unsupported by any legal authority and that is inconsistent with Son's actual trading data—that **inflates Sons's claimed LIFO loss by 38% and claimed FIFO loss by 22%.** *See* ECF No. 21-2 at 2. Specifically, Sons claims to have incurred a loss of $434,794 (FIFO/LIFO) under a so-called "Net Loss" method for which Sons has cited no authority because there is none. *Id.* However, Sons is only able to claim that loss by **disregarding all his post-Class Period sales and treating all purchases as retained.** Clearly, this "Net Loss" method is directly counter to the

---

[9] *See also Plaut v. Goldman Sachs Group, Inc.*, 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (errors in transaction data "speaks to a level of carelessness, and causes me to doubt whether [movant] possesses the necessary adequacy and sophistication to be lead plaintiff") (internal quotations omitted); *Micholle v. Opthotech Corp.*, 2018 WL 1307285, at *9 (S.D.N.Y. 2018) ("Because of these errors and discrepancies [in loss calculations], I find that [movant] has failed to demonstrate that it has selected counsel that is qualified and experienced as required under Rule 23"); *Camp v. Qualcomm Inc.,* 2019 WL 277360, at *3-4 (S.D. Cal. Jan. 22, 2019) (rejecting Lead Plaintiff candidate based on "doubts about [its] ability to serve as the class representative because of . . . errors in the transaction records and loss calculations accompanying [its] motion"); *In re Vonage IPO Sec. Litig.*, No. 07-177, 2007 WL 2683636, at *8 n.8 (D.N.J. Sept. 7, 2007) (proposed Lead Plaintiff inadequate because of "misleading trading data and loss calculations").

PSLRA, which sets forth the specific formula by which post-Class Period sales are to be valued. *See* 15 U.S.C. § 78u-4(e).  Specifically, when a plaintiff sells stock "prior to the expiration of the 90-day period …, the plaintiff's damages shall not exceed the difference between the …sale price paid . . . and the mean trading price of the security during the period ***beginning immediately after dissemination of information*** correcting the misstatement or omission and ending on the date on which the plaintiff sells … the security.  15 U.S.C. § 78u-4(e)(2).

That Sons would even present such a loss methodology when there are serious errors in his FIFO and LIFO calculations demonstrates that Sons lacks focus, is unable to prioritize, and strongly counsels against a finding of adequacy.  *See Diebold*, 2019 WL 5587148, at *6 (denying Lead Plaintiff applicant that "exaggerated loss totals originally submitted by . . .  some 34%"). Sons's appointment would place the Class at serious risk.[10]

**B.**     **Aghajanian Exaggerated His Loss and Fails to Satisfy The Requirements Of Rule 23**

Like Sons, Aghajanian disregarded the PSLRA's statutory "Limitation on Damages" provision by beginning the 90-day lookback period on June 26, 2020.  *See* ECF No. 17-2 at 2; 15 U.S.C. § 78u-4(e); *supra* at 5-7. When using June 26 to start the 90-day lookback period, Aghajanian valued his post-Class Period sales on June 26, 2020 at $1.46 per share, as opposed to $1.95 per share, which is the correct value when the look-back period is properly commenced on June 25.  Aghajanian's improper valuation of his post-Class Period sales at $1.46 per share, ***inflated his losses by roughly $25,000, or 23%.***  When correctly calculated, Aghajanian's LIFO loss is not $105,176 as he claims (ECF No. 17-2), but $80,676.  *See* Bleichmar Decl. Ex. B.

---

[10] Any attempt by Sons to correct his errors now should be rejected.  A bell cannot be un-rung. What's more, "[t]he plain language of the [PSLRA] precludes consideration of a financial loss asserted for the first time . . . filed after the sixty (60) day window has closed." *In re Telxon Corp. Sec. Litig.*, 67 F.Supp.2d 803, 818 (N.D. Ohio Aug. 25, 1999).

This is substantially less than Bitran's loss of over $93,000. And as discussed above, even if Aghajanian's loss was greater than Bitran's when properly calculated, Aghajanian would still be disqualified for failure to submit accurate loss information to the Court. *See supra* at 5-7.[11]

## C.     Bitran Is the Most Adequate Plaintiff

Recognizing that Bitran has a larger financial interest than Aghajanian and with Sons eliminated from consideration, Bitran is the only movant capable of satisfying the PSLRA's financial interest and adequacy and typicality requirements. With losses of over $93,000 in connection with his investments in Ideanomics stock, Bitran asserts a loss that is far larger than any qualified movant. In addition to his substantial financial interest in the litigation, Bitran also satisfies the relevant adequacy and typicality requirements under Rule 23 and has provided specific evidence of his active involvement in this litigation and commitment to represent the Class. *See* ECF No. 34-4. Thus, Bitran is the presumptive "most adequate plaintiff" under the PSLRA. Because there is no proof that undermines Bitran's typicality or adequacy, Bitran is entitled to appointment as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

## CONCLUSION

For the reasons discussed above, Bitran respectfully requests that the Court: (1) appoint him to serve as Lead Plaintiff; (2) approve his selection of BFA as Lead Counsel for the Class; (3) consolidate all related actions pursuant to Rule 42(a); and (4) grant any such further relief as the Court may deem just and proper.

---

[11] While Camaj withdrew his motion and is no longer eligible for Lead Plaintiff appointment (ECF No. 42), Camaj also used the incorrect lookback price which is grounds for disqualification for the reasons discussed above. *See* ECF No. 27-3.

Dated:  September 10, 2020

Respectfully Submitted,

**BLEICHMAR FONTI & AULD LLP**

*/s/ Javier Bleichmar*
Javier Bleichmar
Ross Shikowitz
7 Times Square, 27th Floor
New York, New York 10036
Telephone: (212) 789-1340
Facsimile:  (212) 205-3960
jbleichmar@bfalaw.com
rshikowitz@bfalaw.com

*Counsel for Proposed Lead Plaintiff Avraham Bitran, and Proposed Lead Counsel for the Class*

**OF COUNSEL**

John A. Kehoe
Michael K. Yarnoff
**KEHOE LAW FIRM, P.C.**
Two Penn Center Plaza
1500 JFK Boulevard, Suite 1020
Philadelphia, PA 19102
Telephone: (215) 792-6676
Facsimile: (510) 350-9701
jkehoe@kehoelawfirm.com
myarnoff@kehoelawfirm.com

*Additional Counsel for Proposed Lead Plaintiff Avraham Bitran*

10