UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEGAN LUNDY, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>IDEANOMICS, INC., ALFRED POOR, BRUNO WU, and CONOR MCCARTHY,<br><br>                              Defendants. | Case No. 1:20-cv-04944-GBD<br><br>CLASS ACTION |
| ANDREW KIM, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>IDEANOMICS, INC., ALFRED POOR, BRUNO WU, and CONOR MCCARTHY,<br><br>                              Defendants. | Case No. 1:20-cv-05203-GBD<br><br>CLASS ACTION |

**GARY SONS'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ..................................................................................................1

II.     ARGUMENT ........................................................................................................3

        A.      There Is No Genuine Dispute That Mr. Sons Is the Presumptive Lead Plaintiff.....3

        B.      Mr. Aghajanian's Attempt to Cut-Off the Class Period before the June 26th

                Disclosure of the Truth as Pled in the Complaints Fails for Several Reasons.........5

        C.      Aghajanian's Attempt to Make an Issue of Mr. Sons' Post-Class Purchases is

                Similarly Misguided....................................................................................8

        D.      Bitran's Petty Attacks on Mr. Sons's Are Unavailing. ...........................................8

III.    CONCLUSION.....................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*In re AIG Sec. Litig.*,
  265 F.R.D. 157 (S.D.N.Y. 2010) ............................................................................8

*Bhojwani v. Pistiolis*,
  2007 WL 9228588 (S.D.N.Y. July 31, 2007) ..........................................................9

*Camp v. Qualcomm Inc.*,
  2019 WL 277360 (S.D. Cal. Jan. 22, 2019)..............................................................9

*In re Comverse Tech., Inc. Sec. Litig.*,
  2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ............................................................5

*In re Comverse Tech., Inc. Sec. Litig.*,
  2008 WL 820015 (E.D.N.Y. Mar. 25, 2008) .......................................................5, 7

*In re Connetics Corp. Sec. Litig.*,
  257 F.R.D. 572 (N.D. Cal. 2009) ............................................................................7

*Cortina v. Anavex Life Scis. Corp.*,
  2016 WL 1337305 (S.D.N.Y. Apr. 5, 2016).........................................................3, 9

*In re DaimlerChrysler AG Securities Litig.*,
  216 F.R.D. 291 (D. Del. 2003) ................................................................................2

*Dietrich v. Bauer*,
  192 F.R.D. 119 (S.D.N.Y.2000) ..............................................................................7

*Erickson v. Snap, Inc.*,
  2019 WL 2223800 (C.D. Cal. Apr. 1, 2019) ...........................................................8

*Faris v. Longtop Fin.Techs. Ltd.*,
  2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011*)*...........................................................7

*GGCC, LLC v. Dynamic Ledger Sols., Inc.*,
  2018 WL 1388488 (N.D. Cal. Mar. 16, 2018)..........................................................9

*Goldstein v. Puda Coal, Inc.*,
  827 F. Supp. 2d 348 (S.D.N.Y. 2011)...................................................................2, 7

*Hessefort v. Super Micro Computer, Inc.*,
  317 F. Supp. 3d 1056 (N.D. Cal. 2018) ...................................................................7

*Jakobsen v. Aphria, Inc.*,
   2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) .......................................................4

*Karp v. Diebold Nixdorf, Inc.*,
   2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) .......................................................9

*Maliarov v. Eros Int'l PLC*,
   2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016).......................................................5

*Meyer v. Concordia Int'l Corp.*,
   2018 WL 3104624 (S.D.N.Y. May 23, 2018) ..................................................2, 8

*Micholle v. Opthotech Corp.*,
   2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) .......................................................9

*In re Monster Worldwide, Inc. Sec. Litig.*,
   251 F.R.D. 132 (S.D.N.Y. 2008) .......................................................8

*In re Pfizer Inc. Sec. Litig.*,
   282 F.R.D. 38 (S.D.N.Y. 2012) .......................................................7

*In re Pfizer Inc. Sec. Litig.*,
   233 F.R.D. 334 (S.D.N.Y. 2005) .......................................................9

*Plaut v. Goldman Sachs Group, Inc.*,
   2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019).......................................................9

*Reitan v. China Mobile Games & Entm3t Grp., Ltd.*,
   68 F. Supp. 3d 390 (S.D.N.Y. 2014).......................................................3

*In re Tronox, Inc. Sec. Litig.*,
   262 F.R.D. 338 (S.D.N.Y. 2009) .......................................................6

*In re Vonage IPO Sec. Litig.*,
   2007 WL 2683636 (D.N.J. Sept. 7, 2007) .......................................................9

*Wagner v. Barrick Gold Corp.*,
   251 F.R.D. 112 (S.D.N.Y. 2008) .......................................................8

## Federal Statutes

15 U.S.C. § 78u-4 ....................................................... *passim*

15 U.S.C. § 78u-4(e)(1) .......................................................4

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).......................................................4

15 U.S.C. § 78u-4(e)(2) .......................................................6, 10

## Other Authorities

Fed. R. Civ. P. 23.................................................................................................................4

## I.     INTRODUCTION

The complaints in these two related actions purport to cover a class of investors who purchased or otherwise acquired Ideanomics, Inc. ("Ideanomics" or the "Company") securities between "March 20, 2020 and June 25, 2020, *inclusive* (the "Class Period")." *Lundy,* ECF No.1 at ¶ 1; *Kim*, ECF No. 1 at ¶ 1.[1] The complaints identify two partial disclosure events: one on June 25, 2020, and another on June 26, 2020. The disclosure event on June 25th are *allegations* by two short-sellers of lies by the Defendants, which caused Ideanomics's stock to drop $0.65 or approximately 21%. *Id.* at ¶¶ 30-36. The disclosure event on June 26th, however, is an *admission* by Defendants confirming the validity of key portions of the short-seller's report, together with further revelations by the short sellers of Defendants' fraud. *Id.* at ¶¶ 37-43. The June 26th disclosure event caused Ideanomics's stock to drop $0.98 in a single trading day, nearly twice the decline on the unconfirmed June 25th short reports. *Id.* at ¶44.

On August 27, 2020, seven Ideanomics investors timely moved for appointment as lead plaintiff. Of the seven movants, Mr. Sons undisputedly claims the largest financial interest in the relief sought by the class. Significantly, in their moving papers, each of the applicants, including the next largest movant, Martin Camaj, as well as movants Rene Aghajanian and Avraham Bitran, adopted the complaints' theory of liability and allegations, acknowledging the partial disclosures on June 25th and the final disclosures on the June 26th.[2]

---

[1] The *Kim* action is paragraph by paragraph identical to the *Lundy* action.

[2] Camaj MOL, ECF No. 26 at p. 3, Aghajanian MOL, ECF No. 16 at pp. 4-5, and Bitran MOL, ECF No. 33 at pp. 6-7.

But now, despite the next largest movant (Mr. Camaj) conceding Mr. Sons' adequacy and typicality,[3] Mr. Aghajanian has changed his tune. In opposing Mr. Sons' appointment, Mr. Aghajanian attempts to rewrite the complaints so as to exclude deceived class members like Mr. Sons, who purchased Ideanomics stock at artificially inflated prices on June 25th, before the final June 26th disclosures. Mr. Aghajanian's revisionist play fails. Courts consistently hold that a presumptive lead plaintiff's purchase of shares after a partial disclosure does not render the investor atypical or subject it to unique defenses.[4]

Mr. Aghajanian's other challenge to Mr. Sons' appointment – Mr. Sons' "averaging down," or post-class period purchases of Ideanomics stock to decrease the average cost of his investment – is equally without merit. "Courts have repeatedly recognized that it is a common investment strategy for entities to engage in subsequent purchases [i.e., to purchase additional stock after the price of the stock decreases,] in order to decrease the average cost of their investment, and therefore, such investment strategies are not atypical for purposes of satisfying the requirements for class certification." *Meyer v. Concordia Int'l Corp.*, No. 1:16-cv-06467-RMB-KNF, 2018 WL 3104624, at *3 (S.D.N.Y. May 23, 2018) (quoting *In re DaimlerChrysler AG Securities Litig.*, 216 F.R.D. 291, 298 (D. Del. 2003)).

Finally, Mr. Bitran's trivial attack on Mr. Son's adequacy because of a transposed FIFO/LIFO label on his loss chart, and erroneous arguments concerning damage calculations, warrant minimal attention. Mr. Son's transactions are accurately laid out in full detail and his

---

[3] ECF No. 42 at p. 1.

[4] *See, e.g.*, *Goldstein v. Puda Coal, Inc*., 827 F. Supp. 2d 348, 355 (S.D.N.Y. 2011) (rejecting opposing movant's argument that presumptive lead plaintiff's purchases after alleged partial disclosure in the form of an unconfirmed third party report created a unique defense, particularly since competing movant itself proposed a class period that extended until the date of the company's later corrective disclosure).

loss calculations have not been exaggerated.[5] And, even accepting Mr. Bitran's warped interpretation of the PSLRA's "bounce-back" provision (15 U.S.C. § 78u-4(e)(1)), Mr. Son's financial interest under each of the *Lax* factors far exceeds that of any applicant. *See Cortina v. Anavex Life Scis. Corp.*, No. 1:15-cv-10162-JMF, 2016 WL 1337305, at *2 (S.D.N.Y. Apr. 5, 2016) (rejecting competing applicant's challenges to presumptive lead plaintiff's loss calculations because "even if all of them were resolved in Din's favor, the *Lax* factors ultimately weigh in Truong's favor.").

## II.   ARGUMENT

### A.   There Is No Genuine Dispute That Mr. Sons Is the Presumptive Lead Plaintiff.

Under any recognized metric or loss calculation methodology, Mr. Sons undisputedly has the largest financial interest in the relief sought by the class. Here, Mr. Sons bought and retained 350,000 shares throughout the alleged Class Period, expended $931,396.04 in net funds and sustained LIFO losses of $357,396.04 and FIFO losses of $315,396.04.[6] Each of these figures are multitudes larger than those of the two applicants who oppose Mr. Sons' appointment.

| Movant | No. of Shares Purchased | Net Shares Purchased | Total Net Funds Expended | LIFO Losses | FIFO Losses |
|--------|------------------------|----------------------|--------------------------|-------------|-------------|
| Sons | 350,000 | 350,000 | $931,396.04 | $357,396.04 | $315,396.04 |

---

[5] *Reitan v. China Mobile Games & Entm't Grp., Ltd*., 68 F. Supp. 3d 390, 399 (S.D.N.Y. 2014) ("The goal of the PSLRA was not to select individuals for lead plaintiff who make no mistakes," but to favor "investors who suffered the greatest financial losses over other parties.").

[6] As noted below, Bitran complains that Mr. Sons transposed the LIFO and FIFO calculations on the loss chart submitted with his trade certification. But Aghajanian and Bitran correctly state Court's generally favor LIFO (ECF No. 49 n.7; ECF no. 51 n.4), so the transposition actually understated Mr. Son's preferred loss calculation. The correct LIFO loss calculation, as pointed out by Mr. Bitran, is the larger of the two as recognized by Bitran (ECF No. 51 n.3).

| Aghajanian | 50,000 | 50,000 | $178.176.40 | $105,176.40 | NC |
| Bitran | 60,514 | 60,514 | $217,089.98 | $93,229.12 | $93,229.12 |

Mr. Sons has also made a "preliminary showing" that he satisfies the typicality and adequacy requirements of Rule 23. *Jakobsen v. Aphria, Inc*., No. 1:18-cv-11376-GBD, 2019 WL 1522598, at *5 (S.D.N.Y. Mar. 27, 2019) (Daniels, J.). Like all members of the class, Mr. Sons alleges that he purchased Ideanomics stock during the Class Period and suffered losses after it was discovered that Defendants' misleading statements artificially inflated its stock price during that period. *Id*. Likewise, Mr. Sons – the President and CEO of a Fresno-based construction company who has been actively investing over the past 40 years – will fairly represent the class. ECF No. 20 at 6. Mr. Sons has retained counsel highly experienced, there is no conflict between Mr. Sons and the Class and Mr. Sons is committed to the vigorous prosecution of the litigation. ECF No. 20 at 5. Indeed, recognizing that Mr. Son "has the largest financial interest, and that he is neither atypical nor inadequate," the next largest movant, Mr. Camaj, withdrew his motion in favor of Mr. Sons, but "remains ready, willing, and able to assume the duties of lead plaintiff and/or a class representative." *See* ECF No. 42.

Having satisfied these two steps, Mr. Sons is entitled to a strong presumption that he is the "most adequate plaintiff," which can only be rebutted "upon proof" that Mr. Sons will not fairly and adequately protect the interests of the Class, or that Mr. Sons is subject to unique defenses that would render her incapable of doing so. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Here, competing movants Aghajanian and Bitran have offered no "proof" suggesting Mr. Sons is unfit to represent the Class. Instead, they have offered a host of tired typicality and adequacy arguments frequently rejected by courts in this District and throughout the country.

**B.**     **Mr. Aghajanian's Attempt to Cut-Off the Class Period before the June 26th Disclosure of the Truth as Pled in the Complaints Fails for Several Reasons.**

Although conceding that Mr. Sons claims a larger loss, Mr. Aghajanian contends that Mr. Sons is somehow disqualified from serving as lead counsel since he purchased his Ideanomics stock after the June 25th release of the short seller reports. Mr. Aghajanian's belated attempt to shorten the Class Period to sometime before 10:00 am EDT on June 25th is belied by the complaints, Aghajanian's (and his counsel's) previous positions, and the law.

First, Aghajanian ignores the well-pled allegations of the complaint, which must be accepted as true, averring that Ideanomics's stock was artificially inflated for the entirety of June 25th. *See Maliarov v. Eros Int'l PLC*, No. 1:15-cv-08956-AJN, 2016 WL 1367246, at *3 (S.D.N.Y. Apr. 5, 2016) (the assessment of lead plaintiff qualifications "must be 'based on the facts alleged in the complaint.'") (quoting *In re Comverse Tech., Inc*. Sec. Litig., No. 1:06-cv-01825-NGG-RER, 2007 WL 680779, at *5 (E.D.N.Y. Mar. 2, 2007), *adhered to on reconsideration*, No. 1:06-cv-01825-NGG-RER, 2008 WL 820015 (E.D.N.Y. Mar. 25, 2008)). Here, the complaints include all purchasers of Ideanomics stock through and including June 25, 2020. Tellingly, Aghajanian's counsel (Kessler Topaz Meltzer & Check LLP) published PSLRA notices seeking investors who purchased "***between March 20, 2020 and June 25, 2020***, inclusive (the "Class Period")." Both firms' press releases parroted the complaint's allegations concerning the additional partial disclosures on June 26th and the resulting stock drop that day. *See* Declaration of Lucas E. Gilmore ("Gilmore Decl."), Ex. A.[7] Thus, Aghajanian's counsel did not care about the time of day in seeking to represent investors.

---

[7] Bitran's additional counsel, the Kehoe Law Firm, P.C., similarly published a PSLRA notice identifying intraday trading on the 26th as down "over 40%, trading at $1.20 per share. *Id*.

Second, Aghajanian contradicts his own motion in which he lays out in detail the additional disclosures after the short seller reports occurring on June 26th, causing damages to class members. ECF No. 16 at 4-5. ("On the following day, June 26, 2020, Ideanomics responded . . . revealing that its existing activities at the site 'occupy approximately . . . 215,000 square feet'—contradicting the Company's prior claims . . . ."). Thus, in moving for lead, Aghajanian did not consider the time of day of purchases on the 25th to be an issue.

Third, Aghajanian's new spin on the case similarly undermines his own PLSRA 90-day lookback calculation, which starts the 90-day lookback, not on the 25th, but on the 26th—a concession that the date on which the information correcting Defendants' alleged misstatements and omissions was not disseminated to the market until June 26. ECF No. 17-2 at 2.[8]

Fourth, the mere fact that Mr. Sons purchased IDEX shares after the June 25th partial disclosure by no means renders him atypical. *See, e.g.*, *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 346 (S.D.N.Y. 2009) (finding that purchases following partial corrective disclosures that do not "sufficiently correct . . . prior false and misleading statements" do not render proposed lead plaintiff atypical); *In re Comverse Tech., Inc. Sec. Litig.*, 2008 WL 820015, at *3 (same). Here, although the June 25th short seller reports made allegations regarding the underlying fraud, at the

---

[8] As noted below, Mr. Camaj, the next largest movant, uses the same 90-day lookback as Mr. Sons – $1.42 – starting the period on June 26, 2020. *See* ECF No. 27-3 ("Lookback Period Beginning: 6/26/2020"). So too, Aghajanian starts the 90-day look back calculation and the post-class period on June 26, 2020 by using $1.46 (the closing price on June 26, 2020). ECF No. 17-2. For purposes of calculating the 90-day lookback for shares sold after the class period but within 90-days, movants must use "the mean trading price . . . during the period immediately after dissemination of information correcting the misstatement or omission and ending on the date on which the plaintiffs sells . . . the security." 15 U.S.C. § 78u-4(e)(2). Of the remaining movants, only Bitran started the 90-day look-back on the 25th. While the complaint is clear that the class period ends after disclosures on the 26th, the reason the Class Period did not include purchasers on the date appears to be because the disclosure on the 26th was before the market opened. For that same reason, Mr. Sons began the PSLRA look-back calculation to start on the 26th.

time of their publication, the news was merely a third-party report that remained unconfirmed by Ideanomics. Since the reports could not "actually concede[ ] the existence of the fraudulent schemes at issue in this litigation," such a disclosure cannot have provided "any curative disclosure." *Puda Coal, Inc*., 827 F. Supp. 2d at 355 (S.D.N.Y. 2011) (quoting *Dietrich v. Bauer*, 192 F.R.D. 119, 125 n. 1 (S.D.N.Y.2000) (dismissing movant's argument that investor's purchases after unconfirmed third party report rendered applicant atypical, as challenge ignored the company's subsequent corrective disclosure and contradicted movant's prior positions).

    *Faris v. Longtop Fin. Techs. Ltd.,* No. 1:11-cv-03658-VEC, 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011*),* which Mr. Aghajanian selectively quotes, does not compel a different result. In fact, in *Faris*, the court appointed a lead plaintiff, who like Mr. Sons, purchased shares after a corrective disclosure. Moreover, as other later cases have pointed out, "the weight of authority is substantially against [Mr. Aghajanian's] argument and 'favor[s] the position that the purchase of stock after a partial disclosure is not a per-se bar to satisfying the typicality requirement.'" *Hessefort v. Super Micro Computer, Inc*., 317 F. Supp. 3d 1056, 1061 (N.D. Cal. 2018) (quoting *In re Connetics Corp. Sec. Litig*., 257 F.R.D. 572, 577 (N.D. Cal. 2009)).

    Finally, Mr. Aghajanian's speculation that Mr. Sons's June 25th purchases could present risks at the class certification stage is unsupported.[9]

---

[9] *See In re Pfizer Inc. Sec. Litig*., 282 F.R.D. 38, 44 (S.D.N.Y. 2012) (class representative's post-disclosure investments in manufacturer did not render representative atypical); *In re Monster Worldwide, Inc. Sec. Litig*., 251 F.R.D. 132, 135 (S.D.N.Y. 2008) ([N]umerous courts have held [that] the fact that a putative class representative purchased additional shares in reliance on the integrity of the market after the disclosure of corrective information has no bearing on whether or not [the representative] relied on the integrity of the market . . . before the information at issue was corrected or changed."); *In re AIG Sec. Litig.*, 265 F.R.D. 157, 169 (S.D.N.Y. 2010) (rejecting argument that proposed class representative was atypical based on post-disclosure purchases of defendant's stock).

**C.      Aghajanian's Attempt to Make an Issue of Mr. Sons' Post-Class Purchases is Similarly Misguided.**

Contrary to Mr. Aghajanian's arguments, Mr. Sons' post-class period purchases to average down the costs of his initial investments do not create a unique defense or otherwise render Mr. Son inadequate. To the contrary, courts have repeatedly recognized that this is a common investment strategy that has no bearing on the class representative's typicality. *See Concordia Int'l Corp.*, 2018 WL 3104624, at *3 (rejecting argument that lead plaintiff was atypical (and inadequate) because he continued buying stock after the class period as part of an averaging down strategy); *see also Wagner v. Barrick Gold Corp.*, 251 F.R.D. 112, 116-17 (S.D.N.Y. 2008) (where the proposed class representative "bought Barrick stock after the end of the class period," the district court stated: "[T]he subsequent purchase of stock by a plaintiff does not render his claim atypical because the subsequent purchase is a common investment technique used to decrease the average cost of the investment.")).

Mr. Aghajanian's reliance on *Erickson v. Snap, Inc.*, No. 2:17-cv-03679-SVW-AGR, 2019 WL 2223800, at *2 (C.D. Cal. Apr. 1, 2019), is misplaced. There, the court did not find the applicant atypical or inadequate solely due to its post-class period purchases. There, the movant presented "[s]everal potential problems," including that it lacked standing and statutory authority to bring suit and that it was an alleged "in-and-out" trader having sold all of its stock prior to the final alleged corrective disclosures. Here, Mr. Sons without question has standing and his trading presents no such problems.

**D.      Bitran's Petty Attacks on Mr. Sons's Are Unavailing.**

Bitran first complains Mr. Son transposed his LIFO/FIFO labels in loss calculations. While correct, the transposition "was a mistake made in good faith rather than as an act of legal gamesmanship of the sort the PSLRA was designed to prevent." *GGCC, LLC v. Dynamic Ledger*

*Sols., Inc.*, No. 17-CV-06779-RS, 2018 WL 1388488, at *4 (N.D. Cal. Mar. 16, 2018) (recognizing that disqualifying an applicant for mistake made in good faith "would undercut the PSLRA's preference for appointing the plaintiff with the greatest financial stake in the outcome.").

Bitran's cited authorities provide no support his conclusion that this mistake renders Mr. Sons' inadequate. In contrast to Mr. Sons, the applicants in those cases made serious errors reflecting a lack of candor with the court, including refusing to provide adequate background information and greatly exaggerating losses,[10] presenting misleading trade data,[11] or applying novel damage theories to inflate losses.[12] There is no such record here.

Bitran's claim that Mr. Sons used the wrong 90-day look-back is of equal insignificance. Even crediting Bitran's erroneous application of the PSLRA's loss formula, Mr. Sons's losses still triple Bitran's and Aghajanian's and near double Camaj's. *See Anavex Life Scis. Corp.*, 2016 WL 1337305, at *2 (refusing to resolve competing movant's challenges to applicant's claimed losses since "even if all of them were resolved in Din's favor, the *Lax* factors ultimately weigh in Truong's favor.").

In any case, Bitran is wrong in arguing that Mr. Sons used the wrong start date for the PSLRA 90-day lookback calculation, and his papers essentially admit so much. Bitran states the

---

[10] *See Karp v. Diebold Nixdorf, Inc.*, No. 1:19-cv-06180-LAP, 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019); *Camp v. Qualcomm Inc.*, No. 3:18-cv-01208-CAB-AHG, 2019 WL 277360, at *3-4 (S.D. Cal. Jan. 22, 2019).

[11] *See Bhojwani v. Pistiolis*, No. 1:06-cv-13761-CM, 2007 WL 9228588, at *3 (S.D.N.Y. July 31, 2007); *Plaut v. Goldman Sachs Group, Inc.*, No. 1:18-cv-12084-VSB, 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019); *In re Vonage IPO Sec. Litig.*, No. 3:07-cv-00177-FLW-LHG, 2007 WL 2683636, at *8 n.8 (D.N.J. Sept. 7, 2007); *Micholle v. Opthotech Corp.*, No. 1:17-cv-00210-VSB, 2018 WL 1307285, at *9 (S.D.N.Y. 2018).

[12] *See In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 338 (S.D.N.Y. 2005).

PSLRA begins the calculation of the 90-day lookback "beginning *immediately* after dissemination of information correcting the misstatement or omission". 15 U.S.C. § 78u-4(e)(2). ECF No. 51 at 11. But then Bitran argues to cut-off the end of the class period prior to the ultimate disclosures of the truth pled in the operative complaints. To do so, Bitran ignores the well-pled disclosure on the 26th, where the company admitted to part of the short seller's accusations, and the stock drop on that date (despite laying these disclosures out in his initial brief). *Cf.* Bitran Motion, ECF No. 33 at 6-7.

Then, and without case law citation, Bitran takes the novel position that the 90-day look back must start with "the *first* date in which the corrective information was disseminated to the market" ECF No. 51 at 5. In the most contradictory fashion, Bitran then concedes the opposite in a footnote: "Bitran does not take the position that the 90-day period could begin prior to the end of the Class Period for example, if a partial disclosure of information was disseminated to the market. . . ." ECF No. 51 n.6. Perhaps the confusion is that Bitran, for purposes of this motion, does not want this Court to consider the disclosures on the 26th as "new disclosures." However, Bitran's lead motion and the complaints could not be more clear; new partial disclosures occurred both on the 25th and 26th. Accordingly, Bitran's challenge lacks merit.

## III.   CONCLUSION

For the reasons discussed above, Mr. Sons requests that the Court appoint him Lead Plaintiff and approve his selection of Hagens Berman as Lead Counsel for the Class.

DATED: September 17, 2020          Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By  */s/ Lucas E. Gilmore*
   LUCAS E. GILMORE

Reed R. Kathrein (admitted *pro hac vice*)

10

Lucas E. Gilmore (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

Jason Allen Zweig (JZ-8107)
HAGENS BERMAN SOBOL SHAPIRO LLP
555 Fifth Avenue, Suite 1700
New York, NY 10117
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
jasonz@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Counsel for [Proposed] Lead Plaintiff*
*Gary Sons*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

*/s/ Lucas E. Gilmore*
LUCAS E. GILMORE