**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MEGAN LUNDY, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> IDEANOMICS, INC., ALFRED POOR, BRUNO WU, and CONOR MCCARTHY, <br><br> Defendants. | Civil Action No. 1:20-cv-04944-GBD <br><br> <u>CLASS ACTION</u> |
| ANDREW KIM, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> IDEANOMICS, INC., ALFRED POOR, BRUNO WU, and CONOR MCCARTHY, <br><br> Defendants. | Civil Action No. 1:20-cv-05203-GBD <br><br> <u>CLASS ACTION</u> |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF AVRAHAM BITRAN FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF HIS SELECTION OF LEAD COUNSEL, <u>AND CONSOLIDATION OF RELATED ACTIONS</u>**

Bitran is the "most adequate plaintiff" and should be appointed Lead Plaintiff under the PSLRA.  15 U.S.C. § 78u-4(a)(3)(B).[1]  Bitran incurred a LIFO loss of $93,229—the most of any remaining qualified movant—and is unquestionably typical and adequate to represent the interests of the Class.  No movant contests the size of Bitran's loss or his fitness to assume the role of Lead Plaintiff to represent the interests of absent Class members.

This unblemished record stands in stark contrast to the infirmities of the competing movants.  Sons cannot even calculate his losses correctly and then fabricated a new "Net Loss" methodology that is inconsistent with Sons's trading data and the PSLRA.  And Aghajanian exaggerated his claimed losses by inflating the "mean trading price" of Ideanomics shares he sold after the Class Period.  *See* ECF No. 51 at 7-9; 15 U.S.C. § 78u-4(e)(1).  Their errors strike at the "core of the PSLRA's lead plaintiff inquiry: determining which movant holds the largest financial stake in the litigation."  *Karp v. Diebold Nixdorf, Inc.*, 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) (rejecting Lead Plaintiff movant that submitted "exaggerated loss totals" and demonstrated "carelessness about detail that undermines [] adequacy").  They cannot be trusted to serve as fiduciaries to absent class members.  *See* ECF No. 51.

Sons's inability to represent the Class is even more clear after he filed a "Notice of Errata" admitting that his opposition brief contained incorrect loss information despite recognizing that "financial loss is the most important element in determining which plaintiff has the largest financial interest."  ECF Nos. 48 at 1; 53.  Sons does not miss an opportunity to botch the accuracy of the most critical information the Court must rely upon to decide this motion.  In fact, Sons has still failed to submit correct loss information to the Court, as his LIFO and FIFO loss calculations

---

[1] Unless otherwise indicated: citations to ECF No.__ refer to the *Lundy* docket; capitalized terms are defined in Bitran's initial and opposition briefs (ECF Nos. 32, 51); and emphasis is added.

remain transposed and the 90-day look-back price he used to value shares he sold is wrong.  Sons should not be granted a ***fourth bite*** of the apple to attempt to correct on reply the critical financial information that courts require to be correct when initial Lead Plaintiff motions are filed.  *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999) ("The plain language of the [PSLRA] precludes consideration of a financial loss asserted for the first time . . . filed after the sixty (60) day window has closed").  After the Lead Plaintiff motion, no Class member will be able to correct any additional fatal mistakes made by Sons who will be subject to relentless attacks by Defendants.  Simply put, Sons has demonstrated that he is not up to the task.

Specifically, in his initial motion, Sons put forward incorrectly calculated LIFO and FIFO losses as well as a "Net Loss" of $434,793.77 based on a loss methodology for which he cited no legal support.  *See* ECF No. 21-2.  In his opposition brief, Sons relied solely on his unsupported "Net Loss" of $434,793.77, citing it three separate times, and apparently abandoning his incorrectly calculated FIFO and LIFO losses, despite the fact that virtually all courts consider LIFO when assessing financial interest.  *See City of Monroe Emps'. Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 295 (S.D.N.Y. 2010).

It was only ***after*** Bitran filed his opposition brief challenging the use of Sons's "Net Loss" method as "directly counter to the PSLRA" (ECF No. 51 at 7-8) that Sons reversed course and filed his "Notice of Errata" claiming that his exclusive reliance on his "Net Loss" of $434,793.77 was "an inadvertent error," that conveniently inflated his loss by roughly 20%.  ECF No. 53 at 1.

Bitran is skeptical that, as Sons claims, his error was "inadvertent," (as opposed to an intentional decision to rely on an unsupported and improper loss method that inflated losses), given that ***the same purported "inadvertent" error occurred three times in Sons's brief and the "correct claimed losses" are nowhere to be found.***  ECF Nos. 48 at 1, 4; 53 at 1.  Inadvertent or

2

not, the admitted errors in Sons's opposition brief compound the errors in his initial motion and further confirm that he is attempting to game the PSLRA Lead Plaintiff appointment process, or he is either careless, detached, or simply unable to oversee counsel and unfit to represent the Class. *See* ECF No. 51 at 6-7 n.9 (collecting cases rejecting Lead Plaintiff candidates based on errors in loss information).

As for Aghajanian, he likewise has still failed to correctly calculate his losses and recognize that his LIFO losses are $13,000 less than Bitran's when correctly calculated using the correct average "mean trading price" for post Class Period sales.  *See* ECF No. 51 at 8-9; 15 U.S.C. § 78u-4(e)(1).  The PSLRA's statutory "Limitation on Damages" provision dictates that the 90-day lookback period to calculate the "mean trading price" began on June 25, 2020. 15 U.S.C. § 78u-4(e).  This is because the "90-day period [starts] ***beginning on the date on which the information*** correcting the misstatement or omission . . . ***is disseminated to the market***," 15 U.S.C. § 78u-4(e)(1), which, in this case, is June 25. *Lundy* Compl., ¶4 ("On June 25, 2020, analyst Hindenburg Research issued a series of tweets in which it called Ideanomics 'an egregious & obvious fraud'"). However, Aghajanian improperly commenced the 90-day lookback period on June 26, which substantially inflated his loss.  When correctly calculated, Aghajanian's LIFO loss is $80,676, roughly $13,000 less than Bitran's LIFO loss of $93,229.  *See* ECF Nos. 51 at 3; 52-2.

Any attempt to claim that a different date should govern post-Class Period sales would be meritless and contrary to the PSLRA.  The PSLRA further states that for post-Class Period sales, the 90-day period "begin[s] ***immediately*** after dissemination of information correcting the misstatement or omission."  15 U.S.C. § 78u-4(e)(2).  Here, Aghajanian admitted that "the corrective disclosures [] began entering the market at or about 10:00 a.m. EDT" on June 25, 2020. ECF No. 49 at 2 n.3.  Thus, Aghajanian's own arguments demonstrate that the 90-day lookback

period should begin using the closing price of June 25, which is "*immediately* after" when "the corrective disclosures [] began entering the market at or about 10:00 a.m. EDT" on June 25, 2020. 15 U.S.C. § 78u-4(e)(2); ECF No. 49 at 2 n.3.

No movant challenges Bitran's financial interest, adequacy, or typicality. The only evidence in the record proves that he will be an excellent Lead Plaintiff. On the other hand, appointing either Sons or Aghajanian (who has a lesser financial interest than Bitran) would expose the Class to significant risks. *See Schaffer v. Horizon Pharma Plc*, 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016) (presumption of adequacy may be rebutted upon "proof of a non-speculative risk that the movant will not be adequate").

## CONCLUSION

For the reasons discussed above, Bitran respectfully requests that the Court: (1) appoint him to serve as Lead Plaintiff; (2) approve his selection of BFA as Lead Counsel for the Class; (3) consolidate all related actions pursuant to Rule 42(a); and (4) grant any such further relief as the Court may deem just and proper.

Dated:  September 17, 2020

Respectfully Submitted,

**BLEICHMAR FONTI & AULD LLP**

*/s/ Javier Bleichmar*
Javier Bleichmar
Ross Shikowitz
7 Times Square, 27th Floor
New York, New York 10036
Telephone: (212) 789-1340
Facsimile:  (212) 205-3960
jbleichmar@bfalaw.com
rshikowitz@bfalaw.com

*Counsel for Proposed Lead Plaintiff Avraham Bitran, and Proposed Lead Counsel for the Class*

**OF COUNSEL**

John A. Kehoe
Michael K. Yarnoff
**KEHOE LAW FIRM, P.C.**
Two Penn Center Plaza
1500 JFK Boulevard, Suite 1020
Philadelphia, PA 19102
Telephone: (215) 792-6676
Facsimile: (510) 350-9701
jkehoe@kehoelawfirm.com
myarnoff@kehoelawfirm.com

*Additional Counsel for Proposed Lead Plaintiff Avraham Bitran*