UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE IDEANOMICS, INC. SECURITIES LITIGATION | No. 20-cv-04944-GBD

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT
BRUNO WU'S MOTION TO DISMISS THE AMENDED COMPLAINT**

ARNOLD & PORTER KAYE SCHOLER LLP

250 West 55th Street
New York, New York 10019
Telephone: (212) 836-8000
Facsimile:  (212) 836-8689

*Attorneys for Bruno Wu*

**TABLE OF CONTENTS**

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    I.      DR. WU'S "ACTIVE INVOLVEMENT" IN CORPORATE AFFAIRS IS
          INSUFFICIENT TO SUPPORT AN INFERENCE OF SCIENTER.................... 2

    II.     DR. WU'S INVESTMENTS ARE INSUFFICIENT TO ESTABLISH A
          MOTIVE TO COMMIT SECURITIES FRAUD .................................................... 3

    III.    DR. WU'S STATEMENTS WERE TRUE ............................................................. 6

    IV.   THE SHORT SELLER REPORTS ARE INCONSISTENT AND
          UNRELIABLE ....................................................................................................... 8

    V.     PLAINTIFF DOES NOT PLEAD DR. WU WAS A CONTROLLING
          PERSON ................................................................................................................. 9

CONCLUSION .................................................................................................................. 11

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alaska Laborer Emp'rs Ret. Fund v. Scholastic Corp.*,
2010 WL 3910211 (S.D.N.Y. Sept. 30, 2010) ........................................................................ 3

*Antwi v. Montefiore Med. Ctr.*,
2014 WL 6481996 (S.D.N.Y. Nov. 18, 2014) ........................................................................ 6

*Chill v. General Elec. Co.*,
101 F.3d 263 (2d Cir. 1996) ................................................................................................... 1

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009) ................................................................................................... 4

*Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*,
794 F.3d 297 (2d Cir. 2015) ................................................................................................... 9

*Freudenberg v. E\*Trade Fin. Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010) .................................................................................... 8

*Fulton County Employees Retirement System v. MGIC Investment Corporation*,
675 F.3d 1047 (7th Cir. 2012) ............................................................................................. 10

*Ho v. Duoyuan Glob. Water, Inc.*,
887 F. Supp. 2d 547 (S.D.N.Y. 2012) ............................................................................. 8, 10

*In re Braskem S.A. Sec. Litig.*,
246 F. Supp. 3d 731 (S.D.N.Y. 2017) .................................................................................... 8

*In re China Mobile Games & Entm't Grp., Ltd. Sec. Litig.*,
2016 WL 922711 (S.D.N.Y. Mar. 7, 2016) ....................................................................... 3, 4

*In re DRDGOLD Ltd. Sec. Litig.*,
472 F. Supp. 2d 562 (S.D.N.Y. 2007) .................................................................................... 4

*In re Skechers USA, Inc. Sec. Litig.*,
444 F. Supp. 3d 498 (S.D.N.Y. 2020) .................................................................................... 5

*In re Tarragon Corp. Sec. Litig.*,
2009 WL 10732259 (S.D.N.Y. Mar. 27, 2009) ...................................................................... 6

*In re Tronox, Inc. Sec. Litig.*,
769 F. Supp. 2d 202 (S.D.N.Y. 2011) ............................................................................... 9, 10

*In re Turquoise Hill*,
2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) ........................................................................ 3

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011) .............................................................................................................. 10

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001) ............................................................................................... 4, 6

*Kleinman v. Elan Corp., PLC*,
706 F.3d 145 (2d Cir. 2013) ..................................................................................... 7

*Lasker v. New York State Elec. & Gas Corp.*,
85 F.3d 55 (2d Cir. 1996) ......................................................................................... 6

*Liu v. Intercept Pharms., Inc.*,
2020 WL 5541345 (S.D.N.Y. Sept. 9, 2020)............................................................ 3

*Long Miao v. Fanhua, Inc.*,
442 F. Supp. 3d 774 (S.D.N.Y. 2020) ...................................................................... 9

*Lucas v. Icahn*,
616 F. App'x 448 (2d Cir. 2015)............................................................................... 9

*McIntire v. China MediaExpress Holdings, Inc.*,
927 F. Supp. 2d 105 (S.D.N.Y. 2013) .................................................................. 3, 8

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) ..................................................................................... 4

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015).................................................................................................. 7

*Patel v. L-3 Communications Holdings, Inc.*,
2016 WL 1629325 (S.D.N.Y. Apr. 21, 2016) .......................................................... 5

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
573 F.3d 98 (2d Cir. 2009) ....................................................................................... 3

*SEC v. First Jersey Sec., Inc.*,
101 F.3d 1450 (2d Cir. 1996) ................................................................................... 9

*Sec. & Exch. Comm'n v. Yorkville Advisors, LLC*,
305 F. Supp. 3d 486 (S.D.N.Y. 2018) .................................................................... 10

*Silsby v. Icahn*,
17 F. Supp. 3d 348 (S.D.N.Y. 2014) ........................................................................ 9

*Tamar v. Mind C.T.I., Ltd.*,
723 F. Supp. 2d 546 (S.D.N.Y. 2010) ...................................................................... 5

*Zagami v. Cellceutix Corp.*,
2016 WL 3199531 (S.D.N.Y. June 8, 2016) .......................................................... 10

## PRELIMINARY STATEMENT

Plaintiff's opposition to defendant Dr. Bruno Wu's motion to dismiss confirms what is wrong with his Complaint against Dr. Wu: Plaintiff's claims are premised not on concrete allegations of wrongdoing, but on the conjecture that Dr. Wu *must have known* about *some* wrongdoing at *some* point because of Dr. Wu's previous leadership roles at Ideanomics, Inc. (the "Company"). But such inferences, based solely on a defendant's corporate positions, are insufficient to state a claim.

Ignoring that deficiency, plaintiff repeats the Complaint's mischaracterizations of the Company's filings and governing documents in a vain effort to show that Dr. Wu was generally active in the Company's affairs. Plaintiff misses the point:  Dr. Wu's general involvement in the Company—active or not—reveals nothing about what he knew about the activity at the MEG Center, how he knew it, and when he knew it, all of which are necessary to plead securities fraud.

Plaintiff attempts to bridge this chasm by pointing to Dr. Wu's investments and financial interest in the success of the Company. Specifically, his opposition brief points out that (1) Dr. Wu controlled at least 21% of Ideanomics' shares (Lead Plaintiff's Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss the Consolidated Amended Complaint, ("Opp."), ECF No. 96, at 4) and (2) Dr. Wu's affiliated entity, Sun Seven Stars, lent Ideanomics $5 million in 2019, with debt convertible to Ideanomics shares (Opp. 4, 10). The opposition portrays these investments as somehow sinister or inappropriate. Again, plaintiff misses the point:  Dr. Wu's and Sun Seven Stars' substantial and much-needed investments, which the Company's filings fully disclosed, gave him a long-term stake in Ideanomics' financial prosperity. As the Second Circuit has observed, "such a generalized motive, one which could be imputed to any publicly-owned, for-profit endeavor, is not sufficiently concrete for purposes of inferring scienter." *Chill v. General Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996).

Stripped of these unwarranted suggestions and improper inferences, plaintiff's opposition fails to point to a single, tangible fact demonstrating that Dr. Bruno Wu possessed any information or was aware of any red flags suggesting his statements about the MEG Center were false or misleading. Indeed, as established in Dr. Wu's opening brief, plaintiff does not plead facts sufficient to show that those statements were false or misleading at all.[1]

In short, plaintiff has failed to meet his heightened burden to plead the elements of scienter or a false or misleading statement that are necessary to state a claim for securities fraud. Nor does plaintiff adequately plead that Dr. Wu has control person liability.

## ARGUMENT

### I.    DR. WU'S "ACTIVE INVOLVEMENT" IN CORPORATE AFFAIRS IS INSUFFICIENT TO SUPPORT AN INFERENCE OF SCIENTER

The opposition contends that "Defendant Wu loomed large at the Company, either as Chairman or CEO" and that he had "hands-on leadership of the Company." (Opp. 4.) It asserts that "Wu could not have performed these management functions without intimate knowledge of the inner workings of the Company, including its only potentially viable business segment."  (Opp. 35.)  This is the sum total of plaintiff's recklessness theory. The complaint does not allege that Dr. Wu received any reports, communications, or complaints from employees who were involved in developing the MEG Center.  It does not allege that Dr. Wu visited the site in Qingdao on or around the relevant dates. Nor does the complaint allege that Dr. Wu reviewed photographs or renderings of the MEG Center. In other words, there are no concrete factual allegations allowing the Court to make the necessary "strong inference" that Dr. Wu made statements he knew were untrue or whose truth he recklessly disregarded. As this Court held in *McIntire v. China MediaExpress Holdings,*

---

[1] Dr. Wu adopts the arguments of Defendants Ideanomics, Poor, McCarthy, and Sklar's opening and reply briefs in support of their motion to dismiss the consolidated amended complaint.

2

*Inc*., 927 F. Supp. 2d 105, 128 (S.D.N.Y. 2013), "allegations…based solely on [defendants'] board membership or executive positions are insufficient to plead scienter." (citation omitted); *Liu v. Intercept Pharms., Inc*., 2020 WL 5441345, at *4 (S.D.N.Y. Sept. 9, 2020) (complaint "had not alleged particularized facts 'from which the Court could infer that the Individual Defendants knew, at the time the statements were made'").

Nor can plaintiff argue that scienter can be inferred based on Dr. Wu's *access* to information that might contradict his statements. Such an inference is permissible only when plaintiffs "specifically identify the reports or statements containing this information." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009). By contrast, this court has found it insufficient where plaintiffs refer vaguely to unspecified "sources of information" or other "raw data" to which a defendant allegedly had access. *See, e.g., In re China Mobile Games & Entm't Grp., Ltd. Sec. Litig*., 2016 WL 922711, at *8 (S.D.N.Y. Mar. 7, 2016) (citation omitted); *In re Turquoise Hill*, 2014 WL 7176187, at *6 (S.D.N.Y. Dec. 16, 2014) (allegations that defendants' "periodic review of . . . consolidated financial statements 'gave them knowledge and/or access to information' about" wrongful accounting practices were "conclusory accusations founded on nothing more than defendants' corporate positions and [were] entitled to no weight" (citations omitted)); *Alaska Laborer Emp'rs Ret. Fund v. Scholastic Corp*., 2010 WL 3910211, at *8 (S.D.N.Y. Sept. 30, 2010). If mere "access" to records were enough for an inference of scienter, then every plaintiff would automatically satisfy that element for every senior executive in every securities case. The absurdity of that conclusion is obvious.

## II.   DR. WU'S INVESTMENTS ARE INSUFFICIENT TO ESTABLISH A MOTIVE TO COMMIT SECURITIES FRAUD

Unable to rely on Dr. Wu's role, plaintiff also tries to rest on Dr. Wu's stake in the company: "More than a figurehead, by March 15, 2020, Wu was the Company's largest

3

shareholder, controlling at least 21% of its shares, and also a financier: he was CEO of affiliated entity Sun Seven Stars, which lent Ideanomics $5 million in 2019, with the debt convertible to Ideanomics shares." (Opp. 4.) These legitimate business investments, which were publicly disclosed, also do not permit a strong inference of scienter.

"In order to support a 'strong inference' of fraudulent intent, plaintiffs' allegations of motive must 'entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged.'" *In re DRDGOLD Ltd. Sec. Litig.*, 472 F. Supp. 2d 562, 570 (S.D.N.Y. 2007) (quotation omitted). "Motives common to corporate officers, like 'the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation,' do not suffice." *China Mobile*, 2016 WL 922711, at *6 (quotation omitted). "[I]nstead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). Specifically, "the 'motive' showing is generally met when corporate insiders allegedly make a misrepresentation in order to sell their own shares at a profit." *ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (citing *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000)).

Plaintiff does not allege that Dr. Wu sold any of his Ideanomics stock during the class period, let alone sales that were large enough or timed so suspiciously as to support a strong inference of scienter.[2]  Indeed, plaintiff does not allege any personal motive whatsoever for Dr. Wu.  The circular allegation that Dr. Wu committed fraud for the purpose of supporting artificially inflated stock prices is insufficient.  *See China Mobile*, 2016 WL 922711, at *6 (defendants'

---

[2] Plaintiff makes an unverified assertion by footnote, which implies that Dr. Wu benefited through unreported sale of shares. (Opp. 38, FN 29.)  The Court should disregard this baseless accusation that relies on no factual allegations or good-faith investigation.

4

"desire to keep stock prices high" did not support scienter inference (citation omitted)). An "inflated" stock price is not a concrete, personal benefit in the absence of stock sales taking advantage of the supposed inflation, and there were no insider sales here. "Absent some allegation to explain how a defendant benefits from an inflated stock price, stock ownership does not provide sufficient motive to sustain [a plaintiff's] pleading burden." *Tamar v. Mind C.T.I., Ltd.*, 723 F. Supp. 2d 546, 556 (S.D.N.Y. 2010) (citation omitted).

Perhaps realizing the weakness of his motive theory, plaintiff points out that the Audit Committee and Board decided on June 5, 2020, to reduce the Company's outstanding debt—including debt held by certain affiliates of Dr. Wu—by converting that debt into stock at the price of $0.59 per share four days before the Company issued a press release discussing the MEG Center. Consolidated Amended Class Action Complaint ("Compl."), ECF No. 78, ¶¶ 22, 185. Without explanation, plaintiff contends that the decision provided a "powerful personal incentive" to commit fraud. (Opp. 36-37.) But the conversion of Dr. Wu's affiliates' debt into stock, which had nothing to do with the MEG Center, provided no more incentive to Dr. Wu than he already had in connection with his substantial preexisting stock holdings. Thus, plaintiff's allegation again boils down to his insufficient theory that Dr. Wu's financial interest in keeping the stock price high gave him the motive to commit fraud. There is no support for plaintiff's position.

The opposition repeatedly references the temporal relationship between the Board's debt conversion on June 5 and the MEG Center press release on June 9. But even if that temporal relationship alone could demonstrate scienter—and it cannot[3]—plaintiff's motive theory fails

---

[3] In *Patel v. L-3 Communications Holdings, Inc.*, the court found no motive as against defendants based on a "temporal relationship" between a purported meeting, the filing of a 10-Q, and defendant's "public debt offering announced less than two weeks later." 2016 WL 1629325, at *11 (S.D.N.Y. Apr. 21, 2016). *See also In re Skechers USA, Inc. Sec. Litig.*, 444 F. Supp. 3d 498, 523 (S.D.N.Y. 2020) (temporal relationship between a sale of stock and alleged misrepresentation cannot show motive, especially where "the sales at issue were [not] 'unusual' or suspicious").

because there is no allegation that Dr. Wu or his affiliates sold any Ideanomics stock, including debt converted into stock, during the class period that would confer a concrete, personal benefit.[4]

## III.    DR. WU'S STATEMENTS WERE TRUE

Plaintiff alleges that Dr. Wu made just two misrepresentations.  First, Dr. Wu appeared on the "Midas Letter RAW" YouTube channel on March 16, 2020, and said that "we're actually opening up . . . a million square feet" facility in Qingdao. (Compl. ¶¶ 96, 137.)[5]  Then, on June 9, 2020, the Company issued a press release discussing early stage business activity at the MEG Center which included a quote from Dr. Wu:

> "The [Qingdao] region loosened restrictions on business activities in early May, so we are very pleased with the Center's high levels of activity at this early stage. The Center's solid customer foot traffic indicates that the country's economy is on a steady path to recovery and there is a strong appetite for passenger and commercial vehicle sales which bodes well for MEG," said Ideanomics Chairman Dr. Bruno Wu. "The initial activity combined with the projected growth for the remainder of 2020 reinforces our belief that the MEG Center will be a material source of revenue for Ideanomics."  (Compl. ¶ 154.)

Plaintiff argues that these statements are material[6] misrepresentations and were false when

---

[4] Plaintiff's attempt to distinguish case law showing no motive similarly fails.  Plaintiff argues that Dr. Wu sought to enrich himself, and yet dismisses *Kalnit v. Eichler*, which affirmatively rejected a similar "allegation that defendants were motivated by a desire to maintain or increase executive compensation [a]s insufficient [to show scienter or a motive to defraud] because such a desire can be imputed to all corporate officers." 264 F.3d at 140. *See also In re Tarragon Corp. Sec. Litig.*, 2009 WL 10732259, at *10 (S.D.N.Y. Mar. 27, 2009) (dismissing securities claim based on a debt conversion deal as not having adequately pled scienter where the "company sought to raise a share value in order to reduce debt via conversion of senior convertible notes").

[5] Plaintiff misquotes Dr. Wu as having said about the MEG Center on March 16,"it's much bigger than what you just said." ¶ 96.  Plaintiff thus argues that Dr. Wu was using present tense rather than forward-looking language. However, crosstalk in the recording makes it impossible to understand exactly how Dr. Wu began this sentence.  A more accurate transcription is: "So -- [inaudible] -- much bigger than what you just said." *See* https://youtu.be/NPTp36Tj0Uw?t=116. Plaintiff argues that the Court cannot consider this more truthful transcription of Dr. Wu's March 16, 2020 statements.  (Opp. 24, FN 14.)  But the Court may "consider allegations in documents or statements that are either attached to the complaint, incorporated by reference or integral to the complaint, provided that there is no dispute regarding their authenticity, accuracy or relevance." *Antwi v. Montefiore Med. Ctr.*, 2014 WL 6481996, at *1 (S.D.N.Y. Nov. 18, 2014) (citation omitted).

[6] Even if Dr. Wu's statements were false, neither were material because "predictive statements of opinion and belief [are] immaterial" under the securities laws. *Lasker v. New York State Elec. & Gas Corp.*, 85 F.3d 55, 58 (2d Cir. 1996).

made based largely on two biased and unreliable short seller reports, illogically concluding that the "the MEG center as described to investors did not exist at any point during the Class Period." (Opp. 15.)  This argument is baseless and totally untrue.

Moreover, neither statement is false. Using forward looking language, Dr. Wu accurately conveyed on YouTube that Ideanomics was engaged in an ongoing process of opening a one million square foot facility. The quote attributed to Dr. Wu from June 9, 2020 is also forward looking and subjective; without reference to an objective statistical measure, he described a "high level" of foot traffic and activity in connection with his *subjective* acknowledgment that the economy was "on a steady path to recovery" and that there was, in his view, "a strong appetite for passenger and commercial vehicle sales which bodes well for MEG." By definition, such "[s]ubjective statements can be actionable only if the defendant's opinions were both false and not honestly believed when they were made."  *Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 153 (2d Cir. 2013) (citation omitted).  This is not the case, here.

Plaintiff argues that Dr. Wu's statements "claim to represent the current state of affairs at the MEG center" and therefore were false and not opinions.  (Opp. 30.)  However, as discussed in Dr. Wu's opening brief, both statements plainly discuss a fact that has occurred, as well as a yet uncertain future. (Compl. ¶¶ 96 ("Well *we're actually opening* up a hundred thousand -- sorry a, a million square feet, a million square feet -- a hundred thousand square meters -- so it's a million square feet." (emphasis added)); 154 ("The initial activity combined with the *projected growth for the remainder of 2020* reinforces our belief that the MEG Center *will be* a material source of revenue for Ideanomics." (emphasis added))).  These statements are undeniably structured as forward-looking opinions, rather than as factual untruths. *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 188 (2015).

Moreover, plaintiff's reliance on the standard of pleading falsity is of no moment because, unlike here, in each cited case there were incontrovertible underlying facts supporting the plaintiff's claims. *See, e.g. In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 758 (S.D.N.Y. 2017) (analyzing materiality of an *admitted* omission by defendants of a *known* bribery scheme and related issues); *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 192 (S.D.N.Y. 2010) (*physical evidence* in the defendants' *admissions* supported that defendants knew their contemporaneous statements about mortgage loans were untrue). By contrast, here, plaintiff's claims of falsity are unsupportable and rely on inadequate short-seller reports, as discussed below.

## IV.    THE SHORT SELLER REPORTS ARE INCONSISTENT AND UNRELIABLE

Relying heavily on *Ho v. Duoyuan Glob. Water, Inc.,* 887 F. Supp. 2d 547 (S.D.N.Y. 2012), and *McIntire,* 927 F. Supp. 2d 105, plaintiff argues that this Court should credit the short-seller reports published by J Capital and Hindenburg. (Opp. 17-21.) However, these cases are distinguishable and do not rehabilitate the uncorroborated and unreliable reports.

*Ho*, for example, involved a research report that compared financial disclosures submitted to the SEC with those submitted to the State Administration for Industry and Commerce (SAIC) in China. 887 F. Supp. 2d at 560. And in *McIntire*, the court credited analyst reports that analyzed SEC filings of the defendant and competitors, and another report that contained a detailed investigation of defendants' physical bus fleet. 927 F. Supp. 2d at 115.

By contrast, both the J Capital and Hindenburg reports are shrouded in mystery and anonymity, based on purported interviews by unnamed investigators of unidentifiable witnesses. Such reports are inappropriate to establish material misrepresentations, since "[a] complaint may rely on information from confidential witnesses if 'they are described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged.'" *Employees' Ret. Sys. of Gov't of the Virgin Islands*

8

*v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015); *see also Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 801 (S.D.N.Y. 2020) (identifying "a particular need for close scrutiny where a short-seller report relied upon by a securities plaintiff itself relies on 'confidential' or anonymous sources, without corroboration." (citation omitted)); *cf.* Compl. ¶¶ 117-118, 120.

### V.   PLAINTIFF DOES NOT PLEAD DR. WU WAS A CONTROLLING PERSON

Plaintiff has failed to establish liability against Dr. Wu under Section 20(a).  Plaintiff has not shown that Dr. Wu had any control, and even if he did, plaintiff has not shown a primary violation or culpable participation by Dr. Wu, or others. *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996).

Despite plaintiff's conclusory allegations, Dr. Wu held a non-management role as Chairman of the Board of Directors.  (Compl. ¶¶ 37, 171, 186-187.)  As a minority shareholder, his Board membership is insufficient by itself to demonstrate control person liability.  *In re Tronox, Inc. Sec. Litig.*, 769 F. Supp. 2d 202, 208 (S.D.N.Y. 2011) ("Status of defendants as directors, standing alone, is insufficient to establish their control." (internal quotations omitted)); *Silsby v. Icahn*, 17 F. Supp. 3d 348, 371 (S.D.N.Y. 2014), *aff'd sub nom. Lucas v. Icahn*, 616 F. App'x 448 (2d Cir. 2015) (no control liability for defendant who allegedly "exercised the control required under Section 20(a) primarily through his status as Dynegy's largest shareholder").

That Dr. Wu was "highly active" in management also does not establish that he had control.  Control is defined as "the power to direct or cause the direction of the management and policies of [the primary violators], whether through the ownership of voting securities, by contract, or otherwise." *First Jersey Secs.,* 101 F.3d at 1473.  Being active in the company simply means that Dr. Wu did the things board members are supposed to do.

Plaintiff also misleadingly misquotes the Company's bylaw provisions, which state that the Chairman "shall provide advice to, and guide and assist the Corporation's Chief Executive

Officer and have such other duties as may from time to time be assigned to him or her by the Board of Directors" and that the CEO "shall regularly communicate with the Chairman and shall perform all duties which from time to time may be requested of him or her by the Chairman and the Board of Directors."[7]   The *actual* language of the Bylaws states the obvious: members of the board oversee the company, including management.  The bylaws do not give the chairman "the power to direct the CEO," and it is well settled that the power to influence managerial decisions is not the same as "power to direct the management and policies of the primary violator." *In re Tronox*, 769 F.Supp.2d at 208; *Ho*, 887 F. Supp. 2d at 578.

Plaintiff's argument regarding culpable participation[8] is circular and unpersuasive; i.e., because Dr. Wu should have known the MEG center statements were false, he was reckless and therefore he culpably participated in those statements.  (Opp. 44-45.) However, this argument fails because there are no non-conclusory allegations that Wu knew any statements about the MEG center were false.  Dr. Wu therefore is not responsible for others' statements. *Zagami v. Cellceutix Corp.*, 2016 WL 3199531, at *7 (S.D.N.Y. June 8, 2016) (a defendant without "ultimate authority over the language" is not a maker of the statement  (quoting *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) and *Fulton County Employees Retirement System v. MGIC Investment Corporation*, 675 F.3d 1047 (7th Cir. 2012))).  Plaintiff has failed to plead liability under Section 20(a).

---

[7] *See* You on Demand Holdings Second Amended and Restated Bylaws (Jan. 31, 2014), https://sec.report/Document/837852/000106299314000517/exhibit3-1.htm §§ 6.8, 6.9.

[8] Plaintiff admits the circuit is split on the "culpable participation" standard (Opp. 44) but fails to recognize that most courts apply the heightened PSLRA standard to this prong. *See Sec. & Exch. Comm'n v. Yorkville Advisors, LLC*, 305 F. Supp. 3d 486, 511 (S.D.N.Y. 2018) (Daniels, J.).

## **CONCLUSION**

Defendant Bruno Wu respectfully requests that the Court dismiss with prejudice the claims

against him.

Dated:  New York, New York                          Respectfully submitted,
        July 15, 2021

                                        By:  /s/ Aaron F. Miner
                                             Aaron F. Miner
                                             Amanda Raines
                                             ARNOLD & PORTER KAYE SCHOLER
                                             LLP
                                             250 West 55th Street
                                             New York, New York 10019
                                             aaron.miner@arnoldporter.com
                                             amanda.raines@arnoldporter.com
                                             Telephone: (212) 836-8000
                                             Facsimile:  (212) 836-8689