**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE IDEANOMICS, INC. SECURITIES
LITIGATION

No. 1:20-cv-04944-GBD

Oral Argument Scheduled
for August 24, 2021 at
10:30 AM

**REPLY BRIEF IN FURTHER SUPPORT OF CERTAIN**
**DEFENDANTS' MOTION TO DISMISS THE**
**CONSOLIDATED AMENDED COMPLAINT**

VENABLE LLP
1270 Avenue of the Americas,
Twenty-Fourth Floor
New York, New York 10020

– and –

VENABLE LLP
600 Massachusetts Avenue NW
Washington DC 20001

*Counsel for Defendants Ideanomics, Inc.,*
*Alfred Poor, Conor McCarthy, and Anthony*
*Sklar*

# **TABLE OF CONTENTS**

A.  Plaintiff Fails to Plead A Material Misrepresentation. ........................................................ 2

B.  Plaintiff Does Not Plead With Particularity Facts Giving Rise To The
    Requisite "Strong Inference" That Each Individual Defendant Acted With
    Scienter. ............................................................................................................................. 6

    1.  Plaintiff's Motive Theory Fails. ................................................................................... 6

    2.  Plaintiff Fails to Plead Defendants' Conscious Misbehavior or
        Recklessness. ............................................................................................................... 10

    3.  Plaintiff's Opposition Makes Clear that Plaintiff Improperly Relies on
        Group Pleading and, on this Basis Alone, Fails to Plead Scienter. .............................. 11

C.  Plaintiff's Loss Causation Arguments Fail as a Matter of Law. ....................................... 12

D.  Plaintiff Failed to Plead Control Person Liability............................................................. 14

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Born v. Quad/Graphics, Inc.*,
   No. 19-CV-10376 (VEC), 2021 U.S. Dist. LEXIS 35675 (S.D.N.Y. Feb. 25,
   2021) ...............................................................................................................................8

*In re Complete Mgmt. Inc.*,
   153 F. Supp. 2d 314 (S.D.N.Y. 2001)...............................................................................7

*In re DDAVP Direct Purchaser Antitrust Litig.*,
   585 F.3d 677 (2d Cir. 2009)............................................................................................12

*In re Elan Corp. Sec. Litig.*,
   543 F. Supp. 2d 187 (S.D.N.Y. 2008)...............................................................................8

*Frontier Commc'ns Corp. Stockholders Litig.*, No. 3:17-cv-1617 (VAB), 2020
   U.S. Dist. LEXIS 50063 (D. Conn. Mar. 24, 2020) ......................................................13

*Goplen v. 51job, Inc.*,
   453 F. Supp. 2d 759 (S.D.N.Y. 2006)...............................................................................8

*In re Henry Schein Sec. Litig., Inc.*,
   18-CV-01428 (MKB), 2019 U.S. Dist. LEXIS 230571 (E.D.N.Y. Sept. 27,
   2019) .............................................................................................................................12

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
   251 F. Supp. 3d 596 (S.D.N.Y. 2017)...............................................................................2

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001)............................................................................................12

*Long Miao v. Fanhua, Inc.*,
   442 F. Supp. 3d 774 (S.D.N.Y. 2020)..........................................................................5, 14

*In re Mannkind Sec. Actions*,
   835 F. Supp. 2d 797 (C.D. Cal. 2011) ..............................................................................7

*In re Manulife Fin. Corp. Sec. Litig.*,
   276 F.R.D. 87 (S.D.N.Y. 2011) ......................................................................................13

*Meyer v. Greene*,
   710 F.3d 1189 (11th Cir. 2013) ......................................................................................14

*In re Molycorp Sec. Litig.*,
   No. 13 Civ. 5697 (PAC), 2015 U.S. Dist. LEXIS 30892 (S.D.N.Y. Mar. 12,
   2015) ...............................................................................................................................3

*ODS Capital LLC v. J.A Solar Holdings Co. Ltd.*,
    18-CV-12083, 2020 WL 7028639 (S.D.N.Y. Nov. 30, 2020).....................................................5

*Plumbers & Steamfitters Local 773 Pension Fund v. Danske Bank*,
    19-cv-235 (VEC), 2020 WL 4937461 (S.D.N.Y. Aug. 24, 2020)..............................................5

*Sachsenberg v. IRSA Inversiones Y Representaciones Sociedad Anónima*,
    339 F. Supp. 3d 169 (S.D.N.Y. 2016).....................................................................................11

*SCHWAB v. E\*TRADE Fin. Corp.*,
    285 F. Supp. 3d 745 (S.D.N.Y. 2018).......................................................................................4

*SEC v. Enters. Sols., Inc.*,
    142 F. Supp. 2d 561 (S.D.N.Y. 2001).......................................................................................2

*SEC v. StratoComm Corp.*,
    2 F. Supp. 3d 240 (N.D.N.Y. 2014), *aff'd* 652 F. App'x 35 (2d Cir. 2016) .............................2

*Stein v. Tangoe, Inc.*,
    No. 13-cv-00286 (VLB), 2014 U.S. Dist. LEXIS 137966 (D. Conn. Sept. 30,
    2014) .......................................................................................................................................12

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
    531 F. 3d 190 (2d Cir. 2008)...................................................................................................7

*Tyler v. Liz Clairborne, Inc.*,
    814 F. Supp. 2d 323 (S.D.N.Y. 2011).....................................................................................11

*Wilamowsky v. Take-Two Interactive Software, Inc.*,
    818 F. Supp. 2d 744 (S.D.N.Y. 2011).....................................................................................12

*Wilbush v. Ambac Fin. Grp., Inc.*,
    271 F. Supp. 3d 473 (S.D.N.Y. 2017).......................................................................................3

*In re Winstar Commc'ns*,
    Nos. 01 CV 3014(GBD), 01 CV 11522, 2006 WL 473885 (S.D.N.Y. Feb. 27,
    2006) (Daniels, J.).....................................................................................................................6

**Statutes**

PSLRA.........................................................................................................................................1, 3, 8

**Other Authorities**

Rule 8 .............................................................................................................................................12

Rule 10b-5......................................................................................................................................15

As set forth in Defendants' initial brief ("Motion") and for the following reasons, Plaintiff's Amended Complaint should be dismissed[1]—

First, the statements at the heart of the Amended Complaint are non-actionable forward-looking statements or statements of opinion. Plaintiff's allegation that the operational status of the MEG Center was "exaggerated" rests on Plaintiff's inferential leap that because the photos of the MEG Center were not labeled as prior photos of the Qingdao facility and did not disclose that a MEG label on a balloon within the photo had been added, the MEG Center did not exist. That the photos were depictions, however, does not mean that the MEG Center did not exist when the photos were released. Plaintiff's conclusory allegations, which neither rest on any confidential witnesses nor reference any documents, do not satisfy the pleading requirements under the PSLRA. And Plaintiff's "investigation" actually confirms that the MEG Center exists and that MEG has a presence there.

Second, Plaintiff's failure to allege facts creating a strong inference of scienter is a separate, stand-alone basis to dismiss Plaintiff's claims. Plaintiff's motive allegations are ones common to all public companies—to avoid insolvency, ensure access to capital, prevent a delisting from an exchange, and distract from reports of low revenue—and are insufficient as a matter of law. Further, Plaintiff's allegations that Defendants were motivated to make misstatements to avoid an "imminent" delisting and a related loss of access to capital are directly contradicted by the documents Plaintiff relies upon and the fact that the Company accessed the capital *before* the Company's stock price rise. Plaintiff's reliance on group pleading is similarly fatal to its claims.

---

[1]    Capitalized terms not otherwise defined herein shall take the meaning ascribed to them in Defendants' Motion ("Def. Mtn."). Defendants' Reply Brief is filed on behalf of Defendants Ideanomics, Inc., Alfred Poor, Conor McCarthy, and Anthony Sklar.

1

Third, Plaintiff's failure to plead loss causation is a third stand-alone basis to dismiss Plaintiff's claims. Plaintiff's insistence that loss causation cannot be decided on a motion to dismiss is not only wrong, it is telling. Plaintiff alleges the stock price drop was caused by the alleged "revelation" of Defendants' misstatements, but ignores the various other reasons for the share price drop—the short-sellers' misstatements, which Plaintiff admits it does not adopt, that the Company's orders were false and the Company only had three months of cash.

Finally, Plaintiff's allegations simply do not support control person liability as to the Individual Defendants and should be dismissed.

## A. Plaintiff Fails to Plead A Material Misrepresentation.

Plaintiff's claim rests wholly on its conclusory allegation that Defendants misrepresented "the current state of the MEG Center." Opp. at 14. In support, Plaintiff veers from alleging that the MEG Center did not exist "at the end of the Class Period" to alleging that it neither needs to show that the MEG Center did not exist nor that the MEG Center did not generate revenue to state a claim, but only that the Company "exaggerated" the operation status. Opp. at 16-17.[2] As set forth in Defendants' opening brief, these so-called "exaggerated" statements are not actionable.

---

[2]    Plaintiff cites to several cases involving what plaintiff describes as "exaggerated claims regarding . . . a company's business segment . . ." [Opp. at 17], but those cases are distinguishable. First, several of the cases Plaintiff cites involve SEC enforcement actions, after SEC investigations and discovery, which is much different than the posture of this action and Plaintiff's bare allegations that do not meet the pleading standards under the PSLRA. *See id*. Second, the only non-SEC case is also distinguishable from the facts alleged here. *See In re Inv. Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d 596 (S.D.N.Y. 2017) (finding that defendants' statements were false or misleading where they knew, in direct contradiction to their statements, that the company had access to confidential client data where defendant CEO reprimanded a project manager for use of such data but took no further action to bar access to it).

First, the statements at the heart of the Amended Complaint are forward-looking statements or nonactionable[3]—

- The size of the MEG Center and renovations — These statements all speak of the future of what the MEG *would be* — For example — "the *idea of it is* it's about 1 million square feet . . . *The idea there will be* . . . . vehicles on the site . . . *There will be* multiple manufacturers . . . and *it is being completely refurbished*." Am. Compl. ¶ 135; Def. Mtn. at 12-13. Similarly, statements regarding future partners are also protected by the Safe Harbor — "there *will be* vehicles on site", "*will be* joined at the site by more than 20 partners." Def. Mtn. at 14

- Statements regarding the success of the MEG Center are nonactionable opinions — For instance, statements that "it's been a *very big success*", "we set out to create a hub where we could bring *the best* and [inaudible] partners," and "[t]he Center's *solid customer foot traffic*." *Id.* at 15.

Plaintiff argues that the Safe Harbor provision does not apply because the challenged statements involved "the representation of existing facts." Opp. at 28. Plaintiff is incorrect. Although historical facts are not protected under the Safe Harbor, the majority of the alleged misrepresentations are not representations of historical fact and, thus, the Safe Harbor provision absolutely applies to those statements. *See In re Molycorp Sec. Litig.*, No. 13 Civ. 5697 (PAC), 2015 U.S. Dist. LEXIS 30892, at *35-40 (S.D.N.Y. Mar. 12, 2015) (dismissing case and finding that the Safe Harbor protected certain statements which were "classically forward-looking—they address what defendants expected to occur in the future") (internal citations and quotations omitted). Plaintiff goes on to argue that even if these are forward-looking statements, the Safe Harbor provision does not apply because Plaintiff alleges Defendants omitted material

---

[3]    Because Plaintiff's Opposition fails to address Defendants' argument that statements regarding the success of the MEG Center are nonactionable as corporate optimism, Def. Mtn. at 15, it has therefore waived any opposition to those statements on those grounds and the Court should find in Defendants' favor on that basis. *See*, *e.g.*, *Wilbush v. Ambac Fin. Grp., Inc.*, 271 F. Supp. 3d 473, 487 n.9 (S.D.N.Y. 2017) (declining to consider certain misstatements not addressed in Plaintiff's opposition brief on the grounds that any arguments concerning those statements were unanswered and therefore waived).

information. But the purported omission is nothing more than the flipside of the allegation that Defendants misrepresented the operational status of the MEG Center. Specifically, Plaintiff claims that Defendants failed to disclose that the full 1 million square feet had not been renovated. Aside from the fact that nowhere in the Amended Complaint does Plaintiff even make that allegation,[4] courts have uniformly recognized that such an argument would turn every misrepresentation case into an omission case. *SCHWAB v. E\*TRADE Fin. Corp.*, 285 F. Supp. 3d 745, 753 (S.D.N.Y. 2018) ("The failure to disclose the alleged falsity of a representation does not transform a misrepresentation case into an omission case . . . ."). Lastly, Plaintiff argues that the Company did not provide meaningful cautionary language. But, as set forth in Defendants' Motion, the Company disclosed appropriate cautionary language. Def. Mtn. at 6.

As to the few challenged statements that are of historical fact, Plaintiff offers no allegation that supports Plaintiff's bare assertion of falsity. Specifically, Plaintiff claims that the statements regarding a "soft-launch" and "start of operations" occurring were false, claiming that "the Company admitted" that the MEG Center was not yet existent. Opp. at 23. The Company, however, made no such admission. Plaintiff also cites to its "investigation" but Plaintiff's anonymous investigator's assessment of the activity on site at the MEG Center *7 and 8 months later* in no way supports the allegation that a soft-launch or "start of operations" had not occurred earlier.

Finally, as to the photos, as mentioned above, Plaintiff makes an unsupported inferential leap that because the photos were not labeled as prior photos of the Qingdao facility and that a MEG label on a balloon had been photoshopped onto the photo, the MEG Center was not existent at that time. But, providing a depiction of a mall's future appearance (even if not disclosed as such)

---

[4]    Plaintiff references Am. Compl. ¶¶ 140, 145, 147, 150, 153, and 155 for their alleged omission claim, but none of those paragraphs assert an omission claim.

does not mean that the mall is not open for business or is not producing revenues. To the contrary, the photos were part and parcel of a campaign dedicated to transforming the MEG Center into a revenue producer after its soft opening in early May 2020. As a matter of law, courts do not credit inferential leaps and speculation. *See ODS Capital LLC v. J.A Solar Holdings Co. Ltd.*, 18-CV-12083, 2020 WL 7028639, at *10 (S.D.N.Y. Nov. 30, 2020) (dismissing complaint where, among other things, the plaintiff's allegation required the Court to make "inferential leaps . . . that has not been plausibly alleged"); *Plumbers & Steamfitters Local 773 Pension Fund v. Danske Bank*, 19-cv-235 (VEC), 2020 WL 4937461, at *7 (S.D.N.Y. Aug. 24, 2020) (finding plaintiffs failed to plead scienter where plaintiffs "ask this court to make [an] inferential leap . . .").

As to Defendants' argument that the short-sellers' statements cannot be relied on to support Plaintiff's allegations of falsity, Plaintiff's opposition curtly claims that this case is distinguishable from *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774 (S.D.N.Y. 2020) and cites to cases for the general assertion that a short-sellers' report can be relied upon. Although Plaintiff is correct that courts have credited short-seller reports, Plaintiff ignores that in such instances there is more than just a short-seller's bald claims. As set forth in the Court's holding in *Long Miao*, which Plaintiff ignores, anonymized sources—as those relied upon in the short-sellers' reports here—require "close scrutiny." It is noteworthy that Plaintiff himself does not adopt the majority of the short-sellers' statements.

Plaintiff unpersuasively attempts to overcome the Court's holding in *Long Miao* by citing to its purported investigation. But that investigation, which also cited to no individual, document, or confidential witness, claims that Plaintiff's unnamed investigators visited the site on two days (January 25 and 29, 2021) and, acknowledging that the Center exists and that there were MEG banners, claims that the MEG Center was closed because of on-going renovations. Am. Comp. ¶¶

128-32. As Defendants set forth in their opening brief, Plaintiff's own "investigation" confirms, contrary to the short-sellers' statements, that there is a MEG Center and it exists. Further, the fact that the MEG Center may have been closed on the two days that Plaintiff's unnamed investigator purportedly visited—and in the middle of a global pandemic—does not support Plaintiff's allegation that the MEG Center was not existent months earlier.

**B. Plaintiff Does Not Plead With Particularity Facts Giving Rise To The Requisite "Strong Inference" That Each Individual Defendant Acted With Scienter.**

**1. Plaintiff's Motive Theory Fails.**

Contrary to Plaintiff's argument, Plaintiff's allegation of motive ("desperate for financing" and "fighting for its continued existence") is one that courts have consistently found to be "far too generalized" to support scienter. Plaintiff does not address this well-recognized principle— electing instead to claim that Defendants are attempting to "minimize" Plaintiff's allegations as to Defendants' motive. Opp. at 36. Defendants are doing no such thing. In this Circuit, it is not enough to assert, as Plaintiff does, that scienter exists where defendants' purported motives were to avoid insolvency, obtain access to capital, or distract from poor revenue reports the prior year. *See*, *e.g.*, *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F. 3d 190, 196 (2d Cir. 2008) ("[Plaintiff's] proffered motive is the same desire to maintain the appearance of profitability that we have consistently rejected as insufficient in securities fraud pleading."). Even Plaintiff's cited cases recognize that scienter can only be pled where a plaintiff alleges a motive that is not common to all companies.[5]

---

[5]    *See In re Complete Mgmt. Inc.*, 153 F. Supp. 2d 314, 328 (S.D.N.Y. 2001) (holding that defendants had motive to inflate a stock price where plaintiffs had pled, unlike here, that defendants had a motivation that was unique to defendants); *In re Mannkind Sec. Actions*, 835 F. Supp. 2d 797, 812-13 (C.D. Cal. 2011) (finding allegations of scienter sufficed where plaintiff alleged that defendants artificially inflated share price to proceed with a merger valued at over $200 million that required the share price to be maintained).

Additionally, Plaintiff's allegations as to motive are undercut by its own factual allegations. The linchpin of Plaintiff's motive theory is that Defendants were motivated to artificially inflate the Company's share price to avoid "the ***imminent*** threat of NASDAQ delisting" based on a July 8 deadline and to maintain access to YA financing that was allegedly contingent on retaining the Company's NASDAQ listing. Am. Compl. ¶ 21 (emphases added). But the NASDAQ deadline was not July 8, but instead mid to late September—***months after*** the Class Period ended. Faced with the reality that it got this critical fact wrong, Plaintiff asserts that this deadline is "irrelevant," or a "factual dispute." Opp. at 6 n.3, 36 n.25. There is no factual dispute. Plaintiff cannot gin up a factual dispute by pleading allegations that are contradicted by the very materials Plaintiff relied on and then, confronted with its error, claim there is a factual dispute that requires discovery.[6] *See, e.g.*, *In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 206 (S.D.N.Y. 2008) (holding that Court "need not accept as true" allegations contradicted by documents the complaint relies upon).

There is also no question as to relevance of this glaring error—Plaintiff's Amended Complaint and brief are replete with allegations as to the *impending* delisting deadline as the basis for the motive allegation.[7] Plaintiff now contends that it is "irrelevant" that the "*impending*" potential delisting date was in mid-to-late September 2020, rather than July 8 as Plaintiff alleged, because the extension occurred "after Defendants are alleged to have embarked on their fraud and made many of their alleged misstatements." Opp. at 36 n.25. But that is not what Plaintiff pled. Of the eight misstatements Plaintiff alleges Defendants made during the Class Period, ***six*** were made

---

[6]    Plaintiff asserts that Defendants are raising "factual disputes" numerous times throughout its opposition brief. Opp. at 18, 21, 24, 28 n.16, and 36 n.25. Defendants are doing no such thing. Rather, Defendants are highlighting the numerous inconsistencies and holes in Plaintiff's case, which, as a matter of law, fail to meet the heightened pleading standards under the PSLRA.

[7]    *See* Am. Compl. ¶¶ 3, 4, 15, 21, 83, 89, 91, 98, 99, 161, 165, 166, 180, 182, and 183; Opp. at 2, 4, 6, 7, 11, 35, 36, and 37.

either in or after the May 11, 2020 earnings call, when the months-long extension of the delisting deadline was announced and any imminent concern of delisting was removed. *See* Am. Compl. ¶¶ 133-160.

Furthermore, faced with the argument that their motive theory is implausible because the Company first announced the MEG Center in 2019—well before the beginning of the Class Period in March 2020—Plaintiff argues that Defendants' "increasingly aggressive misstatements regarding the MEG Center" began after the January 2020 NASDAQ letter. Opp. at 36. But this also does not explain why these purportedly aggressive statements would begin in March—months after the letter. Moreover, the Company's stock began trading under $1.00 months prior to the delisting letter and 5 months before the beginning of the Class Period, further undercutting Plaintiff's manufactured motive theory.[8]

Also fatal to Plaintiff's argument that Defendants were motivated to commit fraud because the YA agreement to provide $50 million was contingent upon the Company maintaining its NASDAQ listing are the following: (1) YA entered into the agreement on April 3, 2020 *after* the Company received its delisting notice and when the Company's stock had been and was trading under $1.00; (2) YA purchased Company stock pursuant to the Agreement while the Company's stock was trading under $1.00, and (3) YA provided the maximum funding amount the Company was entitled to under the Agreement before the original July 8 delisting deadline and before the Company received notice on June 23, 2020 from NASDAQ that it had "regained compliance with

---

[8]     Reply Ex. 1 (historical trading data showing the Company's stock price dropped below $1 beginning on November 14, 2019). As set forth in Defendants' opening brief, the Court may take judicial notice of publicly available trading data without converting a motion to dismiss into a motion for summary judgment. Def. Mtn. at 7 n.5.

the minimum bid price requirement."[9] Like its allegation as to the timing of the NASDAQ delisting, Plaintiff is simply wrong—YA provided funding when the Company's stock was under $1.00 and before the Company was in NASDAQ compliance and there was no "impending" delisting and, thus, Plaintiff's motive allegation fails on its face.

Other than the purported *imminent* risk of delisting and the loss of YA funding, Plaintiff offers no other reason Defendants Poor, McCarthy and Sklar would have made purported misstatements during the Class Period. After an alleged motivation no longer exists, as here, it cannot be used as a basis for alleging scienter. *See, e.g.*, *Born v. Quad/Graphics, Inc.*, No. 19-CV-10376 (VEC), 2021 U.S. Dist. LEXIS 35675, at *40-42 (S.D.N.Y. Feb. 25, 2021).[10]

Plaintiff goes on to argue that Defendant Wu's increased holdings of Company stock does not rebut scienter because Wu "stood to receive a windfall profit had Defendants' fraud gone undetected." Opp. at 38. But as set forth in Defendants' initial brief, Wu's increased holdings in the Company directly undercut Plaintiff's motive theory and rebut an inference of scienter by evincing Wu's and the Company's confidence in the Company's future. Additionally, the case law

---

[9]    *See* Reply Ex. 2 [April 6, 2020 8-K attaching Agreement with YA dated April 3, 2020]; Reply Ex. 3 [4/28/2020 Prospectus Supplement] (YA purchased $1 million of Ideanomics' stock at $.80 per share); Reply Ex. 4 [5/21/2020 Prospectus Supplement] (YA purchased $1.5 million of Ideanomics' stock at $.46 per share); Reply Ex. 5 [5/26/2020 Prospectus Supplement] (YA purchased $1.5 million in Ideanomics' stock at $.418 per share); Reply Ex. 6 [6/8/2020 Prospectus Supplement] (YA purchased $1.5 million of Ideanomics' stock at $.62 per share); Reply Ex. 7 [6/12/2020 Prospectus Supplement] (YA purchased $5 million of Ideanomics' stock at $1.09 per share); Reply Ex. 8 [6/18/2020 Prospectus Supplement] (purchased $20 million of Ideanomics' stock at $2.02 per share); Reply Ex. 9 [6/23/2020 8-K] (announcing the Company regained compliance with the $1 per share minimum bid price).

[10]    To the extent Plaintiff seeks to manufacture scienter by asserting, long after the fact, that the September 2020 delisting deadline still created a motive for Defendants to act, Plaintiff is not now entitled to change its factual allegations. "[A]llegations made outside of the complaint [introduced by plaintiff in its memorandum of law in opposition to motions to dismiss] are not properly before the court on a motion to dismiss." *Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759, 774 (S.D.N.Y. 2006).

cited by Plaintiff does nothing to support their windfall narrative, and, in fact, undercuts their position, as the defendant in *In re SLM Corp. Sec. Litig.*, actually *sold their stock*. 740 F. Supp. 2d 542, 558 (S.D.N.Y. 2010).

Moreover, the allegations as to Wu's purported motives does not support any motive as to Defendants Poor, McCarthy or Sklar. Plaintiff incorrectly argues that, other than Wu, the other individual defendants do not even suggest an alternative explanation for the alleged misstatements. But, Plaintiff ignores Defendants' argument that there is simply no allegation that these Individual Defendants personally benefitted from the alleged misstatements or were motivated by any alleged personal benefit at all.

### 2. Plaintiff Fails to Plead Defendants' Conscious Misbehavior or Recklessness.

In addition to failing to plead motive demonstrating scienter, Plaintiff also has not sufficiently alleged that Defendants consciously or recklessly misled investors. Plaintiff argues that Defendants' purported consciousness or recklessness is demonstrated by the alleged "glaring inconsistency" between Defendants' earlier statements regarding the MEG Center's development and the June 26, 2020 press release stating that the MEG Center then occupied a portion of the 1 million square foot facility and admission that the photographs of the MEG Center were depictions or renderings. Opp. at 33. The alleged "glaring inconsistency," however, does not exist—indeed, the statements cited and photos can be understood consistently as showing that there was (and is) a MEG Center, the facility housing the center is 1 million square feet, and the MEG Center was in the first phase of opening. *See* Am. Compl. ¶¶ 20, 93, 97, 124, 135, 137, 142, 149, 156. Moreover, as explained above, the fact that the photographs were depictions does not show that the MEG Center was not existent or that the challenged forward-looking statements were false when made.

Plaintiff's Opposition relies on the core operations doctrine to argue that, because the MEG Center was "effectively the only revenue-producing segment in the Company," Opp. at 34,

Defendants must have known or were reckless in not knowing that Defendants' alleged misstatements were false. But it is the *entire* MEG Business Division focused on electric vehicles—not simply the operations at the MEG Center facility in Qingdao—that is core to the Company's operations. *See* Def. Mtn. Ex. 5 at 5. Thus, the core operations doctrine should not apply on this ground. *See, e.g.*, *Tyler v. Liz Clairborne, Inc.*, 814 F. Supp. 2d 323, 343 (S.D.N.Y. 2011) (rejecting the core operations doctrine as a basis for establishing scienter in part because the business line was "not sufficiently 'core'" to the defendant). And because "courts in this circuit have generally invoked the [core operations] doctrine only to bolster other evidence of scienter, rather than relying on it as an independently sufficient basis," it cannot save the Amended Complaint from dismissal. *In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 533 (S.D.N.Y. 2020).

### 3. Plaintiff's Opposition Makes Clear that Plaintiff Improperly Relies on Group Pleading and, on this Basis Alone, Fails to Plead Scienter.

Finally, as Defendants made clear in their opening brief, scienter cannot be demonstrated through Plaintiff's group pleading allegations. Plaintiff claims that "each named Defendant either personally uttered, signed or disseminated false statements concerning the MEG Center . . ." Opp. at 33 n.22. But, Plaintiff does not offer any support to its allegation. There is simply no allegation that Defendant Sklar or McCarthy uttered, signed, or disseminated any alleged false statement regarding the MEG Center.[11] Moreover, even if a defendant made a statement that a plaintiff claims was a misrepresentation, that alone does not suffice to establish scienter. "[I]n a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis *for scienter for each defendant*." *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009)

---

[11] For the Court's reference, attached as Appendix A is a chart containing the alleged misstatements attributed to the Individual Defendants in the Amended Complaint.

(emphases added). Case law in this district makes clear that neither generic allegations as to core operations nor as to defendants' corporate roles are sufficient to establish scienter. Here, Plaintiff fails to assert allegations that support a strong inference of scienter as to each Individual Defendant. Other than its allegation regarding Wu's conversion of debt into equity (which, as a matter of law, is no basis for scienter), Plaintiff offers no allegation of a personal benefit to Individual Defendants Poor, McCarthy or Sklar. As such, Plaintiff's Amended Complaint must be dismissed. *See*, *e.g.*, *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001).

Essentially conceding that the Amended Complaint does not plead scienter as to each Defendant, Plaintiff argues that a "holistic" inference applies. Opp. at 31. Plaintiff cites this Court's decision in *In re Winstar Commc'ns*, Nos. 01 CV 3014(GBD), 01 CV 11522, 2006 WL 473885, at *6 (S.D.N.Y. Feb. 27, 2006) (Daniels, J.) for the proposition that Plaintiff is not required to plead scienter with "great specificity", but as the Court stated there, a plaintiff must "allege facts to support a strong inference of fraudulent intent." *Id.* Here, Plaintiff does not do so. *Winstar* involved vastly different allegations indicating that the defendants were involved in significant end-of-quarter transactions and related accounting decisions. *Id.* at *7-8. As set forth in the Motion and above, Plaintiff's allegations as to scienter established by motive fail for multiple reasons and should be dismissed as to these defendants.

### C. Plaintiff's Loss Causation Arguments Fail as a Matter of Law.

Plaintiff alleges that loss causation cannot be determined on a motion to dismiss. *See* Opp. at 39. Not so. Courts dismiss complaints on loss causation grounds where, as here, other factors, e.g., "negative press coverage. . . ," render the causal connection between a stock drop and alleged corrective disclosures too attenuated to satisfy Rule 8 pleading requirements. *See Wilamowsky v. Take-Two Interactive Software, Inc.*, 818 F. Supp. 2d 744, 751 (S.D.N.Y. 2011). Likewise, courts will dismiss complaints on loss causation grounds where plaintiffs have "failed to show that

12

'public information regarding the company's financial condition was corrected.'" *See, e.g.*, *In re Henry Schein Sec. Litig., Inc.*, 18-CV-01428 (MKB), 2019 U.S. Dist. LEXIS 230571, at \*82-84 (E.D.N.Y. Sept. 27, 2019); *Stein v. Tangoe, Inc.*, No. 13-cv-00286 (VLB), 2014 U.S. Dist. LEXIS 137966 (D. Conn. Sept. 30, 2014) (finding that analyst report was not a corrective disclosure and dismissing complaint); *Frontier Commc'ns Corp. Stockholders Litig.*, No. 3:17-cv-1617 (VAB), 2020 U.S. Dist. LEXIS 50063 (D. Conn. Mar. 24, 2020) (same). Plaintiff's loss causation allegations fail on both grounds.

First, as Defendants previously argued (Def. Mtn. at 19), Plaintiff's allegation that the short-seller reports are corrective disclosures is wrong. As mentioned above, Plaintiff admits that it does not adopt all of the short-seller's statements, and indeed, the only Hindenburg allegation that Plaintiff appears to adopt is Hindenburg's assertion that the photos of the MEG Center were photoshopped. As also set forth above, the fact that the photos were renderings, however, does not support that the MEG Center was not operational or that its operational status was materially misstated. As such, the information contained in the short-seller reports fail to "reveal the falsity of an alleged misstatement" and, thus, are also not corrective disclosures. *In re Manulife Fin. Corp. Sec. Litig.*, 276 F.R.D. 87, 104 (S.D.N.Y. 2011). Plaintiff's case is what the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347-348 (2005) counseled against—"transforming a private securities action into a partial downside insurance policy." Plaintiff here essentially seeks to insure for losses caused by the short-seller's statements that Plaintiff has not itself adopted. While "loss causation does not require proof that the fraudulent misrepresentation was the sole cause of a security's loss in value, . . . the plaintiff must still demonstrate that the fraudulent statement was a 'substantial' or 'significant' cause of the decline in price." *Meyer v. Greene*, 710 F.3d 1189, 1196 (11th Cir. 2013).

13

Further, the short-seller statements are not corrective disclosures for the additional reason that, as expressly set forth in those statements, they were "opinions" based upon "public sources." Def. Mtn. Ex. 9, 11; Def. Mtn. at 18-19. The reports did not reveal any new information to the public. Plaintiff attempts to rebut this point by arguing that the short-sellers did not rely *entirely* on public sources by pointing to purported interviews and investigations conducted by the short-sellers. But as the Court found in *Long Miao*, short-seller reports that rely on anonymous and vaguely described interviewees lack sufficient reliability as a basis to support a securities fraud claim. 442 F.Supp.3d at 801. Additionally, as Plaintiff has not identified a single person whom Plaintiff's unnamed investigator interviewed, Plaintiff's investigation suffers from the same lack of reliability.

Second, Defendants' press releases in response to the short-sellers' statements also do not constitute corrective disclosures. None of the Company's press releases confirmed any of the short-sellers' statements. Plaintiff contends that Defendants' admission regarding the photos confirm Hindenburg's claims. But Hindenburg's claims, as well as JCap's claims, went well beyond the photos. Hindenburg claimed that there was no MEG Center and that the Company had no presence at the Qingdao site, and JCap claimed that that the Company only had three months' cash in the bank and that its purported "investigator" called four out of five of the Company's purported customers and none were able to confirm doing business with the Company. Def. Mtn. Ex. 11 at 2; *see also id.* Ex. 9 at 3, 5. As set forth in Defendants' motion, the Company's June 26, 2020 press release simply reiterated previous statements and such reiterations do not constitute corrective disclosures. Def. Mtn. at 19.

### D. Plaintiff Failed to Plead Control Person Liability.

Plaintiff asks the Court to sustain Plaintiff's Section 20(a) claim on grounds that Defendants did not address it. Opp. at 43. But Defendants stated in their Motion that "[f]or the

14

reasons set forth herein, Plaintiff has not pleaded a Section 10(b) claim and Rule 10b-5 claim, which is fatal to Plaintiff's Section 20(a) claim." Def. Mtn. at 25. Plaintiff's Section 20(a) claim should be dismissed.

*     *     *

For the foregoing reasons, and the reasons set forth in the Motion, Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice.

Dated: July 15, 2021

Respectfully submitted,

**VENABLE LLP**

By:   */s/ George Kostolampros*
George Kostolampros
600 Massachusetts Avenue NW
Washington DC 20001
Tel.: (202) 344-4426
Fax: (202) 344-8300

- and -

Xochitl S. Strohbehn
Thomas J. Welling, Jr.
Anna G. Dimon
Dakota L. Kann
1270 Avenue of the Americas
Twenty-Fourth Floor
New York, New York 10020
Tel.: (212) 307-5500
Fax: (212) 307-5598

*Attorneys for Defendants Ideanomics, Inc., Alfred Poor, Conor McCarthy, and Anthony Sklar*

15