KESSLERTOPAZ
MELTZERCHECK LLP

ATTORNEYS AT LAW

April 14, 2022

**VIA ECF**

The Hon. George B. Daniels
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

> Re:  *In re Ideanomics, Inc. Securities Litigation*, Case No. 1:20-cv-04944-GBD-OTW
> Letter Application for Leave to File Second Amended Complaint

Dear Judge Daniels:

        We write on behalf of Lead Plaintiff Rene Aghajanian ("Plaintiff") in the above captioned action to seek leave to amend the Consolidated Amended Complaint (ECF No. 78, "CAC") and to file the proposed Consolidated Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure ("Rule") 15 and this Court's March 15, 2022 Memorandum Decision and Order (ECF No. 108, "Order").[1]

        The CAC alleged that Defendants[2] issued a series of materially false or misleading statements that grossly exaggerated the progress and scale of the Company's operations at the "MEG Center"—a purported "one million square foot EV [electric vehicle] expo center" and "EV hub" in Qingdao, China—and the extent to which the MEG Center was ready for business and capable of delivering 2020 revenues to the Company.  *See generally* CAC ¶¶ 92-132, 146. Defendants also disseminated numerous misleading photographs that purported to depict the current state of the MEG Center, but were actually digitally altered photographs taken two years earlier.  *Id.* ¶¶ 104, 119, 151.  Defendants have since admitted that these images were "[p]hoto [d]epictions" or "rendering[s]."  ECF No. 89 at 15-16.

        In the Order, the Court held that the CAC adequately pled that Defendants' statements on May 26, May 28, June 9, and June 11, 2020, were materially misleading when made.  Order at 14-17; *see id.* at 4-6 (citing CAC ¶¶ 146, 148-49, 151, 154, 156).  Specifically, the Court found that Defendants' statements on these dates "could mislead an investor to believe that the MEG Center was operating, producing, and servicing at a larger scale than it actual[ly] was at the time," and

---

[1]  A copy of the proposed SAC is attached as Exhibit 1, and a "redlined" copy of the proposed SAC, comparing the new, proposed allegations to the CAC, is attached as Exhibit 2.  Unless otherwise noted, all emphasis is added, and internal citations and quotations are omitted.

[2]  Defendants are Ideanomics, Inc. (the "Company"), Alfred Poor (Chief Executive Officer), Bruno Wu (former Chairman), and Anthony Sklar (Vice President of Communications and Head of Investor Relations) ("Individual Defendants").  The SAC does not name Conor McCarty as a Defendant.

April 14, 2022
Page 2



that "by the end of May, the MEG Center had 'expanded,' 'officially opened,' and was 'up and running,'" and had "high levels of activity" and "solid customer foot traffic," when the CAC plausibly alleged that this was untrue. *Id.* at 15-17; *see also id.* at 15 n.3. Moreover, the Court found that the purported pictures of the MEG Center included in Defendants' statements "were taken in 2018 with 'MEG' superimposed on them further plausibly alleges the misleading nature" of Defendants' statements. *Id.* at 16. However, the Court determined that the CAC failed to allege scienter and loss causation. *Id.* at 17-22. The Order provided that Plaintiff "may seek leave to amend . . . by letter application with a proposed amended complaint attached" within thirty days. *Id.* at 22 n.6.

As summarized below, the SAC includes extensive new allegations that remedy the pleading deficiencies identified in the Order. Therefore, leave to amend should be "freely given" under the "liberal" standard under Rule 15. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008).[3]

### A. The Proposed SAC Alleges a Strong Inference of Defendants' Scienter

The SAC is limited to the statements that the Court previously found to be adequately pled as materially misleading. SAC ¶¶ 170-88. The SAC pleads significant additional facts supporting the strong inference that Defendants' conduct in making these statements "represent[ed] an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." Order at 19. Importantly, "[w]hen . . . as here, information contrary to the alleged misrepresentations is alleged to have been known by defendants at the time the misrepresentations were made, the falsity and scienter requirements are essentially combined." *In re Globalstar Sec. Litig.*, 2003 WL 22953163, at *5 (S.D.N.Y. Dec. 15, 2003). The additional facts alleged in the SAC—considered holistically with Plaintiff's prior scienter allegations—readily plead a strong inference of scienter.

*First*, the SAC adds additional "concrete allegations as to each Individual Defendants' particular knowledge of the MEG Center status," which the Court found lacking in the CAC. Order at 20. Specifically, the SAC details that in October 2019, Defendants Poor and Wu (and others at the Company) *personally visited* the MEG Center and so had first-hand knowledge of the current state of the facility. SAC ¶¶ 92, 191 (Defendant Poor, November 27, 2019: "*I was very impressed . . . when visiting the city of Qingdao and the facility in October*[.]"); *id.* ¶¶ 93, 191 (November 27, 2019 image of Wu in Qingdao). And in March 2020, Defendant Poor again touted *personally visiting* the facility, while offering a first-hand account of its status. *Id.* ¶¶ 99, 191 (Defendant Poor, March 16, 2020: "*Several of us were out there*. . . . *The building is mostly finished*."). On May 11, 2020, Defendant Poor told investors that Defendants' "*main priority*" was "*to execute on EV orders*," that "*sales derived from our hub in Qingdao*" was a "*key*

---

[3] While leave to amend may be denied due to "undue delay, bad faith[,] . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment," *Ruotolo*, 514 F.3d at 191, none of those circumstances are present here.

April 14, 2022
Page 3



ATTORNEYS AT LAW

*contributor*," and that "*strategic discussions continue on a daily basis with Qingdao officials*." *Id.* ¶¶ 105, 192.  This Court has found similar allegations sufficient to plead scienter.  *See In re Aphria, Inc. Sec. Litig.*, 2020 WL 5819548, at *9 (S.D.N.Y. Sept. 30, 2020) (Daniels, J.) (scienter pled where individual defendants "conducted site visits," met with "local authorized representatives," and "inspect[ed] operations" as part of due diligence).

The Court may readily infer scienter based on the SAC's new allegations that Defendants personally toured the MEG Center and were directly involved in site activities because, as the Court found, Defendants' statements "differentiated between the early May soft launch and the official launch [of the MEG Center] in later May," Order at 17, and purportedly described the current state of the facility.  *See Plumbers & Pipefitters Local Union No. 630 Pension–Annuity Tr. Fund v. Arbitron Inc.*, 741 F. Supp. 2d 474, 491 (S.D.N.Y. 2010) (inference of scienter strengthened by "statement[s] suggest[ing] that [the executive] was familiar with the [undisclosed] problems," and because he was the "primary person who spoke about" the issue, and so "was at least reckless in speaking so positively"); *In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 239 (S.D.N.Y. 2010) (scienter pled where "corporate insiders" were "involved in the preparation of Citigroup's" public statements or "were otherwise deeply involved in Citigroup's day-to-day activities").

*Second*, the SAC newly alleges the full scope of Defendants' scheme in disseminating fraudulent photographs of the MEG Center, which independently gives rise to a strong inference of scienter.  Plaintiff now pleads that on *three separate occasions* in a two week span, Defendants published photographs purporting to depict the MEG Center that showed rows of gleaming vehicles, crowds of customers, and a prominent "MEG" logo.  SAC ¶¶ 107-09, 113-15, 119-20, 171-73, 176-78, 181-83, 197-99.  And while the CAC previously pled that these photographs were falsely labelled "*2020 Ideanomics*," the SAC now alleges that the images were also accompanied by blatantly misleading captions, including:

**May 26, 2020 Press Release**:  "*Ideanomics' MEG Center in Qingdao opened May 1, 2020.  This one million square foot expo center offers comprehensive retail and commercial services including new EVs and used vehicles, financing, insurance, and registration services*." *Id.* ¶¶ 109, 173, 197.

**May 28, 2020 YouTube Interview**:  "*Ideanomics' massive EV expo center in Qingdao, China is starting to generate revenues*." *Id.* ¶¶ 114, 178, 197.

**June 9, 2020 Press Release**: "*MEG Center Vehicle Display May 2020*." *Id.* ¶¶ 120, 183, 197.

Defendants admit these images did not depict the MEG Center as it appeared at the time of these statements.  ECF No. 89 at 15-16.  Further, Defendants acknowledge that the photographs were published intentionally, representing to this Court that "[t]he photograph, however, is a depiction and can only be viewed as such." *Id.* at 15; *see In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 181 (S.D.N.Y. 2003) ("[P]laintiffs may rel[y] on post-class period [statements] to confirm what a defendant should have known during the class period.") (first

April 14, 2022
Page 4



alteration in original).  Defendants' repeated publication of misleading photographs, accompanied by false or misleading captions clearly indicating that the images were of the MEG Center as it then appeared, is sufficient to plead both the Individual Defendants' and Ideanomics's corporate scienter.  *See, e.g.*, *In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 988 F. Supp. 2d 406, 426 (S.D.N.Y. 2013) ("Because the deficiencies in New Oriental's contractual arrangements . . . were obvious, the plaintiffs have sufficiently alleged that the defendants' representations . . . were highly unreasonable and support a strong inference that the defendants acted at the very least recklessly."); *Katz v. Image Innovations Holdings, Inc.*, 542 F. Supp. 2d 269, 274 (S.D.N.Y. 2008) (scienter pled where "[t]he allegations suggest that the falsity of the sales would have been uncovered by even a cursory inquiry into the transactions").

The fact that Hindenburg easily demonstrated that the photographs were digitally altered images from 2018 bolsters this inference.  SAC ¶ 140; *see Yannes v. SCWorx Corp.*, 2021 WL 2555437, at *5 (S.D.N.Y. June 21, 2021) (scienter pled where defendant "apparently failed to detect—or, worse yet, ignored—the red flags that the analysts at Hindenburg identified in one day").  Any competing inference that Defendants knew the photographs did not depict the current state of the MEG Center, but believed that the photographs and accompanying descriptions were not misleading, is simply implausible.

Furthermore, Ideanomics's publication of these photographs in its May 26 and June 9, 2020 press releases independently gives rise to an inference of corporate scienter, since "collective corporate scienter" may be inferred on the basis of such "dramatic" misstatements, which admittedly provided false information to investors concerning the Company's much-touted MEG Center.  *Jackson v. Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020).  The SAC's allegations "support a strong inference that someone whose intent is attributable to [Ideanomics] was, at the least, reckless in failing to recognize the risks" that the photographs would mislead investors.  *Citigroup*, 753 F. Supp. 2d at 237.

*Third*, the SAC pleads an additional inference of scienter based on Defendants' efforts to refute the allegations by Hindenburg and J Capital.  SAC ¶¶ 204-09.  As detailed in the SAC, in the wake of the short-sellers' allegations, Defendants immediately launched a campaign on social media and in press releases in an effort to refute the allegations.  *Id.*; *see also id.* ¶¶ 142, 144, 151, 154.  As newly alleged in the SAC, this campaign included additional photographs posted to Twitter by Defendant Poor, which Hindenburg also debunked as fraudulent, and a press release issued on June 29, 2020, that claimed that the Company had "provided images to show its **participation** at the site."  *Id.* ¶¶ 151-54.  However, at no point did Defendants deny Hindenburg's allegations that they had published digitally altered photographs to the market, or provide any explanation for how these images came to be repeatedly published to investors—alongside statements purportedly describing the current state of the MEG Center's operations.  *Id.* ¶¶ 143, 154, 204-09.  Defendants thus tacitly admitted that the short-sellers were correct in alleging that Defendants had grossly exaggerated the current state of the MEG Center's operations, and have now explicitly admitted that they intentionally published these misleading photographs to the market.  Defendants' efforts to placate investors through their forceful (albeit incomplete) denials,

April 14, 2022
Page 5



coupled with their subsequent admissions, support an inference that they knew or recklessly disregarded that their statements were false when made. *See Fresno Cty. Emps.' Ret. Assoc. v. comScore, Inc.*, 268 F. Supp. 3d 526, 552 (S.D.N.Y. 2017) ("The campaign by Matta and Wesley to placate the market in reaction to the inquires by the media, analysts, investors and the SEC regarding comScore's accounting practices provides cogent support for the inference of scienter."); *Katz*, 542 F. Supp. 2d at 274 ("The inference of intent is further supported by the allegations that [defendant] affirmatively attempted to obstruct the investigation[.]").

*Finally*, the SAC alleges that after the Class Period, Defendants abandoned the much-touted MEG Center, removing any reference to the current operations or ongoing development of the facility in the Company's SEC filings, press releases or social media posts by March 31, 2021. SAC ¶¶ 164-69. These allegations further support an inference that Defendants knew or recklessly disregarded that their Class Period statements were materially false or misleading. *See Vivendi*, 381 F. Supp. 2d at 181.

The SAC's new allegations raise a stronger inference of scienter when "taken collectively" alongside the allegations from the CAC, which are re-pleaded in the SAC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). As previously alleged, at the time Defendants issued their materially false or misleading statements regarding the MEG Center, Defendants were motivated to inflate the Company's stock price because Ideanomics was struggling financially, facing a NASDAQ delisting, and loss of funding. SAC ¶¶ 189, 221-25; *see also In re Complete Mgmt. Inc. Sec. Litig.*, 153 F. Supp. 2d 314, 328 (S.D.N.Y. 2001) ("[A]rtificial inflation of a stock price in order to achieve some more specific goal may satisfy the pleading requirement."). Moreover, the MEG Center was the only potential source of revenue for Ideanomics during Class Period, and thus the importance of the MEG Center to Ideanomics also supports an inference of scienter. SAC ¶¶ 218-20; *see Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 575 (S.D.N.Y. 2012) (Daniels, J.) ("Knowledge . . . can be imputed to key officers who should have known of facts relating to the core operations of their company[.]").

**B.      The Proposed SAC Adequately Pleads Loss Causation**

The SAC includes extensive additional allegations demonstrating that the information revealed by J Capital and Hindenburg on June 25, 2020, and in Defendants' admissions on June 26, 2020, "reveal[ed] some then-undisclosed fact with regard to the specific misrepresentations alleged in the complaint." Order at 21 (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010)). These new allegations fully remedy the pleading deficiencies identified by the Court and establish that "the subject of the fraudulent statement[s] or omission[s] [were] the cause[s] of the actual loss suffered." *Id.* (citing *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 (2d Cir. 2005)).

*First*, the SAC readily pleads the market's reliance on Defendants' purported images of the MEG Center "being from 2020 and including 'MEG.'" *Id.* As discussed above, and as newly alleged in the SAC, in connection with **three** of the four misstatements the Court found materially misleading, Defendants published photographs that were clearly labelled and captioned so as to

April 14, 2022
Page 6



give investors the materially false or misleading impression that they depicted the MEG Center's operations in May 2020. *See* SAC ¶¶ 107-09, 113-15, 119-20. The SAC further alleges that Defendants' photographs and accompanying descriptions of the MEG Center were widely republished in numerous media outlets and on social media, *id.* ¶¶ 110-12, and that market participants specifically relied on these images as evidence that there "[r]eally [was]" a MEG Center as described in Defendants' statements. *Id.* ¶ 133; *see also id.* ¶ 134 (citing May 26 image as "an image of the inside of the MEG Center"). Moreover, the SAC cites additional market commentary that directly attributed the rapid rise in Ideanomics's stock price during the Class Period to Defendants' statements, and which also reproduced Defendants' purported images of the MEG Center. *Id.* ¶¶ 122, 132. These allegations amply plead reliance, particularly given that Defendants have not challenged the application of the fraud-on-the-market presumption. *See Lentell*, 396 F.3d at 172 ("Transaction causation is akin to reliance" and is satisfied by "the fraud-on-the-market presumption[.]").

*Second*, the SAC alleges "that the photograph being from 2018, not 2020 was a 'but-for cause . . . of the losses suffered.'" Order at 22 (quoting *Omnicom*, 597 F.3d at 510). The SAC details that on June 25, 2020, in alleging that "$IDEX is an egregious & obvious fraud," Hindenburg republished the photograph from the June 9, 2020 press release (which had previously appeared in Defendant Poor's May 28 interview), and specifically cited the caption that "***lists a date of May 2020***." SAC ¶ 140 (Hindenburg citing "***MEG Center Vehicle Display May 2020***" caption). The SAC provides additional detail showing how Hindenburg proved that the images in Defendants' statements were photoshopped and were from 2018, not 2020, as Defendants claimed. *Id.* Furthermore, the SAC cites an additional tweet by Hindenburg on June 25 which included a photograph of the "supposed MEG sales center" that was taken "th[at] week," and which shows that the MEG Center as described and depicted in Defendants' statements did not exist. *Id.* ¶ 141.

Demonstrating that the information revealed by Hindenburg proximately caused the stock price decline on June 25 and June 26, 2020, the SAC alleges how market observers specifically attributed the decline in Ideanomics's stock price on these dates to the short sellers' allegations that "***accused the company of using two-year-old photos in a recent pitch for its mobile energy group and photoshopped promotional material***." *Id.* ¶ 149 (quoting June 28, 2020 *Hartford Courant* article); *see also id.* (June 25, 2020 Seeking Alpha article stating that "***[t]he short seller accuses Ideanomics of doctoring vehicle photos in press releases***"); *id.* (June 26 Seeking Alpha article noting 45% stock price decline and citing Ideanomics's June 26, 2020 press release that "***continues to refute Hindenburg's short-seller report accusing the company of doctoring press release photos***"). Confirming the importance of this information to the market, in response to the corrective disclosures, Ideanomics's social media followers (who had previously praised the Company for posting "pictures from the MEG Center," *id.* ¶ 117, and relied on these images as evidence that the MEG Center as described by Defendants was then in operation, *id.* ¶¶ 133-34) asked, "***can we just see pictures of the actual MEG site***[?]" *Id.* ¶ 150.

Taken together, these allegations adequately plead that "the *subject* of the fraudulent statement or omission"—here, that Defendants misrepresented the current state of the MEG

April 14, 2022
Page 7



KESSLERTOPAZ
MELTZERCHECK LLP
ATTORNEYS AT LAW

Center, including through doctored images—"was the cause of the actual loss suffered, *i.e.*, that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *In re Winstar Commc'ns*, 2006 WL 473885, at *13 (S.D.N.Y. Feb. 27, 2006) (Daniels, J.) (emphasis in original).[4]

*Third*, the SAC explains the short-lived "upward fluctuation" in Ideanomics's stock price "just four days after the J Capital and Hindenburg publications," which the Court found rendered Plaintiff's loss causation allegations "implausible." Order at 22. As discussed above, the SAC alleges that after the Class Period, on June 28, 2020, Defendant Poor posted additional photographs to Twitter purporting to depict the MEG Center as it then appeared, and that on June 29, 2020, Ideanomics issued a press release which sought to "Refute[] [the] Claims Made by Short-Selling Companies." SAC ¶¶ 151, 154. While these additional denials failed to refute the short-sellers' core allegations that Defendants had misrepresented the current operational status of the MEG Center, including through doctored images, Defendants' efforts were enough to partially assuage investors and raise Ideanomics's stock price above $2 per share for *two days* on June 29 and June 30, 2020. *Id.* ¶¶ 155, 249. However, as the Court noted, the Company's stock price immediately declined below $2 on July 1, 2020, Order at 22, and continued to decline thereafter, falling to $1.53 on July 2, 2020, and resuming trading below $1 per share by September 2020. SAC ¶¶ 155, 249. The brief recovery in Ideanomics's stock price in the wake of Defendants' forceful denials—which implicates fact-intensive questions that should be reserved for expert discovery—does not refute Plaintiff's loss causation allegations at this stage. *Winstar*, 2006 WL 473885, at *16 (argument that "that intervening events . . . broke the chain of causation" is "a matter of proof at trial").

We thank Your Honor for the Court's attention to this matter.

Respectfully submitted,

*S/ Sharan Nirmul*
Sharan Nirmul

cc: All Counsel of Record (via ECF)

---

[4] In addition to the short-sellers' allegations and Defendants' admissions, Plaintiff's investigation also determined that none of the activities described or depicted in Defendants' Class Period statements and photographs were taking place at the Qingdao facility as of January 2021. SAC ¶¶ 155-63. This "confirmatory evidence . . . ma[kes] clear that the market had reacted correctly to the earlier, less complete information provided by [the short report]." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 2012 WL 3758085, at *12 (S.D.N.Y. Aug. 29, 2012).