# Arnold & Porter

**Aaron Miner**
+1 212.836.7123 Direct
Aaron.Miner@arnoldporter.com

April 28, 2022

**VIA ECF**

Hon. George B. Daniels
U.S. District Court for the Southern District of New York
Denial Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

Re:     *In re Ideanomics, Inc. Securities Litigation*, Case No. 1:20-cv-04944

## DR. BRUNO WU'S OPPOSITION TO PLAINTIFF'S APPLICATION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

Dear Judge Daniels:

We represent Defendant Dr. Bruno Wu and write in opposition to lead Plaintiff Rene Aghajanian's application for leave to file a second amended complaint. *See* ECF No. 109 ("Ltr. Mot."). For the reasons stated below—and for the additional reasons stated in the opposition filed by Defendants Ideanomics, Inc., Alfred Poor, and Anthony Sklar, which Dr. Wu adopts and incorporates herein—the Court should deny Plaintiff's letter motion.

Plaintiff filed this action alleging that Dr. Wu and the other Defendants violated Section 10(b) of the Exchange Act, Rule 10b-5, and Section 20(a) of the Exchange Act. *See* Consolidated Amend. Compl., ECF No. 78. On March 15, 2022, the Court dismissed Plaintiff's Complaint, finding, *inter alia*, that Plaintiff failed to adequately plead scienter as to Dr. Wu. *See* ECF No. 108 ("Dismissal Order") at 17-21. Specifically, the Court found that Plaintiff insufficiently alleged that Defendants and Dr. Wu had the motive and opportunity to commit fraud or engaged in conscious misbehavior and recklessness. *See id.* Further, the Court concluded that Plaintiff failed to demonstrate loss causation and that Plaintiff had failed to establish a primary violation under Section 20(a). *See id.* at 21-22.

A review of Plaintiff's proposed Consolidated Second Amended Complaint, ECF No. 109-1 ("Proposed SAC"), shows that any amendment would be futile in curing the fatal deficiencies as identified in this Court's Order. *See* Dismissal Order at 17-22.

**Arnold&Porter**

Hon. George B. Daniels
April 28, 2022
Page 2

**An Amendment Would be Futile and
the Court Should Deny Plaintiff's Letter Motion**

Generally, motions for leave to amend are "freely give[n] when justice so requires." Fed. R. Civ. Pro. 15(a)(2).  But "[l]eave to amend, though liberally granted, may properly be denied for: . . . 'futility of amendment.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)).  A proposed amended complaint would be futile if it does "not cure the original complaint's deficiencies." *Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Germany*, 615 F.3d 97, 99 (2d Cir. 2010).  Such is the case here.  Plaintiff's letter motion should be denied because "the proposed amendments would be futile in that they could not cure the complaint's deficiencies." *Axar Master Fund, Ltd. v. Bedford*, 806 F. App'x 35, 39 (2d Cir. 2020) (internal citation omitted).

As Plaintiff's filing makes clear, he cannot overcome the heightened pleading standard under Rule 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and he fails to state a claim under Sections 10(b) and 20(a) of the Exchange Act.

A. **Plaintiff's Additional Allegations Fail to Support an Inference of Scienter**

1. **The Proposed SAC Adds Nothing to Dr. Wu's Alleged Motive and Opportunity to Commit Fraud**

The Court previously found that Plaintiff had not pled scienter as to Dr. Wu.  Dismissal Order at 17-21.  Specifically, the Court held that Plaintiff insufficiently pled motive and opportunity on the part of Dr. Wu "because Plaintiff does not allege that Defendant Wu sold his Ideanomics stock before the J Capital and Hindenberg publications and realized a profit." Dismissal Order at 18. The Court also rejected Plaintiff's allegation that the threat of a NASDAQ delisting motived Dr. Wu or the other Defendants to commit fraud.  *Id*.

Despite the Court holding that these allegations were insufficient to demonstrate motive and opportunity to commit fraud—a key element to his overall claim—Plaintiff does not remedy this failure in his Proposed SAC.  *See* Proposed SAC ¶¶ 221-27.  The Proposed SAC neither adds a single allegation to plausibly allege that Dr. Wu tried to benefit "in some concrete and personal way" from the alleged misstatements, nor does it add any allegations to further support Plaintiff's allegation that Dr. Wu was motivated to commit fraud as a result of the NASDAQ delisting.

In short, Plaintiff does not even attempt to cure these fatal deficiencies, and his letter motion should be denied.

**Arnold&Porter**

Hon. George B. Daniels
April 28, 2022
Page 3

> **2.    The Proposed SAC Does Not Save Plaintiff's Failure to Plead That Dr. Wu Engaged in Conscious Misbehavior or Recklessness**

In addition to finding that the Plaintiff's Consolidated Amended Complaint did not plead a motive as to Dr. Wu, the Court also ruled that Plaintiff had inadequately alleged conscious misbehavior or recklessness because Plaintiff merely claimed that "Defendants must have known about the current status of the MEG center." Dismissal Order at 19.

Again, Plaintiff has not remedied his failures. Instead, he only doubles down by adding one inconsequential fact, and repeating his prior allegations.

> **a.    Plaintiff's Only New Allegation About Dr. Wu Is Inconsequential**

In a seeming effort to impute knowledge on Dr. Wu, Plaintiff now alleges that Defendant Poor visited the MEG Center site in October 2019 and that Dr. Wu was present in the city of Qingdao in November 2019. *See* Proposed SAC ¶¶ 92-93, 191, 195. Notably, Plaintiff does not assert that Dr. Wu ever visited the MEG Center (*compare* Proposed SAC ¶¶ 94, 195). However, even if Dr. Wu had visited the site in October or November 2019, that would not support an inference of scienter. Plaintiff only asserts that Dr. Wu made **one** allegedly untrue statement **on June 9, 2020**, when he was quoted in a press release, commenting on "high levels of activity" and "solid customer foot traffic" in the MEG Center at that point in time. *See* Proposed SAC ¶¶ 20, 119, 121, 181-84.

Neither Dr. Wu's presence in the city of Qingdao in November 2019 nor any hypothetical visit to the MEG Center around that time—a fact Plaintiff has not even alleged—can establish that Dr. Wu knew he was making an allegedly untrue statement half a year later on June 9, 2020. Plaintiff makes no other allegations concerning Dr. Wu's knowledge at any point in time.

Plaintiff's proposed amendment fails.

> **b.    The Photographs Do Not Support Recklessness, As the Court Held**

Plaintiff added dozens of additional paragraphs discussing the photographs this Court has already determined were insufficient to establish scienter. *See* Dismissal Order at 20-21 (noting that Defendants' 2018 photographs "did not give rise to a strong inference of scienter"). These photographs, according to Plaintiff, "taken collectively," demonstrate that the Defendants were "directly involved" in the MEG Center and that the photographs were "misleading" to the reasonable investor. Ltr. Mot. at 2-4. Although it is not explicitly stated, it appears that Plaintiff also attempts to argue that Dr. Wu is responsible for the photograph which accompanied his quoted statement in the June 9, 2020 press release. *See* Proposed SAC ¶¶ 183, 185.

Arnold&Porter

Hon. George B. Daniels
April 28, 2022
Page 4

Plaintiff has made no allegation that Dr. Wu ever saw this or any photograph, let alone the June 9, 2020 press release, or that he had any involvement in the drafting of the press release at all. In short, Plaintiff has presented no additional allegations which would indicate that Dr. Wu engaged in recklessness or scienter. Instead, Plaintiff continues to rely on conclusory allegations that Dr. Wu *would or should have* known. This is, and was, insufficient. *See One Commc'ns Corp. v. JP Morgan SBIC LLC*, 381 F. App'x 75, 81 (2d Cir. 2010) (affirming dismissal of securities fraud claims against outside directors because conclusory allegations of "involvement of outside directors" in improper billing practices were insufficient to state a claim); *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 591 (S.D.N.Y. 2011) ("conclusory statements that defendants 'were aware' of certain information, and mere allegations that defendants 'would have' or 'should have' had such knowledge is insufficient.").

B.    **Plaintiff's Fraud Allegations Remain Deficient**

Plaintiff's Proposed SAC does meet the heightened pleading standards of the PSLRA because the pleading again imprecisely generalizes allegations against "defendants," rather than specifying who Plaintiff alleges is responsible for specific actions. *See, e.g.*, Proposed SAC ¶¶ 184 (when referring to the June 9, 2020 press release, Plaintiff writes "It was misleading for Defendants to describe the MEG Center as 'operational' and to tout the 'high levels of interest,' 'high levels of activity,' and 'solid customer foot traffic' at the site."), 185 (regarding the photograph in the June 9, 2020 press release Plaintiff alleges "Defendants admit that the image, which was presented without any qualifications concerning its authenticity, was a '[p]hoto [d]epiction[]' or 'rendering,' and did not depict the MEG Center as it appeared in May 2020.").

As was the case in Plaintiff's previous complaint, it is improper to lump Dr. Wu in with the other Defendants without specifying what, if anything, each of them purportedly knew and how and when they learned it. *See* Proposed SAC ¶¶ 184, 185, 194, 199. *See also, Rich v. Maidstone Fin., Inc.*, No. 98 CIV. 2569(DAB), 2001 WL 286757, at *6 (S.D.N.Y. Mar. 23, 2001) ("A complaint may not simply clump defendants together in vague allegations to meet the pleading requirements.") (internal citation and quotations omitted).

C.    **Plaintiff's Loss Causation Allegations Remain Deficient**

Finally, this Court previously held that Plaintiff had failed to allege loss causation because he had not properly alleged "that the subject of the fraudulent statement or omission was the cause of the actual loss suffered" because, importantly, the J Capital and Hindenberg reports were not corrective disclosures. Dismissal Order at 21. To demonstrate loss causation, Plaintiff is required to allege that "the market reacted negatively to a 'corrective disclosure,' which revealed an alleged misstatement's falsity or disclosed that allegedly material information had been omitted." *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 677 (S.D.N.Y.2007) (citing *Lentell v.*

# Arnold&Porter

Hon. George B. Daniels
April 28, 2022
Page 5

*Merill Lynch & Co.*, 396 F.3d 161, 175 (2d Cir. 2005)). Once again, the Proposed SAC does not correct this flaw.

Moreover, even if the J Capital and Hindenberg reports were corrective disclosures—which they are not—Plaintiff does not provide any particularized allegations connecting the short seller reports to Dr. Wu's single alleged misstatement in the June 9, 2020 press release. Instead, Hindenberg's June 25, 2020 tweet only challenged when the photograph in the June 9, 2020 press release was taken. *See* Proposed SAC ¶ 140. Plaintiff also did "not detail reliance" on Dr. Wu's statement. *See In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 510 (2d Cir. 2010). The Court had already ruled this was insufficient to establish loss causation. Dismissal Order at 21-22.

Plaintiff's alleged "corrective disclosures" remain "too attenuated" to suggest that it served as the "but-for cause or cause-in-fact of the losses suffered." *Id.* (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d at 510).

\*   \*   \*   \*

For all of the foregoing reasons and those contained in Defendants' original motion papers, Plaintiff's Proposed SAC fails to state a claim, just as his prior complaint failed to state a claim. The Proposed SAC demonstrates that amendment would be futile, and the Court should accordingly deny Plaintiff's request for leave to amend.

Respectfully Submitted,

*/s/ Aaron Miner*

Aaron Miner

cc:     Counsel of Record (by ECF)