# VENABLE LLP

600 MASSACHUSETTS AVE., NW    WASHINGTON, DC 20001
T 202.344.4000  F 202.344.8300   www.Venable.com

April 28, 2022

The Honorable George B. Daniels
United States District Court
Southern District of New York
500 Pearl Street, Room 1310
New York, NY 10007

> Re:  *In re Ideanomics, Inc. Securities Litig.,* **1:20-cv-04944-GBD — Opposition to Plaintiff's Letter Application for Leave to File Second Amended Complaint**

Dear Judge Daniels:

We write on behalf of defendants Ideanomics Inc. ("Ideanomics" or the "Company"), Alfred Poor ("Poor"), and Tony Sklar ("Sklar," and together with Poor, the "Individual Defendants") (the Individual Defendants together with Ideanomics, "Defendants")[1] in response to plaintiff Rene Aghajanian's ("Plaintiff") letter application (the "Application") for leave to file a second amended complaint (the "SAC") following the Court's dismissal of its first amended complaint (the "FAC"). Plaintiff's Application should be denied.

This Court dismissed the FAC finding that Plaintiff failed to allege scienter and loss causation. As to scienter, the Court found "wholly insufficient" Plaintiff's allegations as to conscious misbehavior and recklessness and motive and opportunity. As to loss causation, the Court found that the short sellers' reports were not corrective disclosures and that Plaintiff's allegation that the depiction photo was a but-for cause of the Plaintiff's purported losses was insufficient to establish loss causation. The Court also found that Plaintiff failed to provide any explanation for the Company's stock price rebound days after the short-sellers' reports.

In its Order dismissing the FAC, the Court provided that Plaintiffs could seek leave to file another amended complaint. Now, Plaintiff is back with a proposed SAC that drops one defendant, characterizes as new allegations that are really just the same allegations the Court has already found lacking, and adds allegations that simply fail to address the deficiencies the Court found in the FAC. In sum, because Plaintiff's SAC does not cure the fatal defects that this Court already decided warrant dismissal, the Application should be denied.

---

[1] Defendant Bruno Wu, who is represented by separate counsel, is also submitting a response to Plaintiff's Application contemporaneously with Defendants' response. Additionally, in his proposed SAC, Plaintiff dropped Conor McCarthy as a proposed defendant.

Hon. Judge George B. Daniels
April 28, 2022
Page 2

### I. Applicable Legal Standard

Leave to amend is granted only when justice so requires. *See*, *e.g.*, *Union Cent. Life Ins. Co. v. Credit Suisse Sec. (USA), LLC*, No. 11 Civ. 2327 (GBD), 2014 WL 7179989, at *1 (S.D.N.Y. Dec. 10, 2014) (Daniels, J.) (denying leave). When leave is sought after dismissal, the Second Circuit has found that courts may be more exacting. *See In re Gildan Activewear, Inc. Sec. Litig.*, No. 08 Civ. 5048 (HB), 2009 WL 4544287, at *3 (S.D.N.Y. Dec. 4, 2009) (citing *Ruotolo v. City of N.Y.*, 514 F.3d 184, 192 (2d. Cir 2008)). And courts routinely deny leave to amend where the "proposed amendments [are] merely recycled versions of claims which ha[ve] already fallen victim to a motion to dismiss," *Lehmann v. Ohr Pharm. Inc.*, No. 18 Civ. 1284 (LAP), 2020 WL 6729116, at *3 (S.D.N.Y. Nov. 16, 2020) (citing *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007)), or where proposed additions are "essentially recharacterizations of the claims in [a previous version of the] complaint." *Weaver v. Indymac Fed. Bank, FSB*, 488 Fed. App'x 522, 523 (2d Cir. 2012).

Where, as here, amendment would be futile, the Court must deny the request for leave. *See Union Cent.*, 2014 WL 7179989, at *1. A proposed amendment is futile when it could not withstand a motion to dismiss pursuant to Rule 12(b)(6). *Id.* (internal quotations and citation omitted). It is well established that a complaint should be dismissed under Rule 12(b)(6) where it does not contain enough allegations of fact to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Tyler v. Liz Claiborne*, 814 F. Supp. 2d 323, 334, 344 (noting that a plaintiff cannot base securities fraud claims on speculation and conclusory allegations and denying leave to amend). Where, as here, a proposed amended complaint does not cure previously identified deficiencies, leave to amend is properly denied. *See, e.g., Acito v. IMCERA Grp.*, 47 F.3d 47, 55 (2d Cir. 1995) (affirming dismissal of complaint and denial of leave to amend where "additional information did not cure the complaint").

### II. The Proposed SAC Does Not Cure Plaintiff's Defective Pleading as to Scienter

Plaintiff offers four additional categories of allegations to address the deficiencies in his FAC, but none saves his claims.

First, Plaintiff claims to offer new allegations that Poor and Wu visited the MEG center and were directly involved in site activities in order to cure the deficiencies in the FAC. He does not. Plaintiff cites to a statement made by Poor in November 2019 (prior to the class period) that he and others from the Company had visited the facility in ***October 2019***—7 and 8 months before the purported misstatements. ECF No. 109 at 2. Plaintiff also points to an interview conducted on March 16, 2020 in which Poor responded as follows to the question below—

> Tim Moynihan: Can you just give us an update on the – I'm probably not saying it right -- the MEG mall? And is it -- I'm kind of confused. Is that you are purchasing an old mall and revamping it or it's a brand-new structure? What's the status with that?

Hon. Judge George B. Daniels
April 28, 2022
Page 3

> Alfred Poor: Okay, so this is being provided by the city of Qingdao. It's an existing facility. *Several of us were out there.* It was already being refurbished to be an EV hub and they were looking to try and attract partners into it. MEG was the one that went in there. The building is mostly finished. It has obviously been slowed down because of the coronavirus. But the idea of it is it's about a million square feet of space. The idea there will be there will be vehicles on site, similar to what you would see in a very high-end showroom.

*Id.;* SAC ¶ 101 (emphasis added). Plaintiff argues that scienter may be "readily inferred" from these statements and references the Court's ruling differentiating between statements made regarding the early May 2020 soft launch and the official launch later in May 2020. ECF No. 109 at 3. But the statements Plaintiff quotes are all long before any statement regarding the official launch (or even the soft launch). The two statements by Poor regarding his earlier visit simply do nothing to allege scienter as to Poor, let alone the other defendants.

Plaintiff also cites to a statement made by Poor on May 11, 2020 telling investors that the main priority was to execute on EV orders, that sales derived from the MEG Center were a key contributor, and that "strategic discussions continue on a daily basis with Qingdao officials." ECF No. 109 at 2-3; SAC ¶¶ 105, 192. These statements similarly do not plausibly establish that Defendant knew that statements made in May and June regarding the operational status of the MEG Center were false as they simply do not relate to the actual operational status of the facility.[2]

Second, Plaintiff adds allegations relating to the captions in the same three photos the FAC had already included, arguing that Defendants' repeated publication of these photos, accompanied by false or misleading captions is sufficient to plead scienter. ECF No. 109 at 3. It is not. The captions on the photos again do nothing to cure the scienter deficiencies and are just more of the same allegations of purported misstatements the Court has already rejected. As the Court held in its Order, "releasing the 2018 photographs did not give rise to a strong inference of scienter—the photographs were not for example of a wholly different EV site or location and, as Defendants explained in their June 26th press release, the Fu Da Automobile Trading Center had been at the location since 2018 and was in a joint venture with Ideanomics." Order at 20. Plaintiff's new allegation simply does nothing to cure the deficiencies identified by the Court as to Plaintiff's allegations regarding the photos.

---

[2]     Plaintiff cites to *In re Aphria, Inc. Sec. Litig.*, 2020 WL 5819548 (S.D.N.Y. Sept. 30, 2020) where the allegations centered on misrepresentations concerning the operational status, condition, and value of a target entity. *Id.* at *3, 8-9. This Court held that the plaintiff had alleged scienter sufficiently because site visits were conducted by high-level members of an acquiring company and defendants were given access to a due diligence data room containing financial statements and forecasts for the target's assets, which the Court concluded sufficiently alleged defendants must have had access to information related to their misstatements. *Id.* at *9. There are no similar allegations here. *Aphria* actually underscores the deficiencies of Plaintiffs' purported allegations here.

Hon. Judge George B. Daniels
April 28, 2022
Page 4

Third, Plaintiff claims that the SAC allows for an additional inference of scienter because Defendants did not refute the Hindenburg statements regarding the photos and, according to Plaintiff, Defendants "tacitly admitted that the short-sellers were correct that the Defendants had grossly exaggerated the current state of the MEG Center's operations." ECF No. 109 at 4. The short-sellers, however, did not claim that the current state of the MEG center was exaggerated, but rather challenged the very existence of Ideanomics at the facility -- claiming that no one had heard of Ideanomics or MEG at the site or Ideanomics' relationship with the joint venture. Ideanomics' statements in response to the short-sellers' reports was focused on challenging those allegations. Further, this "new" allegation, is nothing more than what Plaintiff argued in his motion to dismiss, which the Court ultimately found lacking. *See* ECF No. 96 (Plaintiff's Opposition to Defendants' Motion to Dismiss) at 18 (arguing that Defendants tacitly admitted that the photos misrepresented the current state of the MEG Center).[3]

Fourth, Plaintiff claims that since March 31, 2021, the Company included no references to the MEG Center in its SEC filings or press releases, ECF No. 109 at 5, and Plaintiff makes the inferential leap that this somehow shows statements made 9-12 months earlier regarding the operational status of the facility 9 months to a year earlier were knowingly false. As with Plaintiff's other allegations, it does not. Plaintiff cannot infer scienter from the mere fact that the Company happened not to mention the MEG Center in a later filing.

Finally, Plaintiff points to its previous allegations of motive and argues that taken together with these new allegations, the SAC raises a strong inference of scienter. ECF No. 109 at 5. Plaintiff again is wrong. In its Order, the Court found that, except as to Defendant Wu, Plaintiff failed to even allege specific motives as to the other defendants. And as to Wu, the Court found Plaintiff's allegations insufficient. Plaintiff has not added any additional allegation to bolster its insufficient motive allegations. Critically, where, as here, the defendants' motive to commit fraud is not apparent, "the strength of the circumstantial allegations [that a defendant consciously or recklessly misbehaved] must be correspondingly greater." *Fresno County Employees' Ret. Assn. v. comScore, Inc.*, 268 F. Supp. 3d 526, 551 (S.D.N.Y. 2017). The allegations in Plaintiff's proposed SAC do not meet this standard.

---

[3]     The cases cited by Plaintiff also do not support his arguments. In *Fresno Cty. Emps.' Ret. Assoc. v. comScore, Inc.*, plaintiffs alleged a series of fraudulent misrepresentations concerning the accounting practices for non-monetary transactions that flowed from the top down in the company's hierarchy and were coupled with the failure to provide information to the company's accounting group and its external auditors. 268 F. Supp. 3d 526, 536-37 (S.D.N.Y. 2017). The court relied heavily on these allegations, all of which are absent here. Additionally, *Katz v. Image Innovations Holdings, Inc.*, 542 F. Supp. 2d 269, 274 (S.D.N.Y. 2008) involved allegations of obstruction of an investigation.

Hon. Judge George B. Daniels
April 28, 2022
Page 5

### III.    Plaintiff's Proposed Second Amended Complaint Does Not Cure Plaintiff's Failure to Sufficiently Allege Loss Causation

The Court held that Plaintiff did not plead loss causation because: (1) the short seller reports were not corrective disclosures, (2) even if the short seller reports were corrective disclosures, Plaintiff did not sufficiently allege that the revelation that the photograph was from 2018 rather than 2020 was a "but-for cause" of the drop in share price, and (3) Plaintiff did not explain the bounce back in the Company's share price in the four days following the short sellers' reports. 2022 WL 784812, at *11, 12 n.8, 20. Plaintiff has not cured any of these defects.

Plaintiff's proposed SAC fails to address the Court's finding that the reports by the short sellers -- both of whom, incidentally, are apparently now under DOJ investigation, https://news.bloomberglaw.com/securities-law/vast-doj-probe-looks-at-almost-30-short-selling-firms-and-allies -- are not corrective disclosures. Without establishing that there is a corrective disclosure, Plaintiff's Application should be denied without even considering Plaintiff's flawed efforts to establish that his SAC sufficiently alleges market reliance and but-for causation. Plaintiff argues in his Application that the SAC pleads market reliance on the images of the MEG Center being from 2020. ECF No. 109 at 5. Plaintiff points to captions that he contends were misleading and then goes on to argue that these photographs were "widely republished in numerous media outlets and on social media" and that "market participants specifically relied on these images as evidence that there 'really was' a MEG Center . . . ." *Id.* at 6. Plaintiff further alleges that he had cited "market commentary" that, he contends, "directly attributed the rapid rise in Ideanomics's stock price . . . to Defendants' statements . . . ." *Id.* These allegations—based on a couple of tweets from unnamed sources and few re-publications in non-mainstream sources—do not establish market reliance and regardless they ignore that there is simply no corrective disclosure.

Plaintiff's argument that the SAC plausibly alleges but-for causation is entirely circular. Plaintiff states that the fact that the photographs were the cause of the share price drop is established because the share price fell following the J Capital and Hindenburg publications, which included an array of (inaccurate) accusations regarding the Company as whole. *See* ECF No. 109 at 6; *see also* SAC ¶¶ 140-41. Plaintiff attempts to make a connection by pointing to two posts on the Seeking Alpha website and an article in the *Hartford Courant.* SAC ¶ 151. Plaintiff argues that these 3 articles show how market observers attributed the stock price decline to the allegations regarding the photos. They do not. The articles describe nothing new—they describe the short-sellers' reports challenging every aspect of the Company, not just the photos. These articles simply confirm Defendants' arguments that the Company's stock price decline was attributable to the short-sellers' concerted attack on the Company. Accordingly, as the Court previously found, there is not a sufficiently close connection between the share price drop and the photos to establish that loss causation exists. *In re Ideanomics, Inc., Sec. Litig.*, 2022 WL 784812, at *11.

Finally, the Court found that Plaintiff had not explained the upward fluctuation in the Company's share price in the four days following the short sellers' reports. Plaintiff alleges that this bounce back was due to the Company's and Poor's efforts to address the short sellers' inaccurate statements. ECF No. 109 at 7. According to Plaintiff, the bounce back was due to Poor sharing a photo showing a MEG sign on the building on June 28, 2020 and the Company's June

Hon. Judge George B. Daniels
April 28, 2022
Page 6

29, 2020 press release. SAC ¶ 154. But, other than Plaintiff's conclusory statement, there is no allegation of falsity as to those statements or the photo or that the photo was actually not a photo taken in 2020. Thus, it simply remains that the stock price bounced back after the short-sellers' claims challenging the Company's presence at the facility in China, including Hindenburg's claims as to the earlier photos being from 2018.

## IV.    Conclusion

In sum, Plaintiff has offered no new allegation that cures the deficiencies in the FAC. Accordingly, for each of the above reasons, Plaintiff's Application for leave to amend should be denied.

Dated: April 28, 2022

Respectfully submitted,

**VENABLE LLP**

By:    */s/ George Kostolampros*
George Kostolampros
600 Massachusetts Avenue NW
Washington DC  20001
Tel.: (202) 344-4426
Fax: (202) 344-8300
Email: GKostolampros@Venable.com

- and -

Xochitl S. Strohbehn
Thomas J. Welling, Jr.
1290 Avenue of the Americas
Twentieth Floor
New York, New York 10104
Tel.: (212) 307-5500
Fax: (212) 307-5598
Email: Xochitl.Strohbehn@Venable.com
Email: TJWelling@Venable.com

*Attorneys for Defendants Ideanomics, Inc., Alfred Poor, and Anthony Sklar*